

# EXHIBIT H

IN THE SUPERIOR COURT OF THE
STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
THE PEOPLE OF THE STATE OF CALIFORNIA,

```
                                    )
                                    )
                PLAINTIFF,          )     REPORT OF
                                    )     PROBATION OFFICER
        vs.                         )     No.: C1894831
                                    )     March 14, 2019
JOEL ORTIZ,                         )     E. West, D.A.
  AKA: None                         )     D. Dawson, P.D.
                DEFENDANT,          )
                                    )
                                    )
```

_____

<u>COURT DATA</u>

<u>SENTENCING COURT</u>: Honorable Edward F. Lee

<u>CHARGE</u>:    Counts One, Thirteen, and Forty-Two, each Section
            530.5(a) of the Penal Code (Using Personal Identifying
            Information Without Authorization)

            Counts Two, Thirty-One, and Forty-Three, each Section
            502(c)(1)(A) of the Penal Code (Computer Crime -
            Altering and Damaging Computer Data With Intent to
            Defraud or Obtain Money or Other Value) (See
            Supplemental Information)

            Counts Twelve, Thirty-Two, Thirty-Five, and Forty-
            Four, each Section 487(a) of the Penal Code (Grand
            Theft of Personal Property of a Value Over Nine Hundred
            and Fifty Dollars)

            (All) With Allegations of Sections 186.11(a)(1) and
            186.11(a)(2) of the Penal Code (Aggrevated Whilte
            Collar Crime - Adds 2, 3, 5 years)


<u>PRIORS</u>:    None

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019


<u>PROBATION ELIGIBILITY</u>:  Limited eligibility pursuant to Section
                          1203.045(a) of the Penal Code


<u>DATE OF OFFENSE</u>:  (Counts One and Two)

                   On or about and between February 12, 2018 and
                   March 19, 2019

                   (Counts Twelve and Thirteen)

                   On or about May 16, 2018

                   (Count Thirty-One)

                   On or about and between May 1, 2018 and May 30,
                   2018

                   (Count Thirty-Two)

                   On or about and between May 15, 2018 and May
                   30, 2018

                   (Count Thirty-Five)

                   On or about and between June 24, 2018 and July
                   24, 2018

                   (Counts Forty-Two, Forty-Three, and Forty-Four)

                   On or about May 2, 2018

<u>DATE OF ARREST</u>:  July 12, 2018 (See Supplemental Information)


<u>CONVICTION</u>:  Pled Nolo Contendere and admitted allegations on
              January 24, 2019, pursuant to Section 859a of the
              Penal Code.

<u>CONDITIONS</u>:  10 years State Prison, Top; Harvey Stipulation as to
              remaining Counts

<u>REMAINING CHARGES</u>:  Counts Three, Five, Seven, Nine, Fifteen,
                      Seventeen, Nineteen, Twenty-One, Twenty-

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

                      Three, Twenty-Five, Twenty-Seven, Thirty,
                      Thirty-Three, Thirty-Six, Thirty-Eight, and
                      Forty, all Section 530.5(a) of the Penal
                      Code; Counts Four, Six, Eight, Ten,
                      Fourteen, Sixteen, Eighteen, Twenty, Twenty-
                      Two, Twenty-Four, Twenty-Six, Twenty-Eight,
                      Thirty-Four, Thirty-Seven, Thirty-Nine, and
                      Forty-One, each Section 502(c)(1)(A) of the
                      Penal Code; Counts Eleven and Twenty-Nine,
                      each Section 487(a) of the Penal Code,
                      submitted for dismissal at the time of
                      Sentencing.

<u>DAYS IN CUSTODY</u>:   (Counts One, Two, Thirteen, Thirty-One, Forty-
                      Two, and Forty-Three)

                      246 actual days, 246 days – 4019 PC, 492 total
                      days; presently in custody.

                      (Counts Twelve, Thirty-Two, and Thirty-Five,
                      and Forty-Four)

                      0 actual days, 0 days – 4019 PC, 0 total days;
                      presently in custody. (Due to consecutive
                      Sentencing)

<u>AGE & DATE OF BIRTH</u>:   21; February 20, 1998; Boston, Ma.

<u>CODEFENDANTS & STATUS</u>:

None

<u>SUPPLEMENTAL INFORMATION</u>:

The defendant is not eligible for sentencing pursuant to Section
1170(h) of the Penal Code.

(Date of Arrest)

The defendant was arrested solely on an outstanding Warrant in
the present matter on July 12, 2018, in Los Angles, California.
He remained in custody there until he was transported to Santa
Clara County Jail, where he was booked into custody on July 18,
2018.

In the Case of JOEL ORTIZ
Docket #: C1894831                          March 14, 2019


PROHIBITED PERSONS RELINQUISHMENT (PPR) INFORMATION:

The form was completed on January 24, 2019 indicating the
defendant does not own, possess, or have under his or her
custody or control any firearms.  A query of the Automated
Firearms System (AFS) conducted on January 28, 2019 revealed
there are no firearms registered to the defendant.


SUMMARY OF OFFENSE:

According to Regional Enforcement Allied Computer Team (REACT)
task force case number 2018-0018, on February 12, 2018, victim
Mitch Liu's cellular telephone (cell phone) ceased working. He
telephoned his service provider, AT&T, and was told an
individual, later identified as the defendant, entered an AT&T
store, presented identification and a Social Security number,
and obtained a new SIM card which allowed him to control victim
Liu's cell phone.  Further, the defendant reset the password and
gained access to victim Liu's secondary Gmail accounts.  Victim
Liu was able to block the defendant's actions.  He then
contacted AT&T, and regained control of his cell phone.

On March 19, 2018, victim Liu received a text message from AT&T
indicating his account passcode had been changed.  It was
learned the defendant again gained access to the victim's two
primary electronic mail (e-mail) accounts, which contained most
of victim Liu's financial and personal indentifying information.
The defendant changed passwords and took control of victim Liu's
social media accounts, as well as the victim's 2 Factor
Authenticator (2FA) security mechanism, and reset the passwords
of victim Liu's cryptocurrency exchanges.  In reviewing his
accounts, victim Liu found the defendant stole approximately
$10,000 in cryptocurrency.

