1   MARCELLUS MCRAE, SBN 140308
      mmcrae@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
3   Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
4   Facsimile: 213.229.7520

5   ASHLEY E. JOHNSON, *pro hac vice application forthcoming*
      ajohnson@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    2001 Ross Avenue
7   Suite 2100
    Dallas, TX 75201-2911
8   Telephone: 214.698.3100
    Facsimile: 214.571.2900

9
    Attorneys for AT&T MOBILITY, LLC
10
                    UNITED STATES DISTRICT COURT
11
                  CENTRAL DISTRICT OF CALIFORNIA
12
                         WESTERN DIVISION
13

14   SETH SHAPIRO,                         CASE NO. 2:19-CV-8972 (CBM)

15                   Plaintiff,            **DEFENDANT AT&T MOBILITY
                                           LLC'S NOTICE OF MOTION AND
16          v.                             MOTION TO DISMISS THE
                                           COMPLAINT; MEMORANDUM OF
17   AT&T MOBILITY, LLC,                   POINTS AND AUTHORITIES IN
                                           SUPPORT THEREOF**
18                   Defendant.
                                           [*[Proposed] Order lodged concurrently
19                                         herewith*]

20                                         Action Filed: October 17, 2019

21                                         **Hearing:**
                                           Date:    February 18, 2020
22                                         Time:    10:00 a.m.
                                           Place:   350 West 1st Street, 8th Floor
23                                                   Courtroom 8B
                                                     Los Angeles, CA 90012
24                                         Judge:   Hon. Consuelo B. Marshall

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on February 18, 2020, before the Honorable Consuelo B. Marshall, United States District Court Judge, in Courtroom 8B, at 350 West 1st Street, 8th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff Seth Shapiro's complaint.

AT&T moves to dismiss all claims for the following reasons:

1.      As to all claims, Mr. Shapiro has failed to plausibly allege proximate cause;

2.      Claim 3 (California constitutional right to privacy) fails to allege an egregious breach of social norms and fails to plead the required reasonable expectation of privacy;

3.      Claims 4 and 5 (negligence) are foreclosed by the economic loss doctrine;

4.      Claim 6 (Consumer Legal Remedies Act) does not plead the required notice and opportunity to cure; does not plead that Mr. Shapiro read the documents he alleges he relied upon; and does not plead that any misrepresentation occurred before his transaction with AT&T;

5.      Claim 7 (Computer Fraud and Abuse Act) does not plead that Mr. Shapiro suffered a recoverable loss;

AT&T also moves to dismiss Mr. Shapiro's request for punitive damages because Mr. Shapiro has not pled any involvement by an "officer, director or managing agent" of AT&T in any challenged conduct and has not pled the required malice, fraud or oppression.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on November 27, 2019.


Dated: December 6, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Marcellus A. McRae*

Marcellus A. McRae

Attorney for Defendant
AT&T MOBILITY LLC

# TABLE OF CONTENTS

Page

I.   Introduction ................................................................................................ 1

II.  Facts ........................................................................................................... 2

III. Standard of Review .................................................................................... 3

IV.  Argument .................................................................................................... 3

    A.   Mr. Shapiro Failed To Adequately Allege Proximate Causation for Any of His Claims ................................................................................ 3

        1.   Mr. Shapiro Does Not Allege How Accessing His Phone Number Led to the Loss of $1.8 Million. .................................... 4

        2.   Mr. Shapiro's Allegations Fail Because They Rely on Unforeseeable Criminal Acts. ............................................... 7

    B.   Mr. Shapiro's Right to Privacy Claim Under the California Constitution Should Be Dismissed (Count III). .......................... 8

        1.   Mr. Shapiro Does Not Plead an Egregious Breach of Social Norms. ............................................................................. 9

        2.   Mr. Shapiro Does Not Specifically Allege What Information AT&T Disclosed. ......................................................... 10

    C.   Mr. Shapiro's Claims for Negligence and Negligent Supervision and Entrustment (Counts IV and V) Should Be Dismissed. ................... 12

        1.   The Economic Loss Doctrine Bars Mr. Shapiro's Negligence and Negligent Supervision and Entrustment Claims. ................... 12

        2.   The Special Relationship Exception Is Not Available Because AT&T and Mr. Shapiro Are in Direct Contractual Privity. ............................................................................... 14

        3.   Even if the Special Relationship Exception Is Available, Mr. Shapiro Does Not Adequately Plead It. .......................... 16

    D.   Mr. Shapiro's CLRA Claim (Count VI) Should Be Dismissed. ............. 18

        1.   Mr. Shapiro Fails To Plead Actual Reliance. .............................. 18

        2.   All of the Alleged Misrepresentations Occurred After Mr. Shapiro's Transaction with AT&T. ........................................ 20

        3.   Mr. Shapiro Fails To Plead that He Provided the Required Written Notice. ....................................................................... 21

    E.   Mr. Shapiro's Claim Under The Computer Fraud and Abuse Act (Count VII) Should Be Dismissed for Failure To Plead a Qualifying Loss. .......................................................................... 21

Gibson, Dunn & Crutcher LLP

i

# TABLE OF CONTENTS
## (continued)

Page

      F.      Mr. Shapiro's Request for Punitive Damages Should Be Stricken. ........23

V.    Conclusion ...........................................................................................25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aas v. Super. Ct.*,
    24 Cal. 4th 627 (2000) ............................................................................ 17

*Advantage Ambulance Grp., Inc. v. Lugo*,
    2009 WL 839085 (E.D. Pa. Mar. 30, 2009) ............................................. 23

*Albin v. Trustmark Ins. Co.*,
    2013 WL 12191722 (C.D. Cal. Nov. 25, 2013) ....................................... 11

*Align Tech., Inc. v. Miller*,
    2005 WL 3445623 (N.D. Cal. Dec. 14, 2005) ......................................... 25

*Antman v. Uber Techs., Inc.*,
    2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ............................................ 6

*Antman v. Uber Techs., Inc.*,
    2018 WL 2151231 (N.D. Cal. May 10, 2018).............................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 3, 4

*Audigier Brand Mgmt. v. Perez*,
    2012 WL 5470888 (C.D. Cal. Nov. 5, 2012) ........................................... 12

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014)...................................................... 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................... 3

*Belluomini v. Citigroup, Inc.*,
    2013 WL 3855589 (N.D. Cal. July 24, 2013) .......................................... 11

*Biakanja v. Irving*,
    49 Cal. 2d 647 (1958) ............................................................................... 15

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
    241 F. Supp. 3d 1084 (C.D. Cal. 2017).................................... 12, 13, 14, 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Brousseau v. Jarrett*,
    73 Cal. App. 3d 864 (1977) ...................................................................... 25

*California v. Super. Ct.*,
    150 Cal. App. 3d 848 (1984) ............................................................. 3, 5, 6

*Carnegie Strategic Design Eng'rs v. Cloherty*,
    2014 WL 896636 (W.D. Pa. Mar. 6, 2014) ............................................. 23

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........................................ 13

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................... 21

*Citizens Bank of Pa. v. Reimbursement Techs., Inc.*,
    2014 WL 2738220 (E.D. Pa. June 17, 2014) ......................................... 7, 8

*Clayton v. Landsing Pac. Fund, Inc.*,
    2002 WL 1058247 (N.D. Cal. May 9, 2002) ........................................... 19

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*,
    2010 WL 4224473 (E.D. Pa. Oct. 22, 2010) ........................................... 21

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*,
    2011 WL 6088611 (E.D. Pa. Dec. 7, 2011) ............................................. 22