Victim Liu closed the existing AT&T account in his wife's name,
through which his cell phone number had been obtained, and
received a new cell phone number.  On March 20, 2018, victim Liu
answered an incoming call on his wife's cell phone, which
originating from victim Liu's defunct cell phone number
associated with the closed account.  The caller, later
identified as the defendant, who asked for victim Liu, was
described as having a voice sounding "…like a voice changer…"
was used to make the call.  Victim Liu disconnected the call, as
well as several subsequent calls made by the defendant.  The
defendant then sent victim's Liu's daughter a text message.
According to the report, the victim's daughter responded to the

4

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

text message, "Hi Daddy love you."  The defendant text back, "hi
sammie love you TELL YOUR DAD TO GIVE US BITCOIN."
Impersonating the victim, the defendant began direct messaging
victim Liu's contacts in his social media accounts asking to
borrow cryptocurrency.

On May 5, 2018, a Search Warrant was obtained for the collection
of information related to victim Liu's AT&T cell phone account.
The resulting records revealed two International Mobile
Equipment Identity (IMEI) numbers, were being used with victim
Liu's cell phone.  A subsequent internet search conducted by
police indicated both IMEI numbers were related to Samsung
Android cell phones.  Investigators contacted victim Liu, who
confirmed he had never used Samsung cell phones.  Using mapping
software, police plotted locations for calls placed on the
victim's cell phone and determined on February 12, 2018, the
defendant was using the victim's cell phone in Boston,
Massachusetts.

On May 22, 2018, a Search Warrant was obtained, directing
Google, Incorporated to identify accounts associated with the
defendant's devices based on the IMEI numbers as well as account
content from November 12, 2017 through May 22, 2018.  The
results revealed three e-mail accounts associated with one or
both of the numbers during the given time frame, one of which
was a Gmail account frequently used by the defendant.  The
results of the search history provided by Google, indicated a
search of victim Liu's name as well as references to
Massachusetts.

Further analysis of the Google data provided investigators
indentifying information including an e-mail containing a
photograph depicting the defendant holding a Massachusetts
Identification Card (M.I.D), which also displayed his
photograph, date of birth, and Boston address.  Also found were
e-mails from Coinbase regarding account activity in a Coinbase
account identified by the defendant's e-mail address.  Numerous
e-mails were found which showed hundreds of thousands of dollars
worth of cryptocurrency had been transferred into an accounted
associated with the defendant's e-mail.  Police located was an
e-mail containing information on "SIM swapping…" an account
takeover technique utilized in executing the offenses against
victim Liu, as well as e-mails confirming purchase and/or lease
of numerous domain names typically used for "phishing" purposes,
and used to takeover accounts.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                              March 14, 2019

Police obtained a Search Warrant for information related to the
defendant's known e-mail addresses associated with Coinbase and
Bittrex.  On June 16, 2018, police learned over $550,000 worth
of various cryptocurrencies had filtered through the Bittrex
account which at the time, was "…essentially empty."  A response
obtained from Binance provided account activity consisting of
over $620,000 having been filtered through the associated with
the defendant's Gmail account.  At the time of the inquiry, the
account was empty.  Binance provided a customer due diligence
image consisting of a photograph of a person who appeared to be
the defendant, holding a United States passport bearing the
defendant's name, date of birth, and Boston address.

On June 18, 2018, officers received information from Coinbase
related to an "@live.com" e-mail address linked to an account
belonging to the defendant, with customer due diligence
information consisting of a photograph of a person who appeared
to be the defendant holding a M.I.D. card, also bearing his
personal information.  Investigators learned the account had
sold more than $237,000 in Bitcoin, over $48,000 in Ether, and
over $14,000 in Litecoin cryptocurrency since the opening of the
account in November of 2014.

Also located in the defendant's Gmail account, were e-mails
linked to PayPal accounts.  A Search Warrant for the PayPal
accounts associated with the Gmail and "@live.com" e-mail
addresses was obtained.  On June 14, 2018 and June 18, 2018,
officers received information from PayPal which revealed five
accounts linked to the defendant, with customer due diligence
consisting of a photograph of the M.I.D. with the defendant's
information and a photograph of mail from PayPal, addressed to
the defendant, at his Boston address.  In what appeared to be
the defendant's primary PayPal account, investigators located
transactions consisting of several withdrawals to a bank account
in the defendant's name, $59,000 in payments to Airbnb,
approximately $72,000 in payments to "Stop N' Shop" at a
different e-mail address, and "numerous other payments of
thousands of dollars at a time…to varous individuals."  Further
revealed was a subsequent account with an e-mail address
"@live.fr," used to purchase 14 SIM cards.  It was also learned
the "@live.com" address was linked to "Lon Frye" with an address
in Texas and an associated address listed as the defendant's
address.  As a result of these findings, officers believed the
defendant took control of victim Liu's cell phone, e-mail and
social media accounts, and stole from him, approximately $10,000
in cryptocurrency.

In the Case of JOEL ORTIZ
Docket #: C1894831                                March 14, 2019

Investigators sent a request to AT&T, asking for any and all
accounts connected to the IMEI numbers used to overtake victim
Liu's cell phone, and learned approximately 40 AT&T customers
had the IMEI numbers attached to their accounts from November
19, 2017 through June 7, 2018.  On June 21, 2018, police began
calling the telephone numbers listed on each of the AT&T
accounts to determine if the account holders had been
victimized.  According to the report, all of the victims' cell
phones had been taken over by the defendant through a process
termed "SIM swapping," wherein a customer service agent of a
cell phone carrier, believes the legitimate account holder is
contacting them, requsting a new SIM card to regain access to
their lost mobile device.  As a result, the newly issued SIM
card allows the unauthorized user to impersonate the victim and
utilize the victim's cell phone number to request changes to
account settings.