*Cruz v. HomeBase*,
    83 Cal. App. 4th 160 (2000) .................................................................... 24

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) .................................................................. 20

*Dep't of Water & Power of L.A. v. ABB Power T&D Co.*,
    902 F. Supp. 1178 (C.D. Cal. 1995) ....................................................... 15

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) .................................................. 22

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ................................................................ 18

Gibson, Dunn &
Crutcher LLP

iv

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

*Durkee v. Ford Motor Co.*,
    2014 WL 4352184 (N.D. Cal. Sept. 2, 2014)..........................................................20

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010).....................................................................18

*Elsayed v. Maserati N. Am., Inc.*,
    215 F. Supp. 3d 949 (C.D. Cal. 2016).....................................................................14

*Fabreeka Int'l Holdings, Inc. v. Haley*,
    2015 WL 7253019 (E.D. Mich. Nov. 17, 2015).......................................................22

*Foley v. Interactive Data Corp.*,
    47 Cal. 3d 654 (1988).............................................................................................15

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018)....................................................................13

*Gregorian v. Nat'l Convenience Stores, Inc.*,
    174 Cal. App. 3d 944 (1985).....................................................................................7

*Greystone Homes, Inc. v. Midtec, Inc.*,
    168 Cal. App. 4th 1194 (2008)...............................................................................16

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008).................................................................................18

*Hammond Enters. Inc. v. ZPS Am. LLC*,
    2013 WL 5814505 (N.D. Cal. Oct. 29, 2013).........................................................13

*Handy v. LogMeIn, Inc.*,
    2015 WL 4508669 (E.D. Cal. July 24, 2015)..........................................................18

*Hensley–Maclean v. Safeway, Inc.*,
    2014 WL 1364906 (N.D. Cal. Apr. 7, 2014)...........................................................20

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994)...................................................................................................9

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013)......................................................................19

Gibson, Dunn &
Crutcher LLP

v

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 9, 13

*J'Aire v. Gregory*,
   24 Cal. 3d 799 (1979) ...................................................................................... 14, 15

*Jesse v. Malcmacher*,
   2016 WL 9450683 (C.D. Cal. Apr. 5, 2016) ...................................................... 7, 17

*Johnson v. Nw. Airlines, Inc.*,
   2010 WL 5564629 (N.D. Cal. May 5, 2010) ............................................................ 4

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
   315 F. App'x 603 (9th Cir. 2008) .......................................................................... 12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................ 3

*Kelley v. Corr. Corp. of Am.*,
   750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................................ 23, 25

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................................ 21

*Lavine v. Jessup*,
   161 Cal. App. 2d 59 (1958) ................................................................................... 25

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................................ 19

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................... 8, 9

*Martinez v. Pac. Bell*,
   225 Cal. App. 3d 1557 (1990) ............................................................................. 4, 7

*Mega RV Corp. v. HWH Corp.*,
   225 Cal. App. 4th 1318 (2014) ............................................................................. 17

*Modisette v. Apple Inc.*,
   30 Cal. App. 5th 136 (2018) ................................................................................... 6

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014)................................................................20

*O'Keefe v. Inca Floats, Inc.*,
    1997 WL 703784 (N.D. Cal. Oct. 31, 1997) ........................................................7

*Oce N. Am., Inc. v. MCS Servs., Inc.*,
    748 F. Supp. 2d 481 (D. Md. 2010)....................................................................22

*Oki Am., Inc. v. Microtech Int'l, Inc.*,
    872 F.2d 312 (9th Cir. 1989) .............................................................................15

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
    2009 WL 2084154 (N.D. Cal. July 13, 2009) ....................................................12

*Ott v. Alfa–Laval Agri, Inc.*,
    31 Cal. App. 4th 1439 (1995) ............................................................................16

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30 (Ct. App. 1975) ...................................................................21

*Perez v. Auto Tech. Co.*,
    2014 WL 12588644 (C.D. Cal. July 14, 2014) ...................................................25

*R Power Biofuels, LLC v. Chemex LLC*,
    2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ....................................................15

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .......................................................................................12

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016)..........................................................18, 19

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008)................................................................9

*Sanbrook v. Office Depot, Inc.*,
    2008 WL 1994884 (N.D. Cal. May 5, 2008)......................................................21

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) .............................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Sony Gaming Networks & Customer Data Sec. Breach Litigation*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................. 13, 16, 17, 18

*State Dep't of State Hosps. v. Super. Ct.*,
    61 Cal. 4th 339 (2015) .................................................................................... 6

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) .......................................... 21

*SuccessFactors, Inc. v. Softscape, Inc.*,
    544 F. Supp. 2d 975 (N.D. Cal. 2008) .................................................... 23

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) .............................................. 10, 11

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) .................................................... 13

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ...................................... 13

*Teva Pharm. USA, Inc. v. Sandhu*,
    291 F. Supp. 3d 659 (E.D. Pa. 2018) ...................................................... 23

*Tomaselli v. Transamerica Ins. Co.*,
    25 Cal. App. 4th 1269 (1994) .................................................................. 24

*Torralbo v. Davol, Inc.*,
    2017 WL 5664993 (C.D. Cal. Oct. 19, 2017) ...................................... 25

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................... 3

*Vu v. Cal. Comm. Club, Inc.*,
    58 Cal. App. 4th 229 (1997) .................................................................... 3

*Weeks v. Baker & McKenzie*,
    63 Cal. App. 4th 1128 (1998) .................................................................. 24

*White v. Ultramar, Inc.*,
    21 Cal. 4th 563 (1999) .............................................................................. 24

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Yahoo Mail Litig.,*
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................... 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..................................... 7, 19

*Zamora v. Shell Oil Co.,*
   55 Cal. App. 4th 204 (1997) ....................................................................... 15

*Zbitnoff v. Nationstar Mortg., LLC,*
   2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) ......................................... 11

### Statutes

18 U.S.C. § 1030(c)(4)(A)(i)(I) ..................................................................... 21

18 U.S.C. § 1030(e)(11) .................................................................................. 21

18 U.S.C. § 1030(g) ........................................................................................ 21

Cal. Civ. Code § 1780(a) ................................................................................ 20

Cal. Civ. Code § 1782(a) ................................................................................ 21

Cal. Civ. Code § 3294(a) ................................................................................ 25

Cal. Civ. Code § 3294(b) ................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# I.    Introduction

Criminals stole cryptocurrency from Seth Shapiro.  Mr. Shapiro blames AT&T for the theft, but he is wrong, and his complaint states no viable claim against AT&T under any theory.

Instead, Mr. Shapiro's complaint hinges on the bare-thin conclusion that the alleged transfer of his phone number to another phone (a "SIM swap") controlled by criminals set into motion a lengthy, complex, unspecified chain of events that somehow permitted the same or other criminals access to Mr. Shapiro's various accounts—accounts that AT&T itself could not have accessed.  Nothing that he alleges connects the alleged SIM swap to myriad other events that were necessary predicates for the criminals to steal his cryptocurrency.

Mr. Shapiro's complaint is based on inference.  He wants the Court to believe that, because he experienced a SIM swap and a theft, the SIM swap must not only have been necessary for that theft to occur, but also the theft's proximate cause.  But it is equally plausible that the SIM swap had nothing to do with the thefts, because the SIM swap and the thefts reflect that criminals must have had pre-existing knowledge of Mr. Shapiro's holdings and his personal information, yet the complaint lacks any allegations to explain how the SIM swap contributed to that pre-existing knowledge.  Mr. Shapiro certainly has not pled that the alleged SIM swap was a proximate cause of any theft, and could not credibly do so because his causation chain depends not only on the criminal acts of third parties, but also on entirely undisclosed intervening steps that cannot even be examined to determine whether they were tenuous or unforeseeable.  For instance, Mr. Shapiro does not explain what security protected his funds; what information the criminals required to circumvent that security; or what, if any, of that information was obtained independent of the alleged SIM swap.  When the theory of causation requires the Court to indulge a guess as to how the alleged misconduct caused the alleged harm, the complaint fails to plead proximate cause.