Police contacted victim Seth Shapiro, who stated on May 16,
2018, he was at the Consensus NY Cryptocurrenty Conference
(CNCC) in New York, when he lost cell phone service.  He knew
his information had been "hacked" as he heard of this having
happened to others in the "cryptocurrency world."  He went to a
nearby AT&T store to restore his cell phone; however, the
password to his e-mail account had been changed.  He learned the
defendant accessed his cryptocurrency accounts as result, and
stole approximately 1200 Ethereum ($500,000 in cryptocurrency)
from his Bittrex acount, and $400,000 from a Wax cryptocurrency
account.  Victim Shapiro stated he raised approximately $700,000
to $1 million in cryptocurrency for a project he was
undertaking, which was comingled with his personal
cryptocurrency.  He approximated a total loss of $1.7 million in
cryptocurrency, $1 million of which consisted of his personal
funds.

Investigators spoke to victim Fiorenzi Villani, who stated while
attending the CNCC in New York on May 14, 2018, he lost cell
phone service, and knew his telephone had been "hacked."  He
went to a nearby AT&T store, where an employee advised the
victim's SIM card had been switched to another cell phone.
Victim Villani stated his Gmail account was compromised, which
he believes the defendant gained access to by resetting the
passwords using a 2FA password reset in combination with his
cell phone number.  Victim Villani denied experiencing financial
loss.

Victim Chris Kitze was interviewed by police and stated on March
2, 2018, his cell phone was overtaken and his service ceased.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                  March 14, 2019

He received messages indicating his Yahoo and Gmail passwords
had been changed, precluding him from accessing the accounts.
Victim Kitze reported he was advised by an AT&T representative,
an individual entered an AT&T store in Georgia and performed a
"SIM swap."  Victim Kitze eventually regained cell phone service
and on May 14, 2018, while attending the CNCC in New York, he
again lost cell phone service.  He learned the defendant changed
the passwords to his Twitter, Yahoo, and Gmail accounts and was
again unable to access them.  He reported he eventually regained
access to his accounts and did not suffer any financial loss.

Officers spoke to victim Mark Stickney, who reported on May 12,
2018, his cell phone service ceased.  He went to an AT&T store
where he was informed an individual transferred his cell phone
number to a different SIM card.  The victim's Gmail account was
compromised and his Twitter account was overtaken by the
defendant by means of 2FA password reset.  The defendant began
direct messaging people related to the victim's
Twitter account and attempted to sell the victim's Twitter
username.  Victim Stickney told police he was able to regain
access to his accounts and did not suffer financial loss.

Victim Jagdeep Sidhu was contacted by investigators and reported
on May 15, 2018, his cell phone service stopped.  He went to an
AT&T retailer to obtain a new SIM card.  His Gmail, Facebook,
and Instagram accounts were overtaken by the defendant, causing
the victim to lose access to said accounts.  Victim Sidhu stated
he had a Coinbase cryptocurrency account which the defendant
accessed, but was unsure the amount of cryptocurrency available
and did not believe it was worth the effort to pursue.

Police contacted victim Jeromy Johnson, who advised on March 6,
2018, his cell phone lost service.  The following day he went to
an AT&T store and "…got his phone number back;" however, the
defendant took control of the victim's Facebook account and
began direct messaging his Facebook contacts.  One of the
victim's friends, sent the defendant approximately 10 Bitcoin
valued at approximately $100,000.

Victim Tina Hui, told police on November 20, 2017, she logged
out of her primary Gmail account.  After attempts to log in to
the account indicated she was using an incorrect password, she
received  notification she had changed her Gmail password four
hours prior.  Victim Hui requested her account password be reset
and waited for a 2FA text message.  When the victim did not
receive a text message, she realized her cell did have service.
She went to an AT&T store where an employee informed her someone

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

had gone into an Oakland store where a SIM swap occurred.
Victim Hui advised the defendant accessed her Coinbase
cryptocurrency account, as she received a message she had been
logged out of the site.  She sent an e-mail to Coinbase
notifying them of the unauthorized access to her account.
Victim Hui did not believe she sustained any loss of
cryptocurrency.

On July 10, 2018, an AT&T investigator provided police with call
record details involving the IMEI numbers used to overtake the
victims' cell phones.  It was learned the majority of text
messages to several victims originated from a telephone number
used solely to send text messages, called a "short code" number.
Officers were able to identify some of the companies responsible
for sending the text messages; however, some short code
telephone numbers were unidenifiable.  Based on their training
and experience, investigators believed these messages originated
from autmated services frequently used for identity
verification.

During the time the defendant controlled several of the victims'
cell telephones, all telephones received multiple text messages
while no text messages were sent from the cell phones.  Based on
the volume of text messages the defendant received, the short
time he controlled the victims' accounts, as well as the
majority of text messages originating from short code numbers,
officers deduced once he gained control of a victim's cell phone
account, the defendant attempted to log into their other
accounts.  Police believed the defendant was able to do this
either by receiving a 2FA text message from individual websites
sent via text message to the AT&T account controlled by the
defendant, or the specific website text a code allowing the
defendant to reset the passwords on-line.

Further investigation was conducted by police and on July 11,
2018, a Warrant for the defendant's arrest was issued.  On July
12, 2018, REACT task force investigators and members of the Los
Angeles Airport Police arrested the defendant at Los Angeles
International Airport.  He was taken to a nearby security office
where his two carry-on bags and over $250,000 in cryptocurrency
was seized.

Police advised the defendant of his rights, which he stated he
understood.  The defendant told officers he had been in Los
Angeles for approximately one month "partying" with friends.  He
said was an unemployed student entering his junior year at the
University of Massachusetts-Boston, majoring in Information

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

Technology.  He claimed he was an early investor in Bitcoin
which was the source of his income; however, he refused to state
the amount of cryptocurrency he possessed.  He disclosed he
stored his cryptocurrency on a Leger Nano hardware wallet.

Officers told the defendant they were investigating
cryptocurrency thefts in which he denied involvement saying,
"…it was too difficult to do and he wasn't smart enough."  He
said he purchased "a lot" of SIM cards which he resold.  Police
then accused the defendant of being responsible for the thefts
and he replied, "I want to help you…I was lying before."