In addition to his failure to plead proximate cause, Mr. Shapiro's claims also have additional flaws that require dismissal. Each of these flaws is set forth in the Notice of Motion and discussed below in more detail.

In short, Mr. Shapiro's complaint overreaches at every turn in his attempt to blame AT&T for conduct that it did not control, and for harm that should be assigned to the intentional misconduct of third-party hackers or, potentially, to Mr. Shapiro's own negligence, if any loss occurred at all. The complaint should be dismissed in its entirety.

## II.    Facts[1]

According to the allegations in the complaint, Mr. Shapiro entered into a wireless contract with AT&T in 2006. Compl. ¶ 10. On May 16, 2018, Mr. Shapiro noticed that his cell phone was no longer connected to the AT&T network. Compl. ¶ 31. He later learned that the wireless number associated with his SIM card had been assigned to another SIM card in a phone controlled by third-party criminal hackers. Compl. ¶¶ 36, 47–48. Mr. Shapiro alleges that the hackers used the SIM swap to take control of his phone number and, without further explanation, that the hackers were able to access eleven cryptocurrency accounts and transfer funds from an unspecified number of these accounts. Compl. ¶¶ 39–40, 42–44.

While hackers were allegedly gaining access to Mr. Shapiro's cryptocurrency accounts, Mr. Shapiro called AT&T customer service and later visited an AT&T retail location and purchased a new phone. Compl. ¶¶ 33, 35. AT&T representatives at the retail store purportedly told Mr. Shapiro that "they had noted the SIM swap activity in his account," but that his "SIM card would not be swapped again without his authorization." Compl. ¶ 36. He alleges that a few minutes later, another unauthorized SIM swap occurred, and that while he was waiting to speak to another AT&T representative, hackers transferred and stole roughly $1.8 million from his cryptocurrency accounts. Compl. ¶¶ 39, 42. He alleges that two more swaps occurred

---

[1] For this motion only, AT&T assumes the truth of the well-pled allegations in Mr. Shapiro's complaint.

over the following year, but does not allege that he lost funds from those swaps.  Compl. ¶¶ 65, 68.  Mr. Shapiro then filed this action.

## III.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted).  If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Moreover, claims that sound in fraud "must meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (internal citation omitted).  "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA" where those claims sound in fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## IV.    Argument

### A.    Mr. Shapiro Failed To Adequately Allege Proximate Causation for Any of His Claims.

Under California law, "causation of damages" in tort cases "requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997).  Proximate cause "is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the [alleged] injury . . . and without which such result would not have occurred." *California v. Super. Ct.*, 150 Cal. App. 3d 848, 857 (1984) (internal citation and quotation marks omitted); *see also*

*Johnson v. Nw. Airlines, Inc.*, 2010 WL 5564629, at *8 (N.D. Cal. May 5, 2010).  A defendant's liability does not extend "to damage suffered as a proximate result of the independent intervening acts of others."  *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990).  Mr. Shapiro has not adequately pled proximate cause for any of his claims.

### 1.   Mr. Shapiro Does Not Allege How Accessing His Phone Number Led to the Loss of $1.8 Million.

Mr. Shapiro alleges that inadequate security measures led to the theft of his cryptocurrency.  But these allegations are bare conclusions, lacking any explanation of the sequence of events leading to his claimed loss.  *Iqbal*, 556 U.S. at 662.  While Mr. Shapiro alleges four SIM swaps, only one of these allegedly led to any loss.  Compl. ¶ 39.  Importantly, a SIM swap by itself does not provide knowledge of or access to a cryptocurrency or other account.  At most, a SIM swap transfers control of a phone number.  *See* Compl. ¶¶ 20–24.  To gain access to cryptocurrency, one would need to also have account information—where the funds were located, who controlled the accounts in which they were held, and how to circumvent security to access those funds.

Mr. Shapiro alleges that, after executing a single SIM swap, hackers took control of eleven different cryptocurrency accounts, Compl. ¶ 40, "four email addresses," and his "Evernote" and "PayPal" accounts, Compl. ¶ 44.  Yet Mr. Shapiro fails to plausibly allege how the purported swap of his SIM card was in any way necessary or sufficient to achieve these actions.  Indeed, Mr. Shapiro admits that the mobile number would be "one of the factors" protecting account access and that the person who had control over his number also would have needed to "steal[] [his] password."  Compl. ¶ 120.  Yet he pleads nothing about any of these issues, instead summarily alleging that the hackers used control over his phone number to transfer roughly $1.8 million from some portion of eleven different cryptocurrency accounts.  Compl. ¶¶ 38, 39.

Mr. Shapiro's allegations raise far more questions than they answer.  How did the hackers find out what Mr. Shapiro's wireless number was or that he was an AT&T customer?  How did the hackers know Mr. Shapiro had money stored in eleven different

Gibson, Dunn & Crutcher LLP

4

cryptocurrency accounts, which cryptocurrency accounts he held, or what his user names or passwords were for those cryptocurrency accounts?  What other information did the alleged hackers have that was used to access these accounts?  How did hackers obtain that information?  Did Mr. Shapiro's cryptocurrency accounts require the user to answer a security question?  Did he use the same password for all of his cryptocurrency accounts?  Did he share his passwords with anyone else?

Notably, Mr. Shapiro suggests that he stored copies of his "password and log-in information" online for various accounts.  Compl. ¶ 86.  But he does not identify the accounts to which this log-in information related or where it was stored.  He also does not allege how the SIM swap led to the hackers' possession of the passwords needed to steal any cryptocurrency—passwords AT&T never possessed and could not have divulged, and which Mr. Shapiro was solely responsible for securing.  Mr. Shapiro's allegations fail to plausibly plead an answer to the most basic question of whether the SIM swap was necessary *at all*, or whether other failures, such as Mr. Shapiro's failure to properly safeguard his log-in information, provided the necessary access.

Even more critically, the complaint is devoid of any reference to the type of authentication Mr. Shapiro's accounts required.  Was he using simple password authentication to protect nearly $2 million dollars in his cryptocurrency accounts— password authentication that could be reset through a simple text message alone?  Did his cryptocurrency accounts allow him to transfer nearly $2 million dollars at the click of a button?  Or did the hackers have to jump through additional security hurdles before transferring such a large sum?

These holes in Mr. Shapiro's conclusory chain of causation defeat proximate cause as a matter of law under California case law.  For example, in *California v. Superior Court*, the plaintiffs alleged that the Real Estate Commissioner had failed to investigate a claim for negligent supervision of a real estate agent.  150 Cal. App. 3d at 852–53.  That agent later stole funds belonging to the plaintiffs, and plaintiffs alleged that the failure to investigate was the proximate cause of their injuries.  *Id*.  The court

rejected this argument, finding that the "causal link" between the alleged negligence and the damages was "tenuous at best" because "several procedural steps" lay between the alleged negligence and the harm. *Id*. at 858–59. Even if the Commissioner had used reasonable care and discovered the agent's wrongdoing, "there is no reasonable assurance that sanctions would have been imposed that would have prevented plaintiffs' subsequent losses." *Id*. at 857; *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 355 (2015) (reaffirming *State of Cal.*).