The defendant advised in October of 2017, he had a Verizon Droid
cell phone and was asked by a friend to contact Verizon and
place a SIM card in a Verizon compatible cell phone for the
purpose of stealing money.  His friend provided him with a
"PIN," which officers believed was the PIN number required to
access a victim's cell phone account.  The defendant denied
having received any payment for this transaction.  According to
the report, police believed this began the defendant's
involvment in the present offenses; however, the defendant
invoked his right to remain silent prior to police clarify this
information.

The report next indicates police asked the defendant for the PIN
code for his iPhone, which he refused to provide.  He gave
officers the passcode for his Ledger Nano wallet which contained
approximately $200,000 in DASH, $50,000 in NEO, and $19,000 in
GAS cryptocurrencies.  He told investigators this was what
remained from the cryptocurrency thefts subsequent to his having
spent a portion of the funds as well as the significant
depreciation of its value.  According to the report, the
defendant's primary role in the commission of the thefts was to
possess cell phones, obtain SIM cards, and provide the card
numbers to "someone else" for the overtaking of victims' cell
phones.  Police learned the defendant's co-conspirators had
contacts who could access tools used by employees of cell phone
service providers, to conduct the SIM swap.  Once the swap was
completed, the defendant received a 2FA text message code on his
cell phone which he gave to others for the purpose of "hacking"
into victims' accounts.  The total amount of cryptocurrency
stolen was evenly distributed amongst all involved in the SIM
swap.  The defendant reported the highest earning SIM swap in
which he was involved, occurred approximately 3 to 4 months
prior and yielded him $1 million after he and co-conspirators
stole $5 million in "Tether" cryptocurrency from a single
person.  The "Tether" was later frozen, and he and his co-

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

conspirators ultimately stole $2 to $3 million in
cryptocurrency.

The defendant reported he committed these offenses approximately
one time per day and estimated a success rate of 1 in 50
attempts made.  He participated in the scheme because it was
"easy money;" however, he had recently contemplated ending his
participation, saying he was feeling badly about stealing money
from others, and acknowledged the similiarities between a
residential burglary and theft of cryptocurrency and believed
they should be punished similarly.

The defendant refused to provide passwords to his iPhone and
MacBook computer.  The defendant asked to speak to a lawyer, and
investigators ceased their questioning.

On August 27, 2018, REACT investigators were contacted by a
United States Secret Service Agent regarding a SIM swapping case
related to victim Basu Saswata, who resided in Cupertino.  REACT
officers telephoned victim Saswata, who said on May 2, 2018, an
unknown individual was able to control his AT&T cell phone
account via SIM swap.  Shortly afterward, his Yahoo and Gmail
addresses were accessed without authorization.  The victim's
Gmail account contained specific information related to accessed
his cryptocurrency wallets.  The wallets were then accesses by
an unauthorized user during which 9000 DASH (approximately $4.4
million USD) and 1287 ETH coins (approximately $867,000 USD)
were stolen.  A portion of the stolen DASH was traced to a
Binance deposit address and Ledger Nano S wallet address
belonging to the defendant.  Police also analyzed chat log data
in which the defendant discussed the theft.

On August 27, 2018, victim Saswata's cell phone number was given
to an AT&T investigator, who informed police the IMEI number,
unique to the victim's telephone, had been used illegally to
access cell phone numbers in California, Nevada, Washington
State, and New York.

Further investigation into stolen DASH, led officers to Binance
cryptocurrency exchange associated with the defendant's Gmail
account.  They learned on on May 2, 2018, victim Saswata
incurred a loss of approximately $4,355,021, while the defendant
received a deposit into his Binance account of approximately
$372,246.  Police also reviewed chat information obtained from
the Bureau of Homeland Security, and located several chats
linking the defendant to the theft, including conversations
wherein the defendant detailed the laundering of the stolen

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

cryptocurrency, after the theft occurred. Based on this
information, police believed the defendant was responsible for
the SIM swapping of victim Saswata's cell phone and subsequent
theft of his cryptocurrency.

<u>VICTIM'S STATEMENT</u>:

Correspondence has been sent to the victim(s) in this case
advising of the date, time, and place of sentencing, the right
to be present and to be heard pursuant to Section 1191.1 and
1191.2 of the Penal Code, as well as requesting information
regarding any losses suffered.

(Counts One and Two; Counts Three, Five, Seven, Nine, and Eleven
– Harvey Stipulation)

On March 1, 2019, this Officer left a voicemail message for
victim Mitch Liu, requesting a return call.  This Officer then
sent him an e-mail requesting contact as well.  As of the
writing of this report, a response was not received.  On March
6, 2019, this Officer received information from DDA West,
indicating a loss sustained by this victim in the amount of
$10,000.  A CR-110 in said amount is attached for the Court's
consideration.

(Counts Twelve and Thirteen; Count Fifteen - Harvey Stipulation)

On February 28, 2019, this Officer spoke to victim Shapiro who
declined to provide a verbal statement of loss, saying he would
submit a written statement via e-mail.

On March 5, 2019, this Officer received an e-mail from victim
Shapiro, which included a statement regarding impact and loss as
well as other documentation, which has been reviewed and
considered by this Officer.  Said information is also attached
for the Court's review.  In his statement, the victim asserted a
loss of various forms of cryptocurrency totaling $1,757,259.33,
which is in-line with DDA West's estimate of loss incurred as
more than $1.7 million; however, based on travel costs related
to the offense, as well as legal and investigative fees
sustained, victim Shapiro listed a total loss of $1,807,309.33,
for which a CR-110 is attached for the Court's consideration.

The victim explained he is a 54 year-old husband and father of
two.  He is an Adjunct Professor in Cinematic Arts, an author,
and has won two Emmy awards for his work in entertainment
technology.  He stated he had an "…unfathomable amount of

In the Case of JOEL ORTIZ
Docket #: C1894831                              March 14, 2019

personally identifiable information…taken from me, including
thousands of e-mails, my family's passport information, and
other business and family information."  He explained the
impact of the offense on his life has been "…horrific…" and "In
addition to destroying my life and stealing thirty-years of
retirement savings [the defendant] and his co-conspirators have
decimated the lives of my family members and close
friends…people lost their jobs as a direct result of this
massive theft.  One business was destroyed and a second faces
layoffs."