The recent decision of the Court of Appeal in *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 140 (2018), is similar. There, victims of an automobile crash sued Apple because the other driver was recklessly using FaceTime while driving, asserting that Apple was negligent in not equipping the iPhone 6 with a lockout feature. *Id*. But the court dismissed the complaint, concluding that the plaintiffs could not establish proximate cause. *Id.* at 152, 155. The court specifically noted that it did *not* "conclude here that [the driver's] use of the iPhone while driving was unforeseeable." *Id*. at 155. Instead, the court dismissed the complaint because it concluded that "the gap between Apple's design of the iPhone and the [plaintiffs'] injuries is too great for the tort system to hold Apple responsible." *Id*. (citing *State Hosps.*, 61 Cal. 4th at 355–57).

Similarly, in the related context of Article III standing, one court rejected similar allegations for failure to plead a causal connection between the defendant's conduct and the plaintiff's harm. *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015). In *Antman*, the plaintiff alleged that the defendant disclosed his "name and drivers' license information," as well as "other personal information," which hackers then used to "apply for the Capital One credit card." *Id*. But the court dismissed the claim because the plaintiff had failed to plead how a "person could apply for a credit card without a social security number," requiring the court to guess how the defendant's alleged disclosure led to the plaintiff's harm. *Id*. It reaffirmed that conclusion even after the plaintiff amended his pleadings to allege that his "bank account and routing number" were also stolen. *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *10 (N.D. Cal.

May 10, 2018); *cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *19 (N.D. Cal. Aug. 30, 2017) (finding causal connection where purported data breach allegedly permitted hackers to learn the plaintiffs' "names, email addresses, recovery email accounts, telephone numbers, birth dates, passwords, security questions and answers, and account 'nonce' (a cryptographic value unique to each account)").

At base, Mr. Shapiro factually alleges hackers gained control of his phone number, then offers a bald conclusion that such control enabled the hackers to learn his passwords or gain access to his cryptocurrency accounts. Comp. ¶¶ 40, 42. But he omits any factual allegations tying those events together or demonstrating how the alleged SIM swap (as opposed to other independent third-party acts, or his own negligence) is the thread that does so. Accordingly, Mr. Shapiro, like the plaintiff in *Antman* and unlike those in *Yahoo!*, has failed to plead the requisite direct causal chain between the allegedly disclosed information and the harm he allegedly suffered.

### 2. Mr. Shapiro's Allegations Fail Because They Rely on Unforeseeable Criminal Acts.

Mr. Shapiro's theory also fails because his harm depends on multiple "independent illegal acts of third parties." *O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997) (internal citation omitted). Such actions "are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury." *Id.*; *see also Jesse v. Malcmacher*, 2016 WL 9450683, at *10 (C.D. Cal. Apr. 5, 2016) ("The illegal acts of third parties are unforeseeable as a matter of law."). As one California court observed, defendants "lack the legal or practical ability to control such criminal actions of third parties." *Martinez*, 225 Cal. App. 3d at 1569; *see also Gregorian v. Nat'l Convenience Stores, Inc.*, 174 Cal. App. 3d 944, 947 (1985).

Courts outside California have reached the same conclusion in similar circumstances. For example, in *Citizens Bank of Pennsylvania v. Reimbursement Techs., Inc.*, the plaintiff bank sued the defendant, a physician billing company, after one of the

defendant's employees provided the financial information of 134 bank customers to a fraud ring over the course of nine months.  2014 WL 2738220, at *1 (E.D. Pa. June 17, 2014), *aff'd*, 609 F. App'x 88 (3d Cir. 2015).  Even though the defendant had a statutory duty to protect patient data, the court dismissed the plaintiff's complaint for failure to allege proximate cause.  *Id.* at *1–2.  The plaintiff's claim was "causally separated from plaintiff's actual harm by multiple intervening acts of independent third parties," including a rogue employee of the defendants, members of a third-party "fraud ring," and "plaintiff's own employees" who did not notice any fraudulent activity "until after the fact."  *Id.* at *5.

Like the defendant in *Citizens Bank*, AT&T lacks the legal and practical ability to control criminal acts by sophisticated hackers.  Even if AT&T's security measures were inadequate, and AT&T denies they were, no theft would have occurred without, at a minimum, (1) an illegal SIM swap (2) by hackers who had information regarding Mr. Shapiro's cryptocurrency accounts and holdings, who then (3) illegally hacked those accounts using (4) other identifying information about Mr. Shapiro that was required to execute the SIM swap, such as his wireless number and that he was an AT&T customer and (5) other confidential information about Mr. Shapiro's cryptocurrency accounts (such as user names, passwords, and/or private wallet addresses).  Mr. Shapiro has not alleged what independent, illegal acts occurred, much less pled facts suggesting AT&T is responsible for those acts or that those acts were foreseeable.  Accordingly, Mr. Shapiro's complaint should be dismissed in its entirety for failure to adequately allege proximate cause.

**B.    Mr. Shapiro's Right to Privacy Claim Under the California Constitution Should Be Dismissed (Count III).**

To establish an invasion of privacy violation, a plaintiff must allege: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024

(N.D. Cal. 2012) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994)).  The California Constitution sets "a high bar for an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025.  Mr. Shapiro fails to meet this high bar.

### 1. Mr. Shapiro Does Not Plead an Egregious Breach of Social Norms.

To establish an invasion of privacy violation, a plaintiff must allege that the defendant's conduct is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37.  The complaint falls far short.

It is well-established that "negligent conduct" does not constitute "actionable conduct under the California Constitution," even when it leads to "theft of highly personal information, including social security numbers." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *see also Low*, 900 F. Supp. 2d at 1025.  For example, in *In re iPhone Application Litigation*, the defendant allegedly disclosed without consent "the unique device identifier number, personal data, and geolocation information" from the plaintiffs' Apple devices.  844 F. Supp. 2d at 1050, 1063.  In their complaint, the plaintiffs alleged that this disclosure increased the risk that hackers would intercept "their personal information." *Id.* at 1050.  But the court dismissed the plaintiffs' complaint, holding that "such disclosure does not constitute an egregious breach of social norms." *Id.* at 1063.

Similarly, in *Ruiz v. Gap, Inc.*, the plaintiff submitted a job application to the defendant through a vendor the defendant used "for recruiting purposes."  540 F. Supp. 2d 1121, 1124 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).  The application contained "personal information, including his social security number." *Id.*  Third parties then stole a laptop from the vendor, who did not use encryption to protect the plaintiff's personal information. *Id.* at 1125.  Despite noting that the plaintiff could pursue other claims, the court dismissed his constitutional right to privacy claim—he had merely alleged "increased risk of identity theft," which did not "constitute an egregious breach" and therefore was not a violation of the "right to privacy." *Id.* at 1128.

The same reasoning applies here.  Mr. Shapiro alleges, at most, negligent conduct leading to an increased risk that hackers could access his personal cryptocurrency accounts—accounts that AT&T could not even access.  Compl. ¶ 115.  Throughout the complaint, Mr. Shapiro alleges nothing more than omissions—AT&T failed to "implement sufficient data security systems and procedures," Compl. ¶ 5; "failed to protect," Compl. ¶ 97; "failed to properly train," Compl. ¶ 103; and "failed to take reasonable steps to protect Mr. Shapiro's CPNI," Compl. ¶ 108.  Such alleged omissions are not actionable under the California Constitution's right to privacy.