The victim indicated the currency stolen from his on-line
account "…was most of my life savings and investment assets…the
money I used to pay my rent, my children's tuition, and my
family's health insurance…[and is]…in desperate and immediate
need of the expected returns and proceeds…" to care for himself
and his family.

The victim asserted he has been experiencing extreme depression,
anxiety, loss of sleep, and trouble concentrating on issues
other than financial.  He claimed, "Despite the passage of time,
my fear and anxiety have remained because the attacks have
continued and my information is irretrievable from the
criminals…"  He expressed concern that even with the return of
the currency stolen, his personal and professional information
"…is lost to the dark web forever.  I may never know the extent
to which my digital presence has been compromised."

The victim added, "It's unfortunate that [the defendant] chose
to use his exceptional skills in both computer science and
social engineering to exploit and steal from others, rather than
to aid in the ongoing societal efforts to improve the flaws in
our increasingly technological society…I believe [the defendant
and co-conspirators] could have helped technologists and service
providers address some of the most glaring cybersecurity
weaknesses and procedural failures…If [the defendant] is willing
to help me and other victims [of SIM crimes] solve this problem,
I would be willing to work with him, or find someone who will
work with him on solving such vulnerabilities."

(Count Seventeen - Harvey Stipulation)

The police report does not list contact information for victim
Fiorenzi Villani.  On February 28, 2019, this Officer confirmed
with DDA West, she did not have alternate contact information
for this victim.  According to the police report, victim Villani
denied having incurred any loss.

13

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019


(Count Nineteen - Harvey Stipulation)

On March 1, 2019, this Officer left a voicemail message for
victim Chris Kitze, requesting a return call.  This Officer then
sent him an e-mail requesting contact as well.  As of the
writing of this report, a response was not received.

(Count Twenty-One - Harvey Stipulation)

On March 1, 2019, this Officer left a voicemail message for
victim Mark Stickney, requesting a return call.  This Officer
then sent him an e-mail requesting contact as well.  As of the
writing of this report, a response was not received.

(Count Twenty-Three - Harvey Stipulation)

On March 1, 2019, this Officer left a voicemail message for
victim Jagdeep Sidhu, requesting a return call.  This Officer
then sent him an e-mail requesting contact as well.  As of the
writing of this report, a response was not received.

(Count Twenty-Five - Harvey Stipulation)

On March 1, 2019, this Officer spoke to victim Jeromy Johnson,
who stated he did not incur any loss, though the rectifying of
his accounts was time consuming.  He stated the defendant's
impersonation of him and the resulting transfer of
cryptocurrency his friend sent to the victim's on-line account,
caused the dissolution of their friendship.

(Count Twenty-Seven - Harvey Stipulation)

On March 1, 2019, this Officer spoke to victim Tina Hui who
asked for time to reflect on the matter and prepare a written
statement regarding impact as the offense occurred in 2017.
This Officer provided her with the undersigned's e-mail address
for submission of the statement.  As of the writing of this
report, a response was not received.

(Counts Twenty-Nine and Thirty - Harvey Stipulation)

On March 1, 2019, this Officer telephoned victim Shaun Newsum;
however, the call went unanswered and his voicemail system was
full.  This Officer then sent him an e-mail requesting contact.
As of the writing of this report, a response was not received.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019


(Count Thirty-Two; Count Thirty-Three – Harvey Stipulation)

On March 1, 2019, this Officer spoke to victim Darren Marble,
who stated he would be present at today's Hearing.  He said he
needed time to review his records to determine the loss he
incurred and would either submit the information to this Officer
in writing or present it at today's Hearing.  This Officer sent
the victim an e-mail to provide a method for his written
submission in the event he chose not to address the Court in
person.  As of the writing of this report, a response was not
received.  On March 6, 2019, this Officer received information
from DDA West, indicating a loss suffered by victim Marble, was
determined to be $100,000 for which a CR-110 is attached for the
Court's consideration.

(Count Thirty-Five; Count Thirty-Six – Harvey Stipulation)

On March 6, 2019, this Officer received information from DDA
West, indicating an estimated loss experienced by victim Elias
Chivandro, as between $25,000 and $200,000.  On March 1, 2019,
this Officer spoke to victim Elias Chivandro, who advised the
balance of his cryptocurrency account consisting of $285,000,
was emptied within three transfers and in 2.5 hours.  Due to the
offense having occurred on a Sunday, he was away from his
telephone for longer than usual and did not realize his service
had been lost.  As a result, the defendant changed the passwords
of his cryptocurrency account and he can no longer access it.
The victim said he worked very hard to earn the balance of the
account and lost it all in one day's time.

Victim Chivandro believed the defendant to be older than his
actual age and expressed surprise and discontentment over the
defendant being "…so talented…" and using his knowledge to
engage in criminal conduct.  He requested restitution in the
amount of $285,000, for which a CR-110 is attached for the
Court's review.

(Count Thirty-Eight – Harvey Stipulation)

On March 1, 2019, this Officer telephoned victim Oskar Duris, at
the number listed in the police report; however, the call went
unanswered and a voicemail system was not available.  This
Officer then sent the victim an e-mail requesting a response to
discuss the offense.  As of the writing of this report, a
response was not received.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                              March 14, 2019


(Count Forty – Harvey Stipulation)

On March 1, 2019, this Officer telephoned victim Brad Yasar, at
the number listed in the police report; however, the call went
unanswered and a voicemail system was not available.  This
Officer then sent the victim an e-mail requesting a response to
discuss the offense.  As of the writing of this report, a
response was not received.

(Counts Forty-Two, Forty-Three, and Forty-Four)

On March 1, 2019, this Officer spoke to victim Saswata Basu, who
stated he incurred a loss of $5.4 million as a result of the
offense.  He said he is a business owner at which "a
decentralized cloud," information storage, and "a security
wallet" are developed and sold.  Due to the theft from his
account, he was unable to hire salespeople or developers to
further his business.  After consulting with his attorney, the
victim learned the deprivation of this funding translated in a
potential loss of revenue for his business, 9 to 10 times the
actual amount stolen.