### 2.    Mr. Shapiro Does Not Specifically Allege What Information AT&T Disclosed.

Mr. Shapiro's invasion of privacy claim fails for another reason—he fails to specifically allege what private information AT&T disclosed.  To plead a constitutional violation, a plaintiff must plead with specificity the exact information disclosed.  Without the required specificity, a court cannot determine whether the plaintiff had a protected privacy interest in the disclosed information.  *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014).

The Court's decision in *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014), is instructive.  In that case, the plaintiffs pled that the defendant "intercepted [their] emails, scanned and stored their content, and distributed the content to third parties without Plaintiffs' consent."  *Id.* at 1039.  The plaintiffs argued that they had a reasonable expectation of privacy in their email.  *Id.* at 1040.  The court dismissed the claims because it concluded that courts only "found a protected privacy interest in the context of email communications" where "the plaintiff alleged with specificity the material in the content of the email."  *Id.; see also Sunbelt Rentals*, 43 F. Supp. 3d at 1035 (finding no "reasonable expectation of privacy" in text messages where the "pleadings do not identify the contents of any particular text messages").

Other courts have dismissed similarly vague allegations.  For example, a plaintiff did not adequately plead a claim when she pled that the defendants disclosed her "private

information" during a credit check, but did "not identify exactly what private information defendants . . . [allegedly] disclosed in relation to the credit checks." *Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014); *see also Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *7 (N.D. Cal. July 24, 2013) (disclosure of "Plaintiffs' contact information."). Similarly, the allegation that a defendant disclosed the plaintiff's "financial information," "without greater explanation, does not necessarily satisfy the high threshold required by California law." *Albin v. Trustmark Ins. Co.*, 2013 WL 12191722, at *10 (C.D. Cal. Nov. 25, 2013).

Mr. Shapiro's allegations about his allegedly disclosed information are precisely the type of generic, non-specific allegation that courts have rejected. As an initial matter, although Mr. Shapiro at one point alleges AT&T allowed its "employees and third parties" to improperly access Mr. Shapiro's confidential AT&T account information, Compl. ¶ 200, in other places he makes clear that it is only the supposed employees that viewed that account information.[2] Compl. ¶ 94. This follows because a SIM swap does not provide any such account information—it simply transfers control over a phone number. Compl. ¶ 22. Even as to the information that Mr. Shapiro alleges AT&T's supposed "employees" viewed, his complaint does not include the required specificity. Instead, Mr. Shapiro alleges only that those "employees" were able to view "information about the configuration, type, and use of his subscribed AT&T services, his personal information, his SIM card details, and his billing information." Compl. ¶ 94. Each of these categories is indistinguishable from the type of information that courts have found insufficient to state a claim. *See, e.g.*, *Sunbelt Rentals*, 43 F. Supp. 3d at 1035 (text messages); *Albin*, 2013 WL 12191722, at *10 (financial information); *Zbitnoff*, 2014 WL 1101161, at *4 ("private information").

---

[2] In fact, Robert Jack and Jarratt White, whom Mr. Shapiro alleges were responsible for the alleged SIM swaps, were not employees of AT&T, but were affiliated with an independent company, Synchronoss/STI, that provides AT&T service. Although Mr. Shapiro refers to the men as employees, he appears to know otherwise, as he uses the vague term "contract employee" to describe their status. Compl. ¶ 47 n.11.

Because Mr. Shapiro fails to plead the information allegedly revealed at the required level of specificity to plausibly plead a reasonable expectation of privacy, his claim must be dismissed.

**C.   Mr. Shapiro's Claims for Negligence and Negligent Supervision and Entrustment (Counts IV and V) Should Be Dismissed.**

**1.   The Economic Loss Doctrine Bars Mr. Shapiro's Negligence and Negligent Supervision and Entrustment Claims.**

Mr. Shapiro's negligence claims are barred by the economic loss doctrine.  *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091–94 (C.D. Cal. 2017).  The "fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009); *see also Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008).  The economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

Mr. Shapiro's negligence and negligent entrustment and supervision claims assert only that AT&T's security measures were inferior to what AT&T promised through alleged contracts with Mr. Shapiro.  Compl. ¶¶ 151, 166, 209.  Mr. Shapiro's claims are thus "purported tort claims related to the performance of a contract" and "are viable only where 'the duty that gives rise to tort liability is either *completely independent* of the contract or arises from conduct which is both intentional and intended to harm.'" *Audigier Brand Mgmt. v. Perez*, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (quoting *Robinson*, 34 Cal. 4th at 988) (emphasis in original).  Mr. Shapiro has not pled facts to fall within either of these categories.

Courts in the Ninth Circuit routinely dismiss negligence claims under the economic loss rule.  For example, in *Body Jewelz*, the plaintiff sued the defendant, a

website administrator, after the plaintiff's website crashed.  241 F. Supp. 3d at 1091–94.
The court dismissed the claim without leave to amend under the economic loss doctrine
because the plaintiff alleged "only economic loss in connection with its negligence
claim."  *Id.* at 1092, 1094; *see also Hammond Enters. Inc. v. ZPS Am. LLC*, 2013 WL
5814505, at \*7–8 (N.D. Cal. Oct. 29, 2013) (dismissing tort claims with prejudice under
economic loss rule); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL
4530470, at \*9 (N.D. Cal. Aug. 26, 2013) (gathering cases where tort claims were
dismissed on the basis of the economic loss rule).

Courts construing California law have repeatedly applied the economic loss
doctrine to dismiss data breach allegations.[3]  For example, in *In re Sony Gaming
Networks & Customer Data Security Breach Litigation*, the court addressed a negligence
claim based on a large-scale data breach.  996 F. Supp. 2d 942 (S.D. Cal. 2014).  There,
like here, the plaintiffs' complaint centered largely on the defendant's detailed privacy
policy.  *Id.* at 976.  But the court dismissed the tort claims under the economic loss
doctrine—the plaintiffs' claims were based on nothing more than "everyday consumer
transactions, and therefore, negligence [was] the wrong legal theory on which to pursue
recovery for Plaintiffs' economic losses."  *Id.* at 969.  Similarly, in *In re Target Corp.
Data Security Breach Litigation*, the court addressed a negligence claim in "one of the
largest breaches of payment-card security in United States retail history."  66 F. Supp.
3d 1154, 1157 (D. Minn. 2014).  Despite the large-scale harm done in *Target*, the court
dismissed the plaintiffs' claims under the economic loss doctrine because any alleged
harm came from disappointed "commercial expectations."  *Id.* at 1171–72.

Mr. Shapiro's negligence claims are squarely foreclosed by this precedent.  He
sues for negligence on the basis of an alleged contract, AT&T's Privacy Policy.  Compl.

---

[3]  *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1246 (D.
Colo. 2018) (dismissing a data-breach claim based on the economic loss doctrine);
*Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at \*6 (N.D. Cal. Sept. 14, 2016)
(same); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1064 (relying on the
economic loss doctrine to dismiss a claim for "unreasonable risk to the security of
sensitive personal information").

Gibson, Dunn &
Crutcher LLP

¶ 151.  Because the economic loss rule bars his tort claims, this Court should dismiss those claims.

## 2. The Special Relationship Exception Is Not Available Because AT&T and Mr. Shapiro Are in Direct Contractual Privity.