The victim said, "…it's inconceivable the perpetrator would walk
away with that much money and only do 10 years…"  He viewed the
potential of the defendant serving 10 years in State Prison as a
"…small amount of time to serve…" given he has not disclosed the
location of all of the funds stolen.  Victim Basu was certain,
based on other cases of which he was aware, the defendant could
serve approximately 3 years of a 10 year Sentence, get out of
custody, and access potentially millions of dollars through the
accounts he refused to disclose.  He alleged he became aware of
new information obtained by a prosecutor in Florida, of lengthy
chat records involving the defendant and implicating him in
additional criminal activity.  He asked why this matter had not
been considered in the present offense, which he believed could
have added "…charges and time…" to the defendant's Sentence or
"…put pressure…" on the defendant to elicit the location of
additional funds.

Victim Basu was upset he and the other victims were not
consulted prior to the defendant being offered the present Plea
Conditions and were not given access to the DDA's Discovery,
which he and the other victims would have been able to decipher
and interpret.  He stated it is necessary for him to spend money
to hire a lawyer to "fight" the circumstances of this matter but
he cannot afford to hire a lawyer considering the loss he
incurred.  Victim Basu believes he was twice victimized, once by

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

the "hacking" of his accounts and the second in "…not being a
voice to the DA's Office."

Victim Basu remained steadfast in his belief the defendant could
have been charged with additional offenses and could have been
made to divulge the location of remaining cryptocurrency.  On
March 6, 2019, DDA West provided an estimate of loss suffered by
victim Basu as nearly $5.3 million; however, in this Officer's
discussion with the victim, he reported a loss of $5.4 million,
for which a CR-110 is attached for the Court's review.

<u>DEFENDANT'S STATEMENT</u>:

On February 28, 2019, this Officer interviewed the defendant via
videoconference at Elmwood Correctional Facility in the presence
of his attorney, Deputy Public Defender Dawson.  While the
defendant declined to provide a statement regarding the offense,
he agreed to provide the following social data.

The defendant is 21 years-old, was born in Boston, and denied
knowing his father's identity.  He denied family histories
involving domestic violence, or sexual, physical, or emotional
abuse.

The defendant resides with his mother, has never been married,
and has no children.  The defendant received special education
services during his youth as a result of developmental delays
and issues related to a diagnosis of Autism Spectrum Disorder.
Despite this, the defendant performed very well in high school
and was valedictorian of his graduating class.  During high
school, he took part in different mentoring/leadership programs
and ultimately earned a full scholarship to the University of
Massachusetts, Boston.  He was entering his junior year at the
time of his arrest in the instant offense and was majoring in
Information Technology.

The defendant's most recent and longest duration of employment
occurred during the summer of 2016, when he was employed as a
care provider at Child Center, a daycare facility in Boston.
His employment ended as the position was seasonal work.

With regard to drug and alcohol histories, the defendant denied
a family history involving substance abuse.  In discussing his
personal history of controlled substance use, he admitted having
ingested alcohol and marijuana first at age 20 and approximated
his use as once per week.  He denied experimentation with any
other substances.  Concerning mental health histories, he denied

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                March 14, 2019

an existence in his family and considered his having been
diagnosed with Autism, as a mental health disorder.  He also
expressed being depressed since being booked into County Jail;
however, he has not sought treatment.  He denied having any
present health issues or taking any medication to treat an
illness.

In discussing the possible disposition of this matter, the
defendant said he is accepting of whatever the Court deems
appropriate.  He apologized for all hardships he caused the
victims saying he made a huge mistake and acknowledged he will
likely be making restitution payments for the remainder of his
life.  In considering long-term plans, the defendant said he
hopes to return to school after his release from custody and
obtained a "good job" in order to be able to repay the victims.

<u>INTERESTED PARTIES</u>:

DPD Dawson provided a report, compiled by Dr. Leonard J. Donk,
Ph.D., dated October 10, 2018, regarding the.  On March 7, 2019,
DPD Dawson asked this Officer to have the evaluation attached
for the Court's consideration.  Dr. Donk's concluding diagnoses
consisted of the following:

- Autism Spectrum Disorder…Without Accompanying Intellectual
  Impairment, With Previous Language Impairment, Largely No
  Longer Impaired or Very Little Impairment;
- Major Depressive Disorder…Currently Severe, Without
  Psychotic Features;
- Adjustment Disorder, With Anxiety, Moderately Severe and
  Severe;
- Bipolar 1 Disorder, Most Recent Episode Manic, Severe (Rule
  Out);
- Depressive Personality Disorder;
- Self-Defeating Personality Disorder (Masochistic), with
  Schizoid and Avoidant Personality Traits.

The entirety of Dr. Donk's report has been reviewed and
considered by this Officer and is attached for the Court's
review.

Also submitted by DPD Dawson, are two character letters written
by individuals who counseled the defendant during his
participation in high school mentoring programs.  Both letters

18

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                          March 14, 2019

have been reviewed and considered by this Officer and are
attached for the Court's review.

<u>RESULTS OF ASSESSMENT</u>:

- CAIS

As the defendant did not provide a statement regarding the
offense, the CAIS Assessment was not utilized.

<u>JUDICIAL COUNCIL RULES 4.414, 4.421, 4.423</u>: Attached

<u>CASE EVALUATION</u>:

Appearing before the Court is 21 year-old Joel Ortiz, having
entered a Nolo Contendere Plea to three Counts of Section
530.5(a) of the Penal Code, three Counts of Section 502(c)(1)(a)
of the Penal Code, and Four Counts of Section 487(a) of the
Penal Code.  He also admitted an allegation of Section
186.11(a)(2) of the Penal Code and entered a Harvey Stipulation
to all remaining Counts.