Because AT&T and Mr. Shapiro are in direct contractual privity, the "special relationship" exception to the economic loss rule that applies in certain circumstances where the parties *lack* contractual privity does not save Mr. Shapiro's claims.  The special relationship exception arose in *J'Aire v. Gregory*, 24 Cal. 3d 799 (1979).  In *J'Aire*, the plaintiff sued in negligence for damages suffered as a result of negligent performance of a contract that defendant had entered with a third party, to which the plaintiff was found not to be a third-party beneficiary.  The Court held that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity."  *J'Aire*, 24 Cal. 3d at 804.  The Court considered six factors to decide whether the relationship between the parties was such that the plaintiff, although not a party to the contract, should have a remedy for the defendant's negligence: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."  *J'Aire*, 24 Cal. 3d at 804.

As courts in this district have noted, "[e]ven the most cursory review of *J'Aire*'s six-factor test reveals that it was not intended for application to parties in privity." *Body Jewelz, Inc.*, 241 F. Supp. 3d at 1093; *see also Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 963 (C.D. Cal. 2016).  While courts have adopted inconsistent approaches to whether its test can nonetheless be applied where a plaintiff in contractual privity seeks to circumvent the economic loss rule, the better-reasoned cases limit *J'Aire* to circumstances where the parties are not in contractual privity.  Where there *is* contractual

privity, a plaintiff has the option of a breach of contract suit, and nonetheless permitting that plaintiff to file a tort claim would eviscerate the economic loss rule.

Both *J'Aire* and *Biakanja v. Irving,* 49 Cal. 2d 647 (1958), on which it relies, deal with a plaintiff who was not in privity of contract with the defendant.  *See J'Aire*, 24 Cal. 3d at 802–804; *Biakanja*, 49 Cal. 2d at 651; *see also R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *5 (N.D. Cal. Nov. 11, 2016) ("By their terms, *J'aire* and *Biakanja* only apply where the parties are not in direct contractual privity."). *Biakanja* did not explicitly discuss the economic loss rule at all, instead addressing the question of whether the relationship between the plaintiff and the defendant was such that "defendant was under a duty to exercise due care to protect plaintiff from injury and was liable for damage caused plaintiff by his negligence even though they were not in privity of contract."  49 Cal. 2d at 648.

To apply the same "special relationship" exception that allows a party with *no* contractual rights to sue for negligence to a party *with* contractual rights would create an exception that swallows the rule.  After all, directly contracting parties *always* have a relationship—a contractual one—which would lead to the over-designation of relationships as "special" under the *J'Aire* test.  *Body Jewelz*, 241 F. Supp. 3d at 1093. This outcome is not what the *J'Aire* court intended and is entirely at odds with the "special relationship" exception's characterization as a "narrow" or "limited" exception. *Id.*; *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 211 (1997).

Public policy also favors narrow application of the special relationship exception. If the Court allows parties to recover under tort law for a breach of contract claim, it will undermine the "predictability" that parties seek when contracting in our "commercial system."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).  There is no reason for expanding "potential tort liability under the six-factor test to commercial parties that have negotiated their own contractual obligations."  *Dep't of Water & Power of L.A. v. ABB Power T&D Co.*, 902 F. Supp. 1178, 1189 (C.D. Cal. 1995); *see also Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 316 (9th Cir. 1989) (Kozinski, J.,

concurring).  The purposes underlying the economic loss rule strongly counsel against expanding it to parties in contractual privity.

### 3. Even if the Special Relationship Exception Is Available, Mr. Shapiro Does Not Adequately Plead It.

In the complaint, Mr. Shapiro has summarily pled that he had a special relationship with AT&T, Compl. ¶ 213, but he does not address any of the six *J'Aire* factors.  The facts that he pleads are insufficient to plausibly allege a special relationship in the context of two parties in privity.

With regard to the first factor—the extent to which the transaction was intended to affect the plaintiff—Mr. Shapiro did not allege how the transaction was intended to affect him "in any way particular to him, as opposed to all potential" consumers. *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1229 (2008) (holding that the "*J'Aire* test was not met because the sink sales at issue were like any other sink sale made by the product manufacturer—i.e., the product manufacturer had not specially made the sink for the benefit of the [plaintiffs]").  In *Ott v. Alfa–Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455 (1995), in applying the *J'Aire* test to a claim, the California Court of Appeal observed that the plaintiffs had not pled that the product at issue "was 'intended to affect' the plaintiffs in any way particular to the plaintiffs, as opposed to all potential purchasers of the equipment." *Id.* at 1455.  The Court held that "[t]he absence of this foundation precludes a finding of 'special relationship' as required by *J'Aire*." *Id.* at 1455–56.  In other words, where parties are in contractual privity, a relationship could only be "special," if the test is to be applied at all, if the plaintiff can plead that the defendant developed the services at issue for his "specific benefit, above and beyond what was offered to all consumers." *In re Sony Gaming Networks*, 996 F. Supp. 2d at 972.  Mr. Shapiro has pled no facts to meet this standard.

With regard to the second factor—the foreseeability of harm—Mr. Shapiro alleges that the theft of his cryptocurrency was foreseeable.  But, as noted above, numerous cases have held that the "illegal acts of third parties are unforeseeable as a

matter of law." *See, e.g.*, *Jesse*, 2016 WL 9450683, at *10. Further, given Mr. Shapiro's conspicuous failure to plausibly allege a number of critical details regarding the chain of events that ultimately led to his purported losses, he has necessarily deprived AT&T and the Court of any means to assess whether this harm was foreseeable.

The third factor—the degree of certainty that the defendant caused the plaintiff's harm—is no better for Mr. Shapiro. This factor turns on whether AT&T's actions proximately caused hackers to steal Mr. Shapiro's cryptocurrency. *In re Sony Gaming Networks*, 996 F. Supp. 2d at 972 (using proximate cause to analyze "the degree of certainty that [defendant's] conduct" caused plaintiff's harm). But, as discussed above, AT&T's alleged actions did not proximately cause the theft of Mr. Shapiro's cryptocurrency. *See Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000) (under third *J'Aire* factor and holding that, without proximate causation, "it is difficult to imagine what other factors, singly or in combination, might justify the court in finding liability").

The same reasoning applies to the fourth factor—the closeness of the connection between the defendant's conduct and the injury suffered. Mr. Shapiro alleges no connection between AT&T and the third-party hackers, no connection between AT&T and the security required to access his cryptocurrency accounts, and no connection between AT&T and any of the accounts the hackers accessed. *Supra* Section IV.A.

The fifth factor—the moral blame attached to the defendant's conduct—also favors a finding of no special relationship. Courts generally only attach moral blame to a defendant's conduct when it is "reckless or purposeful." *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1342 (2014) (no moral blame in absence of "reckless or purposeful behavior"). Mr. Shapiro does not allege that AT&T's conduct was reckless or purposefully designed to permit SIM swaps, much less thefts of customer property.

Finally, the sixth factor—the policy of preventing future harm—favors AT&T, which already has strong incentives to avoid fraudulent SIM swaps. Similarly, AT&T has existing incentives to maintain its "relationship with retail buyers, [limit its] financial liability, [and protect its] reputation" by continuing to work to improve its security. *Id.*

1   at 1342.   Absent a "special relationship," Mr. Shapiro's negligence and negligent

2   supervision and entrustment claims should be dismissed under the economic loss rule.

3   **D.**   **Mr. Shapiro's CLRA Claim (Count VI) Should Be Dismissed.**

4      **1.**   **Mr. Shapiro Fails To Plead Actual Reliance.**

5      To state a claim under the CLRA, the plaintiff must plead "actual reliance" on the

6   defendant's misrepresentation or omission.   *See, e.g.*, *Backhaut v. Apple, Inc.*, 74 F.