Between 2017 and 2018, the defendant engaged in SIM swapping,
allowing him to use a 2FA process to overtake and change
victims' passwords and hack into their social media, e-mail, and
cryptocurrency accounts.  Police learned he filtered millions of
dollars through a variety of fraudulent on-line accounts,
through e-mail addresses, and with the use of illicit software.

As of the writing of this report, this Officer had not received
responses from victims Villani, Kitze, Stickney, Sidhu, Newsum,
Duris, or Yasar.  This Officer spoke to victim Hui and is
awaiting documentation she stated she would consider submitting.
In speaking to victim Johnson, this Officer learned he is
denying have experienced any loss.

Victim Marble did not provide this Officer with a specific
request for restitution; however, he reported he would attend
today's Hearing.  According to information provided by DDA West,
victim Marble experienced a loss of $100,000.  While this
Officer did not receive a response from victim Liu, DDA West
likewise provided information indicating victim Liu experienced
a $10,000 loss.

In the Case of JOEL ORTIZ
Docket #: C1894831                                    March 14, 2019


Victim Shapiro reported a loss of $1,807,309.44 and expressed
the theft has caused great financial and mental difficulty for
him and his family, as the funds taken were used to support his
family and plan for his retirement.

Victim Chivandro stated he worked very hard to earn the $285,000
he put in his cryptocurrency account which was lost in three
transactions over 2.5 hours.  He was astonished to learn how
young the defendant is and commented he was "…so talented…" and
wasted his talent by engaging in criminal activity.

Victim Basu stated he lost $5.4 million USD from his
cryptocurrency account which he believed transferred into 9 to
10 times that in lost revenue for his business.  He said it is
"…inconceivable…" the defendant could steal this amount of money
and face the potential of "…a small amount of time…" in custody.
Based on reports he had seen on-line or on the news, he is
concerned the defendant will serve a significantly less time
incarcerated and be released from Prison only to access hidden
cryptocurrency accounts he refused to disclose when he was
arrested.  Victim Basu said he felt victimized by having his
accounts hacked and again by feeling unheard by the District
Attorney's Office.

The defendant stated he received special education services in
his youth and was diagnosed with Autism Spectrum Disorder;
however, he was entering his junior year at the University of
Massachusetts – Boston, on a full scholarship, studying
Information Technology.  He apologized for the impact his
conduct has had on the victims and hoped he could later re-
enroll in college and get a "good job" to afford him the ability
to repay the victims.  He realizes it may take the better part
of his life to pay-off the restitution he owes.

The defendant lacks a prior criminal history.

The defendant is limited in Probation eligibility pursuant to
Section 1203.045(a) of the Penal Code.  In consideration of
Judicial Council Rules (JCR's) 4.421 and 4.423, Circumstances in
Aggravation and Mitigation, Aggravators outnumber Mitigators 4
to 2 and include the callousness of the offense, the defendant
benefiting from concurrent Sentencing when consecutive

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                 March 14, 2019

Sentencing could have been imposed, the planning and
sophistication involved in the carrying out of the offense, and
the offense involving the taking of a significant amount of
money.  The Mitigating factors include the defendant's lack of a
prior criminal history, and his acknowledgment of wrongdoing at
the early stage of the criminal process.

Reviewing JCR's 4.414 Criteria Affecting Probation, the
Favorable and Unfavorable factors are equally represented.  The
factors which favor the granting of Probation include the
absence of a weapon in the defendant's commission of the
offense, his lack of a prior criminal record, and his ability to
comply with reasonable terms of Probation.  Also Favorable to
the granting of Probation, is the likely effect of imprisonment
on the defendant considering his age and lack of prior
confinement history in addition to his remorsefulness and
acknowledgment of wrongdoing.

Conversely, the Unfavorable factors include the seriousness and
circumstances of the instant offense as compared to similar
crimes, the financial and emotional injury inflicted on the
victims, the degree of monetary loss experienced by the victims,
the defendant's active participation in the offense, and the
degree of sophistication demonstrated by the defendant in
committing the offense.

In as much as the defendant's Probation eligibility is limited,
and factors in favor of and against the granting of Probation
are equally represented, consideration was given to JCR 4.413.
Given the defendant's youthfulness (some of the Counts occurred
when he 19 years of age) and his lack of prior criminal history,
he appears to overcome his Probation limitation pursuant to JCR
4.413(c)(2)(1).  To this degree, his lack of prior involvement
in a criminal lifestyle or previous commitment to State Prison,
coupled with his diagnosis of Autism Spectrum Disorder, and the
victims naturally wanting to receive repayment for their loss,
justice does not appear to be served in confining the defendant
to State Prison.  Alternatively, in considering JCR's 4.421 and
4.423, where Aggravators outweigh Mitigators, justice also does
not appear served in the defendant avoiding custody time as a
consequence of his conduct.

As a result, it is recommended the defendant serve one year
County Jail as to Counts One, Twelve, Thirty-Two, Thirty-Five,
and Forty-Four, consecutive to each other, for a total term of 5

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019

years County Jail.  It is further recommended the defendant be
granted 5 years Formal Probation to include psychological
counseling conditions, seeking and maintaining treatment with a
psychologist and/or psychiatrist trained to address his multiple
diagnoses, and attending school full-time or seeking and
maintaining gainful employment.  It is also recommended he be
Ordered to adhere to full electronic search conditions.  A
natural consequence of the defendant's criminal conduct is he
will very likely never be employed in his chosen field.  As
such, it is hoped he will spend this time considering other
subjects of study as possible career paths upon his release from
custody.  It is also hoped he will diligently apply himself
toward attaining employment immediately after his release in
order to begin the process of making the victims whole again.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019


<u>RECOMMENDATION</u>:

1.  Imposition of sentence be suspended. Formal Probation be
    granted for five years.

2.  The defendant is ordered to go to the Probation Department
    within two (2) business days of release and thereafter as
    directed by the Probation Department.  If during your term
    of probation you are deported, you must notify the
    Probation Department of your deportation within 5 days.
    While out of the country you must notify the Probation
    Department by whatever means of communication are available
    to you of your location or residence.  If you return to the
    United States, you must report your re-entry to this
    country to the Probation Department within 5 days of your
    return, and report in person to the Probation Department as
    directed.