7   Supp. 3d 1033, 1047–48 (N.D. Cal. 2014); *see also Durell v. Sharp Healthcare*, 183 Cal.

8   App. 4th 1350, 1367 (2010) (affirming dismissal of a CLRA claim for failure to plead

9   "reliance"); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012)

10   (requiring the plaintiff to plead actual reliance on a CLRA fraud claim); *Hall v. Time*

11   *Inc.*, 158 Cal. App. 4th 847, 857 (2008) (same).   To adequately allege reliance, a plaintiff

12   must, at a minimum, allege that he reviewed the alleged misrepresentation or omission.

13   *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016).

14      In numerous cases, courts have dismissed CLRA claims because the plaintiff

15   failed to allege that he reviewed the allegedly deceptive material.   For example, in *In re*

16   *Sony Gaming Networks*, the court dismissed a CLRA claim because the defendant's

17   alleged misrepresentations came after the "Plaintiffs had already purchased or otherwise

18   acquired their consoles."   903 F. Supp. 2d at 969.   Reliance was therefore "impossible."

19   *Id.* at 970.   Similarly, in *Handy v. LogMeIn, Inc.*, the plaintiff set forth the "Defendant's

20   advertisements" in the body of his complaint, but he did not "allege that he saw these

21   [advertisements] before he purchased the [product] or that he relied upon them."   2015

22   WL 4508669, at *8 (E.D. Cal. July 24, 2015).   This failure was "fatal to his claim."   *Id.*

23   And in *Ehrlich v. BMW of N. Am., LLC*, the court dismissed a CLRA claim because the

24   plaintiff did not adequately plead reliance.   The court held that the complaint did not

25   allege that the plaintiff reviewed "any brochure, website, or promotional material"

26   before making his purchase.   801 F. Supp. 2d 908, 919 (C.D. Cal. 2010).   Countless

27

28

Gibson, Dunn &
Crutcher LLP

1   other cases reach the same result.[4]

2          Here, Mr. Shapiro never pleads that he had read, seen, or heard any of AT&T's

3   alleged representations when he decided to contract with AT&T.  Mr. Shapiro alleges

4   "AT&T represented that, in purchasing AT&T mobile service and using AT&T-

5   compatible phones, Mr. Shapiro's confidential data would be safeguarded and

6   protected."  Compl. ¶ 241.  He also pleads that "a reasonable person would attach

7   importance to the privacy of his sensitive account data in determining whether to

8   contract with a mobile phone provider."  Compl. ¶ 243.  These allegations neither

9   mention a specific representation by AT&T nor suggest that that Mr. Shapiro reviewed

10  any alleged misrepresentations.  Mr. Shapiro cannot "act in reliance on a statement" he

11  did "not see, read, or hear."  *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1022

12  (N.D. Cal. 2013).

13         Mr. Shapiro also has not plausibly alleged that, even if he reviewed AT&T's

14  statements regarding its security, he relied on those statements to conclude that he was

15  protected from the type of SIM swap that he alleged occurs here.  To the contrary, in the

16  Privacy Policy that Mr. Shapiro attaches to his complaint, AT&T specifically disclosed

17  that "no security measures are perfect" and AT&T "cannot guarantee that your Personal

18  Information will never be disclosed in a manner inconsistent with this Policy (for

19  example, as the result of unauthorized acts by third parties that violate the law or this

20  Policy)."  Compl., Ex. C at 26; *cf. Clayton v. Landsing Pac. Fund, Inc.*, 2002 WL

21  1058247, at *6 (N.D. Cal. May 9, 2002) (no claim for fraudulent concealment where

22  defendants "*actually disclosed the information . . . plaintiff [alleged] was kept secret

23  from her*") (emphasis in original), *aff'd*, 56 F. App'x 379 (9th Cir. 2003).  Indeed, what

24

25  _____

26  [4]  *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at
    *28 ("Plaintiffs do not allege that they 'actually read' Defendants' Terms of Service, let
27  alone that Plaintiffs 'actually read' the separate Privacy Policy containing the alleged
    misrepresentation at issue"); *Rojas-Lozano*, 159 F. Supp. 3d at 1114 (similar); *In re
28  LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) ("Plaintiffs
    do not even allege that they actually read the alleged misrepresentation—the Privacy
    Policy—which would be necessary to support a claim of misrepresentation.").

Mr. Shapiro alleges happened to him is exactly what AT&T disclosed could happen—unauthorized hackers violated the law by bribing a third party who also broke the law, giving the hackers control over Mr. Shapiro's telephone number.

Because Mr. Shapiro neither pleads that he read, reviewed, saw, or heard any of the alleged misrepresentations or omissions in the complaint, nor plausibly pleads that he relied on AT&T's statements to conclude that his account was fully protected, his CLRA claim must be dismissed.

### 2. All of the Alleged Misrepresentations Occurred After Mr. Shapiro's Transaction with AT&T.

As noted above, the CLRA protects consumers from deceptive practices that are "intended to result or which result[ ] in the sale or lease of goods or services." Cal. Civ. Code § 1780(a). "By definition, the CLRA does not apply to unfair or deceptive practices that occur after the sale or lease has occurred." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014). Accordingly, a plaintiff cannot base his CLRA claim on "events following a sales transaction." *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014).

Here, Mr. Shapiro points to one document that he alleges contains misrepresentations and omissions: AT&T's Privacy Policy, a document revised in February of 2019. Compl. ¶ 151, Exh. C. Mr. Shapiro alleges that he decided to contract with AT&T in 2006, and the complaint does not allege that he renewed his services at any other point. Compl. ¶ 10. The 2019 document clearly did not influence Mr. Shapiro's 2006 choice of AT&T. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 n.6 (2006) ("In any event, those representations, such as they were, occurred in 2000 and 2001, not at the time of sale [nearly a decade earlier].");  *Hensley–Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *6 (N.D. Cal. Apr. 7, 2014) ("[T]he CLRA only applies to representation and omissions that occur during pre-sale transactions."). This provides an additional basis to dismiss Mr. Shapiro's CLRA claim.

### 3.    Mr. Shapiro Fails To Plead that He Provided the Required Written Notice.

The CLRA requires that written notice be provided to the seller at least thirty days prior to commencement of an action seeking damages.  Cal. Civ. Code § 1782(a); *Sanbrook v. Office Depot, Inc.*, 2008 WL 1994884, at *3 (N.D. Cal. May 5, 2008). Written notice is "necessary to state a claim."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007); *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (Ct. App. 1975) (requiring "literal application of the notice provisions").  And courts routinely dismiss CLRA claims with prejudice for failure to provide such notice. *See, e.g., Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009); *Cattie*, 504 F. Supp. 2d at 950; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007).

Mr. Shapiro nowhere alleges that he provided written notice of his CLRA claim, yet seeks damages for it.  Compl. ¶¶ 237–47.  His claim should be dismissed.

### E.    Mr. Shapiro's Claim Under The Computer Fraud and Abuse Act (Count VII) Should Be Dismissed for Failure To Plead a Qualifying Loss.

A plaintiff alleging a violation of the CFAA can bring "a civil action against the violator . . . only if the conduct involves" one of five categories set forth in 18 U.S.C. § 1030(c)(4)(A)(i).  18 U.S.C. § 1030(g).  Subclause (I) of subsection (c)(4)(A)(i), the only subclause even arguably relevant to this case, requires the plaintiff to plead a "loss to 1 or more persons during any 1–year period . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I).  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  Courts have repeatedly observed that the type of losses contemplated by the CFAA are "the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while

the computer is inoperable." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010).  On the other hand, costs unrelated to computer impairment or damages—such as a party "stealing money via ACH transfers"—are "not the type of 'loss' contemplated by CFAA" and "not a loss for which the CFAA provides a civil remedy." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011).