3.  The defendant is ordered to report to the Department of Tax
    and Collections within 30 days for the completion of a
    payment plan for fines and fees.

4.  A County Jail sentence as to Counts One, Twelve, Thirty-
    Two, Thirty-Five, and Forty-Four of one year each
    consecutive to each other be imposed. The defendant be
    granted credits.

5.  Restitution as determined by the Court.

6.  Restitution as determined by the Court, including but not
    limited to $10,000 to Mitch Liu.

7.  Restitution as determined by the Court, including but not
    limited to $1,807,309.33 to Seth Shapiro.

8.  Restitution as determined by the Court, including but not
    limited to $100,000 to Darren Marble.

9.  Restitution as determined by the Court, including but not
    limited to $285,000 to Elias Chivandro.

10. Restitution as determined by the Court, including but not
    limited to $5,400,000 to Saswata Basu.

In the Case of JOEL ORTIZ
Docket #: C1894831                              March 14, 2019

11.  The defendant shall submit his/her person, place of
     residence, vehicle and any property under his/her control
     to search at any time with or without a warrant by any
     Peace Officer or any law enforcement agency.

12.  The defendant shall as a condition of probation or
     mandatory supervision, give specific consent as that term
     is defined in Penal Code Section 1546 to any Peace Officer
     or any law enforcement agency to seize and search all
     electronic devices (including but not limited to cellular
     telephones, computers or notepads) in his/her possession or
     under his/her control to a search of any text messages,
     voicemail messages, call logs, photographs, e-mail
     accounts, social media accounts (including but not limited
     to Facebook, Instagram, Twitter, Snapchat or any other site
     which the Probation Officer informs him/her of), and/or
     applications ("apps") pertaining to said accounts at any
     time with or without a warrant.

13.  The defendant shall further agree and specifically consent
     to provide all passwords necessary to access or search such
     electronic devices (including but not limited to cellular
     telephones, computers or notepads) and understand that
     refusal to provide the password will constitute a violation
     of the terms of his/her probation or mandatory supervision.

14.  The defendant's computer and all other electronic devices
     (including but not limited to cellular telephones, laptop
     computers or notepads) shall be subject to Forensic
     Analysis search by any Peace Officer or any law enforcement
     agency at any time with or without a warrant.

15.  The defendant shall not knowingly enter any social
     networking sites, (including but not limited to Facebook,
     Instagram, Twitter, Snapchat or any other site which the
     Probation Officer informs him/her of), and/or applications
     ("apps") pertaining to said accounts nor post any ads,
     either electronic or written, unless approved by the
     Probation Officer.

16.  The defendant shall report all personal e-mail addresses
     used and shall report websites with passwords to the
     Probation Officer within 5 days.

In the Case of JOEL ORTIZ
Docket #: C1894831                                    March 14, 2019

17.  The defendant shall not knowingly access the Internet or
     any other on-line service through use of a computer, or
     other electronic device at any location (including place of
     employment) without prior approval of the Probation
     Officer. The defendant shall not knowingly possess or use
     any data encryption technique program.

18.  The defendant shall not clean or delete Internet browsing
     activity and must keep a minimum of four weeks of history.

19.  The defendant shall attend, actively participate in, and
     successfully complete a psychological treatment program as
     directed by the Probation Officer.

20.  The defendant shall cooperate with psychological and/or
     psychiatric treatment.

21.  The defendant shall seek and maintain gainful employment
     and/or maintain academic and/or vocational training as
     directed by the Probation Officer.

22.  The defendant shall not have a checking account during the
     term of probation.

23.  The defendant shall not knowingly have contact with the
     victim(s).

24.  The defendant shall not own, knowingly possess, or have
     within his/her custody or control any firearm or ammunition
     for the rest of his/her life pursuant to Section 29800 and
     Section 30305 of the Penal Code.

25.  A Restitution Fine of between $300 and $10,000 and a 10%
     Administrative Fee be imposed pursuant to Section 1202.4 of
     the Penal Code.

26.  An additional Probation Revocation Restitution Fine equal
     to that imposed under Penal Code Section 1202.4 be imposed
     and suspended pursuant to Section 1202.44 of the Penal
     Code.

In the Case of JOEL ORTIZ
Docket #: C1894831                                    March 14, 2019

27. The defendant be ordered to supply buccal swab samples,
    prints, blood specimens, and/or other biological samples
    pursuant to Section 296 of the Penal Code.

28. A $10.00 fine plus penalty assessment be imposed pursuant
    to Section 1202.5 of the Penal Code.

In addition to the above orders of probation, the Court hereby
orders the following fees, which are not conditions of
probation, however, are separately due to the Department of Tax
and Collections during the period of probation.  The failure to
pay such fees will result in civil collection and potential loss
of the California Driver's License.

29. A Court Security Fee of $400.00 be imposed pursuant to
    Section 1465.8 of the Penal Code.

30. A Criminal Conviction Assessment of $300.00 be imposed
    pursuant to Section 70373 of the Government Code.

31. A $259.50 Criminal Justice Administration fee to the
    County of Santa Clara be imposed pursuant to Government
    Code 29550, 29550.1 and 29550.2.

32. A Presentence Investigation Fee not to exceed $450.00 be
    imposed pursuant to Section 1203.1b of the Penal Code.

In the Case of JOEL ORTIZ
<u>Docket #</u>: C1894831                                    March 14, 2019


33.  A Supervision Fee not to exceed $110.00 per month be
     imposed pursuant to Section 1203.1b of the Penal Code.

NOTE: Attorney fees if appropriate.


                              Respectfully submitted,

                              Laura Garnette
                              Chief Probation Officer


                              Juli Gagnon
                              Deputy Probation Officer
                              408-435-2218
JKG/jkg
Attachments

Reviewed by:


_____
Judith Marshall
Supervising Probation Officer
408-435-2140

The above report has been read and considered by the Court.


                         _____
                         EDWARD F. LEE
                         Judge of the Superior Court
                         Santa Clara County, California