Mr. Shapiro pleads only that he "spent in excess of $5,000 investigating who accessed his mobile device and damaged information on it."  Compl. ¶ 255.  Cases uniformly reject this type of conclusory allegation.  For example, in one case, the plaintiff alleged that it "suffered damages and loss . . . including, without limitation, harm to [its] data and/or computer(s) and other losses and damages in an amount to be proven at trial, but in any event, over $5000 aggregated over a one-year period." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1150 (N.D. Cal. 2010).  The court dismissed the claim because this allegation "verge[d] on the type of conclusory, formulaic recitation of the elements of a cause of action, that *Iqbal* and *Twombly* require a court to disregard."  *Id.* (internal quotation marks and citations omitted).  In another case, the plaintiff alleged that it "suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5000 during a one year period."  *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010).  That court also dismissed the CFAA claim, holding that the plaintiff's loss allegation was "merely a conclusory statement and thus [did] not sufficiently plead the $5000 minimum damages requirement to bring suit under the CFAA."  *Id.*; *see also Fabreeka Int'l Holdings, Inc. v. Haley,* 2015 WL 7253019, at *5 (E.D. Mich. Nov. 17, 2015) (dismissing as conclusory the plaintiff's allegation that it suffered "theft of confidential information and other losses and damage in an amount to be proved at trial, but, in any event, in an amount well over $5000 aggregated").

The shortcomings of Mr. Shapiro's conclusory allegations are even more apparent when contrasted with allegations deemed sufficient in other cases.  For example, one

court held that a plaintiff adequately pled loss when it alleged that it analyzed "which restricted environments had been accessed (to determine the extent of breach)," collected and analyzed "IP addresses accessing Plaintiff's network, to determine whether access was internal or hostile (to determine the appropriate response)," and reviewed "logs of documented users to confirm conclusions." *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 980 (N.D. Cal. 2008). Similarly, a plaintiff sufficiently alleged loss when its complaint detailed the steps taken in an internal investigation and the results of that investigation. *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018); *see also Carnegie Strategic Design Eng'rs v. Cloherty*, 2014 WL 896636, at *4 (W.D. Pa. Mar. 6, 2014) (denying motion to dismiss when plaintiff alleged loss from retaining a computer forensic expert to investigate and mitigate defendant's data breach).

Mr. Shapiro's CFAA loss allegation comes nowhere near the allegations in these cases. While he alleges that he spent in excess of $5,000 "investigating who accessed his mobile device," he does not indicate what steps he took, the costs or timing of those steps, or the results of any investigation. Mr. Shapiro's failure to allege additional facts suggests that "no such damage existed and that [Mr. Shapiro] cannot meet [his] pleading burden." *Advantage Ambulance Grp., Inc. v. Lugo*, 2009 WL 839085, at *4 (E.D. Pa. Mar. 30, 2009) (dismissing a CFAA claim because the plaintiff did not plead "whether or not any measures had to be taken to remedy any damage done to their computer system or to protect themselves from having this alleged injury occur again in the future"). Mr. Shapiro's CFAA claim should be dismissed.

**F.     Mr. Shapiro's Request for Punitive Damages Should Be Stricken.**

Mr. Shapiro requests punitive damages for Counts III and VI and in his general prayer for relief. Compl. ¶¶ 206, 247, 256. Even if Mr. Shapiro had stated a plausible claim for relief on either of those Counts, he has not pled an entitlement to punitive damages. Punitive damages are "disfavored by the law," *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010), and available only upon clear and convincing evidence that defendant's conduct is "so vile, base, contemptible, miserable,

wretched or loathsome that it would be looked down upon and despised by ordinary decent people" or "[having] the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) (internal citation and quotation marks omitted).

California law holds that punitive damages may only be awarded against an entity defendant based on the entity's "own wrongful conduct." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1154 (1998). To hold an entity liable for punitive damages based upon the acts of an employee, the plaintiff must prove, by clear and convincing evidence, that an "officer, director or managing agent" of the entity either: (1) had advance knowledge of the unfitness of the fraudulent, malicious or oppressive employee and employed him or her with a knowing disregard of the rights or safety of others; or (2) committed, ratified, or authorized the fraudulent, malicious or oppressive conduct. Cal. Civ. Code § 3294(b). Managing agents are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (alteration and emphasis in original) (quoting *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999)). Confining liability in this way "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders." *Cruz*, 83 Cal. App. 4th at 167; *see also White*, 21 Cal. 4th at 569.

Here, Mr. Shapiro failed to allege that any "officer, director or managing agent" of AT&T knew about—much less committed, ratified, or authorized—any of the actions about which Mr. Shapiro complains. The only alleged AT&T employees Mr. Shapiro mentions by name are Robert Jack and Jarratt White, both of whom Mr. Shapiro seems to acknowledge were not employed by AT&T, but were affiliated with an independent company that provides AT&T services. *See supra* n.2. Mr. Shapiro does not—and cannot in good faith—allege that AT&T knew about or approved any alleged improper action by Jack or White. If anything, Mr. Shapiro can only allege that their alleged actions were "unauthorized" and against company policy. Compl. ¶¶ 47 n.11, 51. Mr.

Shapiro therefore has not pled a claim for punitive damages against AT&T.

Mr. Shapiro also fails to adequately plead the mental state required to support a claim for punitive damages. In California, a "conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud or malice.'" *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (quoting Cal. Civ. Code § 3294(a)). The "mere use" of terms like fraud "is not enough." *Lavine v. Jessup*, 161 Cal. App. 2d 59, 69 (1958). Instead, any "facts constituting bad faith or fraud must be specifically alleged." *Id.*; *see also Torralbo v. Davol, Inc.*, 2017 WL 5664993, at *7 (C.D. Cal. Oct. 19, 2017).

Mr. Shapiro's allegations concerning malice, fraud, and oppression are based on nothing more than conclusory allegations and unreasonable inferences. For Count III, Mr. Shapiro's conclusory assertions that AT&T acted with the required mental state (Compl. ¶ 206) are "devoid of factual support" and therefore insufficient. *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *7 (C.D. Cal. July 14, 2014) (conclusory statements to support punitive damages "are not entitled to the presumption of truth under *Iqbal* and *Twombly*"). And for Count VI, Mr. Shapiro does not plead any mental state at all. Compl. ¶¶ 237–47. Because Mr. Shapiro "invites the court to read . . . an evil motive" into "facts that describe nothing more than the basic elements" of the claims he asserts, his request for punitive damages should be dismissed. *Kelley*, 750 F. Supp. 2d at 1148.[5]

## V.    Conclusion

For the reasons set forth above, the Court should dismiss the complaint in its entirety due to Mr. Shapiro's failure to plead proximate cause. Moreover, the Court should dismiss Counts III, IV, V, VI, and VII for the additional reasons addressed herein.

---

[5]  To the extent that Mr. Shapiro intends to premise his punitive damages request on allegations sounding in fraud, he must plead those allegations with particularity under Fed. R. Civ. P. 9(b). *Align Tech., Inc. v. Miller*, 2005 WL 3445623, at *2 (N.D. Cal. Dec. 14, 2005). Mr. Shapiro cannot plausibly claim to have met this heightened standard.

Dated:  December 6, 2019                 Respectfully submitted,


                                          GIBSON, DUNN & CRUTCHER LLP


                                          By:  /s/ *Marcellus McRae*
                                               Marcellus McRae


                                          Attorney for Defendant
                                          AT&T MOBILITY, LLC

103585098.13