1   **PIERCE BAINBRIDGE BECK PRICE
    & HECHT LLP**
2   Thomas D. Warren (SBN No. 160921)
    twarren@piercebainbridge.com
3   Andrew Calderón (SBN No. 316673)
    acalderon@piercebainbridge.com
4   355 S. Grand Avenue, 44th Floor
    Los Angeles, CA 90071
5   Telephone: (213) 262-9333
    Facsimile: (213) 279-2008
6

7   Dwayne D. Sam (*pro hac admitted*)
    dsam@piercebainbridge.com
8   600 Pennsylvania Avenue NW
    South Tower, Suite 700
9   Washington, DC 20004
    Telephone: (202) 843-8342
10  Facsimile: (646) 968-4125
11

12  *Counsel for Plaintiff Seth Shapiro*

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                      WESTERN DIVISION

16  SETH SHAPIRO,                    Case No. 2:19-CV-08972 (CBM)
                    Plaintiff,
17         v.                        **PLAINTIFF SETH SHAPIRO'S
                                     OPPOSITION TO DEFENDANT AT&T**
18  AT&T MOBILITY, LLC,              **MOBILITY LLC'S MOTION TO DISMISS
                    Defendant.       THE COMPLAINT**
19
                                     Action Filed: October 17, 2019
20
                                     **Hearing:**
21                                   Date: February 18, 2020
                                     Time: 10:00 a.m.
22                                   Place: 350 West 1st Street, 8th Floor
                                            Courtroom 8B
23                                          Los Angeles, CA 90012
                                     Judge: Hon. Consuelo B. Marshall
24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2   I.   INTRODUCTION ...........................................................................................1

3   II.  ARGUMENT ..................................................................................................2

4        A.   Standard of Review...............................................................................2

5        B.   Mr. Shapiro Adequately Alleged Proximate Cause................................2

6             1.   Mr. Shapiro Adequately Alleged How AT&T's Swapping of His SIM
7                  Card to a Different Phone Led to the Loss of $1.8 million....................2

8             2.   Mr. Shapiro's Allegations Do Not Rely on Unforeseeable Criminal Acts.............5

9        C.   Mr. Shapiro's Right to Privacy Claim Under the California Constitution
10            (Count III) Should Not Be Dismissed Because He Adequately Pled that
              Actions by AT&T's Employees Constitute an Egregious Breach of Social
11            Norms....................................................................................................8

12       D.   Mr. Shapiro Specifically Alleged What Information AT&T Disclosed. .......................9

13       E.   Mr. Shapiro's Claims for Negligence and Negligent Supervision and
14            Entrustment (Counts IV and V) Should Not Be Dismissed, Given the
              Existence of a Special Relationship....................................................11

15       F.   Mr. Shapiro Adequately Alleged a CLRA Claim.................................15

16            1.   Mr. Shapiro Pled that He Relied on AT&T's Misrepresentations at the
17                 AT&T Store. ................................................................................15

18            2.   Under the CLRA, Mr. Shapiro Adequately pled Actual Reliance Based
                   on His Reliance on AT&T's Privacy Policy............................................16
19
              3.   Mr. Shapiro Provided the Requisite Notice Under the CLRA.............17
20
21       G.   Mr. Shapiro Adequately Pled Qualifying Loss Under the CFAA. ...............18

22       H.   Punitive Damages Should Not be Stricken............................................19

23   III. CONCLUSION............................................................................................21

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................2, 21

*Bell Atl. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................................1, 2, 5

*Beshwate v. BMW of N. Am. LLC,*
  No. 1:17–cv–00417–SAB, 2017 WL 6344451 (E.D. Cal. Dec. 12, 2017)..............15

*Bigbee v. Pacific Tel. & Tel. Co.,*
  34 Cal. 3d 49 (1983) ...............................................................................................6

*Cabral v. Supple, LLC,*
  2012 WL 12895825 (C.D. Cal. Oct. 3, 2012).........................................................10

*Campodonico v. State Auto Parks, Inc.,*
  10 Cal. App. 3d 803 (1970) .....................................................................................6

*Castillo v. Seagate Tech., LLC,*
  2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .......................................................13

*Chanda v. Fed. Home Loans Corp.,*
  215 Cal. App. 4th 746 (2013) ..................................................................................6

*City & Cnty. of San Francisco v. Cambridge Integrated Servs. Grp., Inc.,*
  2007 WL 1970092 (N.D. Cal. July 2, 2007)...........................................................11

*CoreLogic, Inc. v. Zurich Am. Ins. Co.,*
  2016 WL 4698902 (N.D. Cal. Sept. 8, 2016) .........................................................11

*Corona v. Sony Pictures Entm't, Inc.,*
  2015 WL 3916744 (C.D.Cal. May 9, 2015) ...........................................................13

*Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd.,*
  2015 WL 1056324 (N.D. Cal. Mar. 10, 2015).........................................................11

*DeSoto v. Yellow Freight Sys., Inc.,*
  957 F.2d 655 (9th Cir. 1992) ...................................................................................2

*Doe 1 v. AOL LLC,*
  719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..................................................................17

*Dubbs v. Glenmark Generics Ltd.,*
  2014 WL 1878906 (C.D. Cal. May 9, 2014) ...........................................................13

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Dynamex Operations W. v. Superior Court*,
 416 P.3d 1 (Cal. 2018). ........................................................................................9

*Exxon Mobil Oil Corp. v. S. Cal. Edison Co.*,
 2013 WL 12166214 (C.D. Cal. 2013)..................................................................21

*In re Facebook, Inc. Sec. Litig.*,
 405 F. Supp. 3d 809 (N.D. Cal. 2019) ................................................................15

*Fields v. Wise Media, LLC*,
 2013 WL 5340490 (N.D. Cal. 2013) ...................................................................12

*Flores v. Adir Int'l, LLC*,
 685 F. App'x 533 (9th Cir. 2017) .........................................................................2

*Handy v. LogMeIn, Inc.*,
 2015 WL 4508669 (E.D. Cal. 2015).....................................................................16

*Henson v. Turn, Inc.*,
 2018 WL 6605624 (N.D. Cal. 2018) ...................................................................10

*Herrera v. County of Los Angeles*,
 2013 WL 12121879 (C.D. Cal. Aug. 2, 2013).................................................3, 5

*In re iPhone Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................9

*Isaacs v. Huntington Mem'l Hosp.*,
 38 Cal. 3d 112 (1985) ...........................................................................................6

*J'Aire Corp. v. Gregory*,
 24 Cal. 3d 799 (1979) ........................................................................12, 13, 14, 15

*Jesse v. Malcmacher*,
 2016 WL 9450683 (C.D. Cal. Apr. 5, 2016) ........................................................7

*Khan v. 7-Eleven, Inc.*,
 2015 WL 12743691 (C.D. Cal. 2015)...................................................................21

*Ladore v. Sony Computer Entm't Am., LLC*,
 75 F. Supp. 3d 1065 (N.D. Cal. 2014) ................................................................11

*In re: Lenovo Adware Litig.*,
 No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ............18

*Lies v. Farrell Lines, Inc.*,
 641 F.2d 765 (9th Cir. 1981) .................................................................................3

*Mangiaracina v. Penzone*,
 849 F.3d 1191 (9th Cir. 2017) ...............................................................................2

– iii –

*Martinez v. Pac. Bell*,
   225 Cal. App. 3d 1557 (2003) ................................................................5

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
   119 Cal.Rptr.2d 190(Cal. App. 4 Dist. 2002) ........................................17

*McKinnon v. Dollar Thrifty Auto. Grp.*,
   2013 WL 791457 (C.D. Cal. 2013)........................................................17

*Moreno v. Sanchez*,
   106 Cal. App. 4th 1415 (2003) ..............................................................11

*N. Am. Chem. Co. v. Sup. Ct.*,
   59 Cal. App. 4th 764 (1997) ..................................................................11

*N. Am. Chem. Co. v. Sup. Ct.*,
   69 Cal.Rptr.2d 466 (Cal. App. 2 Dist. 1997) .........................................14

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014) ...................................................19

*O'Keefe v. Inca Floats, Inc.*,
   1997 WL 703784 (N.D. Cal. Oct. 31, 1997)..........................................6, 7

*Ott v. Alfa-Laval Agri, Inc.*,
   37 Cal. Rptr.2d 790, 31 Cal.App.4th 1439 (Cal. App. 5 Dist. 1995)........12

*Paterson v. Cal. Dept. of Gen. Servs.*,
   2008 WL 4737118 (E.D. Cal. 2008)......................................................20

*People v. Schmies*,
   44 Cal. App. 4th 38 (1996) .....................................................................7

*Ray v. BlueHippo Funding, LLC*,
   2008 WL 1995113 (N.D. Cal. May 6, 2008)..........................................13

*Rios v. City of Bakersfield*,
   2011 WL 5554506 (E.D. Cal. 2011).......................................................20

*Rosh v. Cave Imaging Sys., Inc.*,
   26 Cal. App. 4th 1225 (1994) .................................................................6

*Ruiz v. Gap Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ...................9

*SCC Acquisitions, Inc. v. Sup. Ct.*,
   243 Cal. App. 4th 741 (2015) ................................................................10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .................................................................2

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Simplicity Int'l v. Genlabs Corp.*,
  2010 WL 11515296 (C.D. Cal. Apr. 21, 2010) ...............................................21

*Siva v. Gen. Tire & Rubber Co.*,
  146 Cal App. 3d 152 (1983) .........................................................................20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012)......................................................16, 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014)......................................................11, 16

*Soule v. Gen. Motors Corp.*,
  8 Cal. 4th 548 (1994) ....................................................................................5

*Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
  34 F.3d 753 (9th Cir. 1994) ...........................................................................3

*Terpin v. AT&T Mobility, LLC*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019) ..........................................................7

*Therapeutic Res. Faculty v. NBTY, Inc.*,
  488 F. Supp. 2d 991 (E.D. Cal. 2007) ...........................................................18

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) .........................................................18

*Tyan, Inc. v. Garcia*,
  2017 WL 1658811 (C.D. Cal. May 2, 2017) ..................................................18

*Vasquez v. Sup. Ct.*,
  4 Cal.3d at 814, 94 Cal. Rptr. at 796, 484 P.2d at 964 ...................................17

*Williams v. Sup. Ct.*,
  3 Cal. 5th 531, 220 Cal. Rptr.3d 472, 398 P.3d 69 (2017) ..............................10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..........................................11, 13, 14, 21

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
  774 F.3d 1065 (6th Cir. 2014) ......................................................................19

**Statutes**

18 U.S.C. § 1030 ..............................................................................................18

Cal. Civil Code § 1770.......................................................................................16

Cal. Lab. Code § 2750.3 .....................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Federal Rules**

Fed. R. Civ. P. 8 ................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 2

Fed. R. Civ. P. 15 ..............................................................................................2

**Other Authorities**

Brian Rexroad, "Secure Your Number to Reduce SIM Swap Scams," AT&T's Cyber
    Aware (Sep. 2017), *available at*
    https://about.att.com/pages/cyberaware/ni/blog/sim_swap ....................................20

Cal Const., Art. 1, § I ........................................................................................10

Jeb Su, *Why Twitter Blames AT&T For The Hack Of Its CEO Jack Dorsey Account,*
    *Sending Shocking Racist Tweets*, FORBES (Aug. 31, 2019),
    https://www.forbes.com/sites/jeanbaptiste/2019/08/31/why-twitter-blames-att-
    for-ceo-jack-dorsey-account-hack-sending-shocking-racist-
    tweets/#5227d7dd2e30 ................................................................................15

Nathaniel Popper, *Hackers Hit Twitter C.E.O. Jack Dorsey in a 'SIM Swap.' You're*
    *at Risk, Too.,* N.Y. TIMES (Sept. 5, 2019),
    https://www.nytimes.com/2019/09/05/technology/sim-swap-jack-dorsey-
    hack.html ..................................................................................................15

Rest.2d Torts § 449 ............................................................................................6

Witkin & Epstein, Cal. Crim. Law § 130 ............................................................7

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

A team of criminals working for and with AT&T executed an unauthorized and illegal SIM swap of Seth Shapiro's phone, and then used their newfound access to reset the passwords to Mr. Shapiro's digital, financial accounts and ultimately steal over $1.8 million from him.  Unable to deny its involvement in these criminal acts, AT&T marshals a host of red herring, whataboutism inquiries to make it appear as though the theft of Mr. Shapiro's funds was utterly unforeseeable and unrelated to the SIM swap.  But AT&T knows, and the Complaint clearly states, exactly *how* the theft occurred and *who* was involved in carrying out this brazen heist.  The Court should therefore reject AT&T's stratagem as it seeks to obfuscate what the Complaint makes clear: AT&T knew, or should have known, that its portable SIM cards were an attack vector that was actively being exploited before the events at issue here, and AT&T failed to take adequate steps to remedy the situation.

At its core, the pending motion to dismiss Mr. Shapiro's Complaint rests on a fundamental distortion of the pleading standards under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  AT&T not only asks the Court to disregard Mr. Shapiro's well-pled factual allegations, but it also seeks to impose on him a "heightened fact pleading of specifics" which is contrary to the plausibility standard.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").  To the extent AT&T has true inquiries about what happened, the parties should proceed to discovery.

In the face of detailed allegations relating to how AT&T's conduct in Mr. Shapiro's SIM swap resulted in Mr. Shapiro's loss of over $1.8 million, AT&T improperly insists upon a level of detail relating to proximate cause that is contrary to anything required at the pleading stage.

Equally improper, AT&T disregards its obligations to accept as true the facts alleged in the Complaint and the reasonable inferences therefrom, and instead engages in a highly selective reading of the allegations in the Complaint, including distorting quotes to change their meaning.

AT&T's motion to dismiss should be denied.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## II.   ARGUMENT

### A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the Complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In deciding a Rule 12(b)(6) motion, the Court must accept all allegations of material fact as true, construe the allegations in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the same. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1198 (9th Cir. 2017); *Flores v. Adir Int'l, LLC*, 685 F. App'x 533, 534 (9th Cir. 2017).

The court should freely grant a plaintiff leave to amend a deficient claim "when justice so requires." Fed. R. Civ. P. 15(a)(2). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### B.   Mr. Shapiro Adequately Alleged Proximate Cause.

#### 1.   Mr. Shapiro Adequately Alleged How AT&T's Swapping of His SIM Card to a Different Phone Led to the Loss of $1.8 million.

AT&T wrongfully characterizes Mr. Shapiro's detailed claims against it as "bare conclusions", and asserts that his allegations "lack[] *any explanation* of the sequence of events leading to his claimed loss." Mot. at 4 (emphasis added). It further claims "[a]t most, a SIM swap transfers control of a phone number." *Id.* This is incorrect, and to make that assertion, AT&T ignores entire pages of the Complaint detailing how a SIM swap is much more than a mere transfer

1   of a phone number.  *See* Compl.  ¶¶ 21–28, 40–45; Ex. B, at Attach A pp. 1–6 (The transcripts
2   show the entire process, from initiating the SIM swap ("doing it [right now]"", "It's activated.");
3   to when Mr. Shapiro tried to get control over his phone number back ("[Shapiro is] trying to get
4   number back"); to the hackers bragging about how much money they made ("made 1.3 [million
5   dollars].")).

6        Generally, causation—particularly proximate cause and the underlying foreseeability
7   inquiry—is a question of fact for the jury.  *Herrera v. County of Los Angeles*, 2013 WL 12121879,
8   at *7 (C.D. Cal. Aug. 2, 2013); *Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
9   34 F.3d 753, 756 (9th Cir. 1994) (noting in the context of a § 1983 claim that "a question of
10  causation is preeminently a question of fact, to be decided after trial"); *Lies v. Farrell Lines, Inc.*,
11  641 F.2d 765, 770 (9th Cir. 1981).  Here, Mr. Shapiro has provided enough facts to adequately
12  plead that AT&T's acts or omissions were the proximate cause of his loss of over $1.8 million.

13       In the Complaint, Mr. Shapiro explained that SIM swapping transfers control over a phone
14  number, which includes not only texting and phone capabilities, but password reset capabilities.
15  Compl. ¶¶ 25–26.  AT&T's claim that a SIM swap by itself "does not provide knowledge of or
16  access to a cryptocurrency or another account" is simply wrong.  Mot. at 4.  When an unauthorized
17  SIM swap occurs, this moves the victim's phone service, and incoming data, texts, and calls to a
18  phone controlled by the hacker.  Compl. ¶ 25.  This allows the hacker to exploit the two-factor
19  authentication process, and either access the victim's accounts without a password, or reset the
20  password by having a reset code sent to the hacked phone via text messaging.  *Id.* ¶¶ 21–28.  AT&T
21  cannot feign ignorance regarding the capabilities SIM swapping provides hackers, as the company
22  itself has admitted that "SIM swapping . . .  [provides] control over victims' phone numbers" and
23  that phones are "mini-computers" that contain "so much personal data", "[our] life" and
24  "everything." *Id.* ¶¶ 124, 129.  AT&T has also noted that "most people do have something valuable
25  [in their email accounts], which is access to all their other accounts, which you can get with a
26  password reset."  *Id.* ¶ 128.  In claiming that a SIM swap transfers *only* a phone number, AT&T
27  illogically refuses to acknowledge that a SIM swap effectively transfers the key to the victim's
28  digital life—email, online banking, social media, etc.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

By arguing that Mr. Shapiro did not provide any explanation of how the SIM swap led to Mr. Shapiro's accounts being hacked, AT&T ignores the well-pled allegations in Mr. Shapiro's complaint explaining how gaining control over a phone number is essentially gaining control over many digital accounts through two-factor authentication.  It also ignores the chat log Mr. Shapiro provided where the hackers communicated with an AT&T employee in real time, shared Mr. Shapiro's phone number over a chat and utilized it to access and reset his passwords for email accounts, and then, less than 10 minutes later, accessed his Bittrex account and withdrew his digital currency. *Id.* ¶¶ 57–58; Ex. B, at Attach. A pp. 1–6. Further, AT&T egregiously misquotes the Complaint and incorrectly claims that Mr. Shapiro said that hackers would also have needed to "steal[] [his] password" to gain control over his accounts. Mot. at 4.  Instead, as alleged in the Complaint, a 2017 report by the U.S. Fair Trade Commission stated in relevant part:

> Having a mobile phone account hijacked can waste hours of a victim's time and cause them to miss important calls and messages. *However, this crime is particularly problematic due to the growing use of text messages to mobile phones as part of authentication schemes for financial services and other accounts.* The security of two-factor authentication schemes that use phones as one of the factors relies on the assumption that someone who steals your password has not also stolen your phone number. Thus, mobile carriers and third-party retailers need to be vigilant in their authentication practices to avoid putting their customers at risk of major financial loss and having email, social network, and other accounts compromised.

Compl. ¶ 120 (emphasis added).

At bottom, AT&T knew or should have known that a stolen phone can be as effective as a stolen password.  It is simply not believable that AT&T is ignorant of these basic facts.  If AT&T argues otherwise, following discovery, it is for a jury to determine.

Furthermore, contrary to another misquote by AT&T, Mr. Shapiro never pled that the SIM swap was "one of the factors" that hackers needed to gain control over his digital accounts.  Mot. at 4. Instead, Mr. Shapiro alleged that through the SIM swap alone, hackers utilized two-factor authentication and gained control of additional accounts, such as his email, to access his accounts (by changing his password on those accounts).  Compl. ¶¶ 29–45.

AT&T incorrectly argues that "[t]o gain access to cryptocurrency, one would need to also have account information—where the funds were located, who controlled the accounts in which

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

they were held, and how to circumvent security to access those funds." Mot. at 4.  As discussed *supra*, however, Mr. Shapiro adequately pled how hackers could use his phone number to find those funds—by accessing digital accounts (such as email).

In any event, under *Twombly*, this Court does not need specifics on how exactly hackers accessed Mr. Shapiro's financial accounts.  *Twombly* requires "only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  Further, as noted by California courts, proximate cause is a factual issue.  *Herrera*, 2013 WL 12121879, at *7.  Mr. Shapiro has alleged enough facts to state a plausible claim for relief, and any dispute about what happened is factual in nature and not appropriate to be dismissed at this stage.

### 2. Mr. Shapiro's Allegations Do Not Rely on Unforeseeable Criminal Acts.

AT&T incorrectly argues that all of Mr. Shapiro's claims for relief must fail for lack of causation because the harm was caused by the "independent intervening acts of others." Mot. at 3—4, *quoting Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (2003).[1]   This challenge must fail because AT&T improperly states California law, which clearly holds that foreseeable intervening events do not absolve a defendant of tort liability.

As the California Supreme Court has definitively stated, "the defense of 'superseding cause[]' . . . absolves [the original] tortfeasor, even though his conduct was a substantial contributing factor, when an independent event [subsequently] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 573, n.9 (1994). "To determine whether an independent intervening act was reasonably foreseeable, [courts] look to the act and the nature of the harm suffered.  To qualify as a superseding cause to relieve the defendant from liability for the plaintiff's injuries, both the intervening act and

---

[1]    Even assuming arguendo AT&T is right regarding Mr. Shapiro's tort claims, it obviously cannot be true that Mr. Shapiro lacks proximate cause for *all* his claims.  Indeed, AT&T does not dispute that it violated the Federal Communications Act ("FCA" or "the Act") and that it is liable to Mr. Shapiro for damages available under the Act.  Moreover, proximate cause is a factor in torts involving liability for negligence, but it does not apply to, and has nothing to do with, claims for violation of a federal statute. *See* Mot. at 1 ("AT&T moves to dismiss all claims…*[a]s to all claims*, Mr. Shapiro has failed to plausibly allege proximate cause) (emphasis added).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

the results of that act must not be foreseeable.  Significantly, 'what is required to be foreseeable is the general character of the event of harm . . . not its precise nature or manner of occurrence.'" *Chanda v. Fed. Home Loans Corp.*, 215 Cal. App. 4th 746, 701 (2013), *quoting Bigbee v. Pac. Tel. & Tel. Co.*, 34 Cal. 3d 49, 57–58 (1983) (emphasis added; additional internal citations omitted).

The California Supreme Court has further held that "[i]t is of no consequence that the injury to plaintiffs was brought about by the criminal acts of a third person. 'If the likelihood that a third person may act in a particular manner is the hazard, or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for the harm caused thereby.'"  *Isaacs v. Huntington Mem'l Hosp.*, 38 Cal. 3d 112, 131 (1985), *quoting* Rest.2d Torts § 449. Indeed, a defendant has a legal duty to protect against foreseeable criminal acts.  *Campodonico v. State Auto Parks, Inc.*, 10 Cal. App. 3d 803, 807 (1970) ("Yet it is not the law that one has no duty to protect against foreseeable criminal acts."). California law also clearly holds that "[w]hether an intervening force is superseding or not generally presents a question of fact but becomes a matter of law where only one reasonable conclusion may be reached." *Chanda*, supra; *see also Rosh v. Cave Imaging Sys., Inc.*, 26 Cal. App. 4th 1225, 1236 (1994) (question of whether individual's numerous unauthorized entries onto premises demonstrated defendant's lax security and foreseeability of harm to plaintiff factual question for jury).  It is thus improper for AT&T to seek dismissal of Mr. Shapiro's claims on this ground because the foreseeability of the conduct is a factual issue that cannot be determined on a motion to dismiss.  *See Isaacs*, 38 Cal. 3d at 135 (jury's determination of foreseeability can be based on "whether the occurrence of prior similar incidents placed the defendant on notice that its security measures were not adequate to prevent harm to persons who use the defendant's [services].").[2]

---

[2]     Defendant ignores the significance of the word "independent" in citing to dicta in *O'Keefe v. Inca Floats, Inc*., 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997), that "independent illegal acts of third parties" are "deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of the injury." An "independent" act is a term of art under California law meaning an act "so disconnected and unforeseeable as to be a superseding cause, i.e., in such a case the defendant's act will be a remote and not the proximate

1         Moreover, in a substantially similar case, this Court recently rejected AT&T's argument that

2 it should not be held liable for the criminal acts of a third party. *See Terpin v. AT&T Mobility, LLC*,

3 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019) (Otis, J.).  In *Terpin*, the plaintiff alleged that he

4 notified AT&T in June 2017 that he was the victim of a SIM swap and that AT&T placed his

5 account on a higher security level with special protection.  *Id.*  Despite this actual notice that the

6 plaintiff's account was at risk, however, Mr. Terpin was again the victim of a SIM swap in January

7 2018, which was facilitated by criminals working for AT&T.  *Id.*  As a result, the court concluded

8 that the plaintiff had "sufficiently alleged that the criminal act was reasonably foreseeable such

9 that the claim should not be dismissed on this basis."  *Id.*  This Court should reach the same

10 conclusion here.

11         AT&T was specifically put on notice that Mr. Shapiro's account was vulnerable to attack.

12 Not only was it on notice before any breaches of Mr. Shapiro's account, after the first SIM swap

13 attack in May 2018, Mr. Shapiro informed AT&T in person and over the phone that he had valuable

14 online accounts that made him particularly vulnerable to a SIM swap attack. Compl ¶¶ 30–36.

15 AT&T employees even put a special notice in his account flagging that he was vulnerable to a SIM

16 swap.  *Id.* ¶ 37.  Mr. Shapiro would have directed the AT&T employees at the store to shut down

17 service on his phone if they had not given him assurances that his SIM card would not be swapped

18 again without his authorization. *Id.*  Despite having actual notice that Mr. Shapiro's account was

19 at risk however, *three* other SIM swaps occurred.  The SIM swaps resulted in the cumulative loss

20 of $1.8 million and the compromise of Mr. Shapiro's extremely personal data, including color

21 copies of his family's passports, their social security numbers, their TSA numbers, password and

22 log-in information for additional accounts, and confidential financial, business, and legal

23 information.  *Id.* ¶¶ 37–85.  Further, AT&T should have known this SIM swap could happen, as

24

25 cause." *People v. Schmies*, 44 Cal. App. 4th 38, 49 (1996), quoting Witkin & Epstein, Cal. Crim.

26 Law § 130, p. 148.  Plaintiffs' citation in *Jesse v. Malcmacher*, 2016 WL 9450683 (C.D. Cal. Apr.
5, 2016), to dicta in *O'Keefe*, *supra*, that "illegal acts of third parties are unforeseeable as a matter

27 of law" unfortunately omits the key word "independent" signifying that the intervening act itself
must be unforeseeable.  This qualifying interpretation of the word "independent" is the only

28 reasoned way to reconcile *O'Keefe* with the settled law cited in these papers.

– 7 –

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

the AT&T employees who conducted Mr. Shapiro's SIM swap also conducted *over 40* unauthorized SIM swaps that month. *Id.* ¶ 51.

AT&T's should have had adequate security measures in place to guard against the highly foreseeable and likely act that hackers would actively seek to obtain the personal information of AT&T customers. The prevalence of hacking is not only highly publicized (and thus generally foreseeable) but was specifically an issue in this case because AT&T is statutorily required to guard against hackers in order to protect customers' personal information. *Id.* ¶¶ 135–42. Additionally, Mr. Shapiro alleged that AT&T knew or should have known about the risk of SIM swap crimes, as it has been a growing problem that the FTC warned mobile carriers about well before his SIM swap. *Id.* ¶¶ 119–23. In fact, AT&T was warned by the FTC that it should "adopt a multi-level approach to authenticating both existing and new customers and require their own employees as well as third-party retailers to use it for all transactions." *Id.* ¶ 120. AT&T itself admitted that its customers with "valuable accounts that are accessible online" are likely targets of SIM swaps. *Id.* ¶ 121. Further, AT&T's Vice President of Security noted that hackers were "conducting SIM swap[] attacks to seize control over victims' phone numbers." *Id.* ¶ 129. AT&T has also advised that "[your] phone is [your] life" and it is necessary to think about "what would a hacker want to do, where would a hacker go to get [] data, what are some of the points on [] the network that are most vulnerable, or where is the flow that is potentially going to be a leakage." *Id.* ¶¶ 124–25.

Given AT&T's *own admonition* to customers about the risks of SIM swaps, its claims that Mr. Shapiro's SIM swap was caused by unforeseeable events ring hollow. The Court should reject AT&T's arguments regarding proximate causation.

### C.   Mr. Shapiro's Right to Privacy Claim Under the California Constitution (Count III) Should Not Be Dismissed Because He Adequately Pled that Actions by AT&T's Employees Constitute an Egregious Breach of Social Norms.

AT&T misconstrues the facts and incorrectly asserts that Mr. Shapiro claimed that AT&T negligently invaded his privacy. Mr. Shapiro pled that AT&T, through its employees, *intentionally* invaded his privacy. Indeed, Mr. Shapiro pled (and AT&T has confirmed) that AT&T employees Jack and/or White used their employee access to Mr. Shapiro's AT&T account to view his

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   confidential AT&T account information and disseminate that information to third party hackers.[3]

2   *Id.* ¶ 49.  This was not mere negligence on the part of the AT&T employees; it was a purposeful

3   crime that they committed for payment from a third party.[4] *Id.* ¶ 50.

4       The two cases AT&T cites in opposition are inapposite here.  In *Ruiz v. Gap Inc.*, the court

5   found that an "increased risk of identity theft" did not create a violation of California Constitutional

6   Right to Privacy claim.  540 F. Supp. 2d 1121, 1124 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th

7   Cir. 2010).  There, the plaintiff claimed the defendant negligently permitted laptop computers

8   containing unencrypted personal information of job applicants to be stolen. *Id*. Similarly*, In re*

9   *iPhone Litigation*, the court denied the plaintiffs right to privacy claim because the plaintiff alleged

10  that the invasion of privacy was caused by Apple's *negligence*. 844 F. Supp. 2d 1040, 1064 (N.D.

11  Cal. 2012)

12      Here, unlike those two cases, Mr. Shapiro does not claim AT&T invaded his privacy by its

13  negligence.  He claims that the invasion of privacy claim stems from purposeful, criminal actions

14  by AT&T, through its employees.  Compl. ¶¶ 197–206.

15      **D.    Mr. Shapiro Specifically Alleged What Information AT&T Disclosed.**

16      AT&T also incorrectly contends that Mr. Shapiro did not allege what private information

17  AT&T disclosed.

18      Mr. Shapiro pled that AT&T, through his employees, accessed his CPNI in order to effectuate

19  the unauthorized SIM swaps.  *Id.* ¶¶ 54–56, 67, 74, 75, 90–94.  This private information is

20  statutorily protected under the FCA. *Id.* ¶ 95.  He specifically pled the compromise of this sensitive

21  data, and his pleading was not "generic" and "non-specific" as AT&T claims.[5]  Indeed, AT&T itself

---

22  [3]    In its Motion, AT&T claims that these individuals should not be considered employees;

23  however, AT&T itself has admitted that they were its employees, and they were involved in Mr.

24  Shapiro's two May 2018 SIM swap attacks. Compl. ¶ 47.  Moreover, AT&T has not satisfied its statutory burden necessary to classify the hackers as anything other than employees.  Cal. Lab.

25  Code § 2750.3(e)(1); *see also Dynamex Operations W. v. Superior Court*, 416 P.3d 1 (Cal. 2018).

    [4]    As explained *supra*, any claim that this action was an unforeseeable criminal act is both

26  disingenuous and risible, given that, among other things, these AT&T employees were prolific SIM swappers who conducted *over 40* SIM swaps in May 2018. *Id.* ¶ 51.

27  [5]    AT&T incorrectly claims that Mr. Shapiro pled that only employees viewed his CPNI.

28  Mot. at 11. In a September 6, 2019 letter, AT&T informed Mr. Shapiro that "an unknown and unauthorized person" gained access to his CPNI. Compl. ¶ 75.

1   has admitted that unauthorized employees and unauthorized persons have accessed Mr. Shapiro's

2   CPNI without his consent. *Id.* Exs. D–F.  The exposure and dissemination of this data is sufficient

3   to establish a claim for invasion of privacy.  *See* Cal Const., Art. 1, § I ("All people are by nature

4   free and independent and have inalienable rights.  Among these are . . . pursuing and obtaining

5   safety, happiness and privacy.").  Courts construing this constitutional guarantee have held that

6   "[t]he right of privacy protects against the unwarranted, compelled disclosure of private or

7   personal information" and protects from public disclosure "the details of one's private life." *SCC*

8   *Acquisitions, Inc. v. Sup. Ct.*, 243 Cal.  App. 4th 741, 754 (2015).

9        Though alleging that AT&T exposed his CPNI is enough to adequately allege a breach of

10   privacy claim, Mr. Shapiro also pled that AT&T, through its employees, Jack and/or White,

11   permitted others to access Mr. Shapiro's account and the confidential information it contained.

12   Compl. ¶ 46.  Mr. Shapiro further pled that, due to the SIM swaps, his and his family's highly

13   sensitive data, including color copies of their passports, their social security numbers, their TSA

14   numbers, password and log-in information for additional accounts, and their confidential financial,

15   business, and legal information, were disclosed and that the hackers have subsequently used the

16   data to threaten Mr. Shapiro and his family.  *Id.* ¶¶ 18, 76, 86.  This type of information is protected

17   by the California Constitution.  *See, e.g., Williams v. Sup. Ct.*, 3 Cal. 5th 531, 554, 220 Cal. Rptr.3d

18   472, 398 P.3d 69 (2017) (noting that medical history, financial data, and home contact information

19   is generally considered private); *Henson v. Turn, Inc.*, 2018 WL 6605624, at *4 (N.D. Cal. 2018)

20   (noting the confidentiality of individually identifiable information, such as social security

21   numbers); *Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012) (noting that

22   there is a heightened expectation of privacy warranting additional protection for financial

23   information).

24        Federal authorities have noted that the AT&T employees were aware that they were assisting

25   in the "theft of identities of subscribers to their employer's services." Compl. ¶ 46. These

26   intentional actions by AT&T employees to disseminate Mr. Shapiro's private information,

27   including his CPNI, constitute a violation of Mr. Shapiro's constitutional right to privacy.

28

**E.** **Mr. Shapiro's Claims for Negligence and Negligent Supervision and Entrustment (Counts IV and V) Should Not Be Dismissed, Given the Existence of a Special Relationship.**

AT&T's conclusion that the special relationship exception to the economic loss rule is inapplicable here is flatly contradicted by numerous facts. The special relationship exception can apply to parties with contracts for services (as opposed to goods), thus rendering the economic loss rule inapplicable, as made clear by a veritable legion of legal precedent.[6] In this case, there is no doubt that AT&T's negligence involved its "services." AT&T provides telecommunications or wireless "services" (often provided in conjunction with the sale of a mobile telephone). *See* Complaint, Ex. G ("Our Privacy Policy applies to your use of all products, ***services***, and websites offered by AT&T.") (emphasis added). *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132 (N.D. Cal. 2018), (finding that Plaintiffs had adequately alleged

---

[6]       *E.g.*, *N. Am. Chem. Co. v. Sup. Ct.*, 59 Cal. App. 4th 764, 777-788 (1997) (holding the economic loss rule does not apply to allegedly negligent performance of contract for packing and shipping services); *CoreLogic, Inc. v. Zurich Am. Ins. Co.*, 2016 WL 4698902, at *5 (N.D. Cal. Sept. 8, 2016) (economic loss rule did not preclude claims for economic losses for negligent performance of professional services); *Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd.*, 2015 WL 1056324, at *6 (N.D. Cal. Mar. 10, 2015) ("In some circumstances negligent performance of a contract may be actionable as a tort, and California courts have held that the economic loss rule will not apply where the contract in question involves defective services rather than defective products."); *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075-76 (N.D. Cal. 2014) ("*Ladore* correctly notes that in *North American Chemical*, the Court of Appeal concluded that the Plaintiff's negligence cause of action was ***not*** barred by the economic loss rule at the pleading stage. But *Ladore* fails to recognize that this was because *North American Chemical* concluded that the economic loss rule does not necessarily apply in cases arising out of 'a contract for the performance of services rather than the sale of goods.'") (emphasis in original); *City & Cnty. of San Francisco v. Cambridge Integrated Servs. Grp., Inc.*, 2007 WL 1970092, at *2 (N.D. Cal. July 2, 2007) (finding California courts "distinguish[] cases involving defective products, for which the economic loss rule applies, and those involving defective services, for which the economic loss rule does not apply"); *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1435 (2003) ("Under the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract."). Furthermore, AT&T's reliance on *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014) is misplaced. In that case, plaintiffs acknowledged that the Defendant did not owe them a legal duty to provide their service, whereas here, AT&T owes Mr. Shapiro a legal duty to protect his CPNI and other sensitive data.

that Yahoo provided a "service" to Plaintiffs by providing email-service through accounts on a web-based platform).

Second, Mr. Shapiro has adequately pled enough facts to plausibly meet the *J'Aire* factors to establish a special relationship, which is all that is necessary at this stage.  To assess whether a special relationship exists, courts consider six factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).[7]

In *Fields v. Wise Media, LLC*, the court denied defendants' motion to dismiss after the plaintiffs "asserted sufficient facts to plausibly meet the second, third, fourth, fifth, and sixth *J'Aire* factors,"  2013 WL 5340490, at *3 (N.D. Cal. 2013) (holding that plaintiffs had pleaded an adequate negligence claim to survive a motion to dismiss).

Here, under the first factor, the contract between AT&T and Mr. Shapiro was intended to affect Mr. Shapiro; Mr. Shapiro chose AT&T as his wireless service provider, thereby disclosing his personal information (including CPNI), in exchange for, and only because of, AT&T's promise and representations that it would adequately protect such information.  As AT&T has noted, an individual's phone is his or her "life" and contains extremely personal information.  Compl. ¶¶ 124, 128.  In its privacy policy, AT&T promised to keep Mr. Shapiro's "personal information safe" and use "other security safeguards to protect customer data." *Id.*, Ex. G. The privacy policy between the two parties was intended to affect Mr. Shapiro.  AT&T misreads the case law and incorrectly argues that the transaction must affect Mr. Shapiro in a "particular way as opposed to all potential consumers" for the special relationship exception to apply.  Mot. at 16.  Under the *J'Aire* test, only if the party asserting negligence is a third-party to a contract does the analysis

---

[7]      Subsequent cases have held that whether a special relationship exists is determined primarily by the first four *J'Aire* factors. *See Ott v. Alfa-Laval Agri, Inc.,* 37 Cal. Rptr.2d 790, 798, 31 Cal.App.4th 1439, 1450 (Cal. App. 5 Dist. 1995).

1    hinge on whether the transaction was supposed to affect the plaintiff in a "particular" way. *Ray v.*

2    *BlueHippo Funding, LLC*, 2008 WL 1995113, at \*6 (N.D. Cal. May 6, 2008) ("A critical

3    foundational requirement for finding a special relationship is whether the ***third-party transaction***

4    was intended to affect the plaintiff in a particular way[.]") (emphasis added); *Dubbs v. Glenmark*

5    *Generics Ltd.*, 2014 WL 1878906, at \*6 (C.D. Cal. May 9, 2014) (noting that if "the manufacturer

6    had ***specific knowledge*** of a particular party, then that party could potentially go forward with a

7    tort action" under the special relationship-exception)(emphasis added).

8          Further, California courts have found the first *J'Aire* factor exists in cases where the contract

9    or transaction affected the plaintiff the same way as all other "potential consumers" to the

10    transaction. *See also In re Yahoo! Inc.*, 313 F. Supp. 3d at 1132 (finding first factor exists even

11    when a class of plaintiffs asserted it); *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at

12    \*1 (C.D.Cal. May 9, 2015) (finding that requiring plaintiffs to provide personal information to the

13    defendant was a "transaction...intended to affect Plaintiffs", even though the transaction affected

14    *all* of defendant's employees the same way); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242,

15    at \*5 (N.D. Cal. Sept. 14, 2016) (finding existence of the first *J'Aire* factor despite that the

16    transaction at issue affected all employees the same way, not just the employees asserting the

17    claim). *See also J'Aire Corp.*, 157 Cal. Rptr. at 410 ("The contract entered into between respondent

18    and the county was for the renovation of the premises in which appellant maintained its business.

19    The contract could not have been performed without impinging on that business. Thus,

20    respondent's performance was intended to, and did, directly affect appellant.").

21          Under the second factor, the harm to Mr. Shapiro was foreseeable.  As discussed *supra* in

22    Section B, AT&T was aware or should have been aware of the numerous unauthorized and illegal

23    SIM swaps conducted by its representatives and the danger the attacks posed to its users' data. In

24    a similar case, *In re Yahoo!*, *supra*, at 1132, the court found it was "plainly foreseeable that

25    Plaintiffs would suffer injury if [Yahoo] did not adequately protect the [plaintiffs' personal

26    information]."

27          Under the third factor, the Mr. Shapiro adequately pled that he suffered injury because of

28    AT&T's negligence.  He pled that he lost over $1.8 million and that his private data, including his

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    CPNI, social security numbers, passport, and financial and health data were compromised. Compl.

2    ¶¶ 37–86.   At bottom, Mr. Shapiro adequately pled that he suffered both financially and

3    emotionally.  *Id.* ¶¶ 81–86.

4          Under the fourth factor, the "closeness of the connection between the defendant's conduct

5    and the injury suffered", Mr. Shapiro adequately pled that he suffered injury *because* of AT&T's

6    negligence and intentional conduct.  As explained in Section B, *supra*, but for AT&T's negligence

7    and purposeful actions, Mr. Shapiro would not have been robbed of $1.8 million, and his personal

8    data would not have been compromised. *See, e.g.*, *N. Am. Chem. Co. v. Sup. Ct.*, 69 Cal.Rptr.2d

9    466, 479, (Cal. App. 2 Dist. 1997) (finding factor four of the *J'Aire* existed where "the injury

10   resulted directly from [the defendants'] negligent acts").

11         Under the fifth factor, moral blame should be assigned to AT&T.  AT&T was, or should have

12   been, aware that Mr. Shapiro was at risk for SIM swaps, and it did nothing to stop the swaps.

13   Indeed, Mr. Shapiro pled that while he was standing in the store, AT&T employees ignored him

14   while he tried to alert them that over $1.8 million was being drained from his account.  Compl. ¶¶

15   37–39.   Further, the AT&T employees who conducted the SWAP had conducted over 40

16   unauthorized SIM swaps that month. *Id.*  ¶ 51.  As in *Yahoo II*, AT&T "knew their data security

17   was inadequate" and that "they [did not] have the tools" to stop the compromise of user's personal

18   data. *See In re Yahoo!, supra.*  As with the court's finding in *In re Yahoo*, the fifth factor is met

19   here because "[d]efendants are morally culpable, given their repeated security breaches, wholly

20   inadequate safeguards, and refusal to notify [p]laintiffs ... of breaches or security vulnerabilities."

21   *Id*.

22         Finally, under the sixth factor, AT&T has not articulated a policy to prevent future harm to

23   Mr. Shapiro. His data, including his CPNI was breached multiple times, even after Mr. Shapiro

24   alerted AT&T to the breaches. Compl. ¶¶ 32–34. AT&T argues it has "strong incentives" to avoid

25

26

27

28

– 14 –

1  fraudulent SIM swaps, Mot. at 17, and yet Mr. Shapiro was SIM swapped four times over a period

2  of one year, and AT&T has done nothing to prevent this from happening in the future.[8]

3       Mr. Shapiro has pled facts to establish all six factors of the *J'Aire* special exception, and the

4  motion to dismiss his negligence and negligent supervision and entrustment claims should be

5  denied.

6       **F.   Mr. Shapiro Adequately Alleged a CLRA Claim.**

7            **1.   Mr. Shapiro Pled that He Relied on AT&T's Misrepresentations at the AT&T Store.**

8       AT&T incorrectly characterizes Mr. Shapiro's CLRA claim.  It alleges that Mr. Shapiro

9  cannot assert a CLRA claim because he did not "plead[] that he read, reviewed, saw, or heard" any

10  misrepresentations or omissions by AT&T and that he did not plead that he "relied on AT&T's

11  statements to conclude that his account was fully protected[.]" Mot. at 19.  It also alleges that if

12  Mr. Shapiro did plead that he relied on AT&T misrepresentations or omissions, that these

13  misrepresentations or omissions occurred *after* Mr. Shapiro's transaction with AT&T. Motion at

14  20.

15       AT&T is wrong, and it misconstrues the facts in order to make these arguments.  Mr. Shapiro

16  alleged that after he was SIM swapped for the first time, he subsequently purchased a new wireless

17  phone and SIM card, and AT&T employees reactivated the phone and restored his service.[9]

---

18  [8]     The court should also take judicial notice of the fact that there have been numerous,

19  unauthorized SIM swaps on AT&T phones, including a high profile attack against billionaire

20  Jack Dorsey, which result in one or more of the victim's digital accounts being hacked. *See*
Nathaniel Popper, *Hackers Hit Twitter C.E.O. Jack Dorsey in a 'SIM Swap.' You're at Risk,*

21  *Too.*, N.Y. TIMES (Sept. 5, 2019), https://www.nytimes.com/2019/09/05/technology/sim-swap-jack-dorsey-hack.html; Jeb Su, *Why Twitter Blames AT&T For The Hack Of Its CEO Jack*

22  *Dorsey Account, Sending Shocking Racist Tweets*, FORBES (Aug. 31, 2019),
https://www.forbes.com/sites/jeanbaptiste/2019/08/31/why-twitter-blames-att-for-ceo-jack-

23  dorsey-account-hack-sending-shocking-racist-tweets/#5227d7dd2e30.  The Court may, of course
take judicial notice of matters of public record and publicly accessible websites whose accuracy

24  and authenticity is not subject to dispute.  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809,

25  827 (N.D. Cal. 2019).

[9]     California courts have found CLRA violations where an individual makes statements to the

26  consumer misrepresenting the quality of a good or service.  *See e.g., Beshwate v. BMW of N. Am.*
*LLC*, No. 1:17–cv–00417–SAB, 2017 WL 6344451, at *6 (E.D. Cal. Dec. 12, 2017) (finding that

27  the buyer made sufficient allegations to state a claim that the seller had misrepresented that the
vehicle had passed inspection and was certified when seller never provided buyer with an

28  inspection report).

1   Compl. ¶ 35.  He alleges he bought those goods and restored service *based on misrepresentations*

2   *and omissions made by AT&T*, specifically that his personal information would be safe, and he

3   would not be SIM swapped again. *Id.* Mr.  Shapiro bought the products and restored his service

4   only because of his reliance on AT&T's assurances that it had noted the SIM swap activity in his

5   account, that his SIM card would not be swapped, and his private data would be protected. *Id*. ¶

6   36.

7        This reliance on AT&T's misrepresentations is the very definition of a CLRA violation.  The

8   CLRA prohibits the use of "unfair methods of competition and unfair or deceptive acts or

9   practices" in sale or lease transactions, including "[r]epresenting that goods or services have . . .

10  characteristics, [] uses, [and] benefits. . . that they do not have[.]" Cal. Civil Code § 1770.  Indeed,

11  Mr. Shapiro pled that AT&T claimed to have characteristics and benefits it does not have, and that

12  he relied on those misrepresentations, when he pled that "AT&T represented that…in purchasing

13  AT&T wireless cell service and . . . phones, [his] data would be safeguarded and protected and that

14  he would not close his AT&T account on reliance on AT&T assurances. Compl. ¶¶ 36, 241.

15       Further, all the cases AT&T cites are factually dissimilar to this case.  For example, in *In re*

16  *Sony Gaming Networks and Customer Data Sec. Breach Litigation*, the court found that the

17  plaintiffs did not rely on any of Sony's misrepresentations regarding goods and services from Sony,

18  because they acquired the goods and services from Sony *before* consenting to the privacy policy

19  (which contained the alleged misrepresentations). 903 F. Supp. 2d 942, 969–70 (S.D. Cal. 2012).

20  Similarly, in *Handy v. LogMeIn, Inc.,* the court found the plaintiff's claims failed because he did

21  not allege that he saw or relied on alleged misrepresentations before his purchase from the

22  Defendant. *Handy v. LogMeIn, Inc*., 2015 WL 4508669, at *8 (E.D. Cal. 2015). Unlike in *In re*

23  *Sony* and *Handy*, Mr. Shapiro pled that he relied on AT&T's statements before he purchased the

24  new iPhone and SIM card, and had AT&T turn his service back on. Compl. ¶¶ 34–36.

25       **2.   Under the CLRA, Mr. Shapiro Adequately pled Actual Reliance Based on**

26            **His Reliance on AT&T's Privacy Policy.**

27       Further, even if Mr. Shapiro had not pled the transaction at the AT&T store, he adequately

28  pled reliance on AT&T's material misrepresentations—specifically, its statements that it would not

– 16 –

1   sell his personal information, protect his privacy, and keep his personal information safe. *Id.*  ¶ 4.

2   California courts have found that if material misrepresentations were made to individuals, there is

3   an inference of reliance. *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 119 Cal.Rptr.2d 190, 197(Cal. App.

4   4 Dist. 2002); *Vasquez v. Sup. Ct.*, 4 Cal.3d at 814, 94 Cal. Rptr. at 796, 484 P.2d at 964.  California

5   courts also have found a CLRA violation when companies violate privacy policies.  *See Doe 1 v.*

6   *AOL LLC*, 719 F. Supp. 2d 1102, 1113 (N.D. Cal. 2010) (finding a valid CLRA claim against AOL

7   for violating its privacy policy).

8          Here, Mr. Shapiro chose to purchase a new phone and SIM card, and reactivate his data based

9   on both AT&T's representations in the store and its Privacy Policy about how it would handle and

10  protect his data. These misrepresentations and omissions are material, and this Court should infer

11  that Mr. Shapiro relied on these statements from AT&T's 2006 Privacy Policy when he signed up

12  for AT&T.  To the extent the Court concludes Mr. Shapiro has not pled actual reliance and cannot

13  rely on an inference of reliance, Mr. Shapiro respectfully requests that leave to amend should be

14  granted to plead actual reliance.  *See In re Sony Gaming Networks*, 903 F. Supp. 3d at 970 (granting

15  plaintiffs leave to amend complaint to plead actual reliance).

16      **3.  Mr. Shapiro Provided the Requisite Notice Under the CLRA.**

17

18         AT&T's claim that Mr. Shapiro did not provide requisite notice under the CLRA should fail

19  because Mr. Shapiro *did* provide notice of his claims to AT&T, in certified letters dated August 9,

20  2019 and September 13, 2019.  If AT&T insists on ignoring this notice (which would be a distortion

21  of the truth, since AT&T responded to Mr. Shapiro's counsel and acknowledged receipt of the

22  letters), then Mr. Shapiro will include an allegation in an amended complaint that it complied with

23  the CLRA notice and demand requirements. However, when AT&T argues that Mr. Shapiro did

24  not plead that it provided notice, it engages in gamesmanship and exalts form over substance.  *See*

25  *McKinnon v. Dollar Thrifty Auto. Grp.*, 2013 WL 791457 at *6 (C.D. Cal. 2013) (purpose of notice

26  provision "to ensure that Defendants are aware of alleged wrongdoing and given an opportunity

27  to correct it before they are sued").

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### G.   Mr. Shapiro Adequately Pled Qualifying Loss Under the CFAA.

Under the CFAA, loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). These nine types of loss are examples, not limitations on what qualifies as "loss" under the CFAA. *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1173-74 (C.D. Cal. 2018); *see, e.g.*, *Tyan, Inc. v. Garcia*, 2017 WL 1658811, at *14 (C.D. Cal. May 2, 2017). To prevail on a CFAA claim, a plaintiff must show "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). That showing is met here.

AT&T's claims that Mr. Shapiro did not adequately plead qualifying loss in the Complaint and that loss is primarily "the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable," Mot. at 21–22. These arguments fail for two reasons.

First, all but one of the cases AT&T cites are out-of-circuit cases that define loss differently than California courts do. To be sure, California courts are split on how they define loss, but better reasoned cases have found that loss can be any of the types of damages listed under the statutory language (and indeed, that the list is not exhaustive). *See, e.g.*, *Tyan*, 2017 WL 1658811, at *14 (losses awarded under CFAA included various cost of repair to lost and damaged files, the fair market value of targeted files, and ***company's lost profits as a result of the hack***); *Therapeutic Res. Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 995–97 (E.D. Cal. 2007) (finding loss where a CFAA violation caused plaintiff to lose $40,000 in profits); *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016) (allowing a CFAA claim to proceed when plaintiff alleged that he suffered losses  as a result of computer performance issues and suspected privacy intrusions which interrupted service right before filing date for income taxes.). Other circuits agree with California's definition. *See, e.g.*, *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1073–74 (6th Cir. 2014) ("If a plaintiff is able to establish a loss of at least $5,000 in value, whether that be composed solely of costs identified in the  first

1   clause, or solely costs identified in the second clause, or a combination of both, then he may

2   recover under the statute.").

3        Second, contrary to AT&T's assertions, Mr. Shapiro pled "additional facts" to meet his

4   pleading burden.  Specifically, he pled that he lost over $1.8 million due to the interruption of his

5   service.  Compl. ¶¶ 37–45. He also pled the costs of responding to the CFAA violations—he has

6   had to seek professional medical help, end a business venture, and has lost investments other than

7   the $1.8 million. *Id.* ¶¶ 83–86.  Finally, Mr. Shapiro pled that he has spent over $5,000 trying to

8   restore data and information from the CFAA violation. *Id.* ¶ 255.   Nothing more is required at this

9   stage.  Indeed, in *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 962-64 (N.D. Cal.

10  2014), the court found that the plaintiff  satisfied its pleading requirement for the CFAA's loss

11  requirement by alleging that the plaintiff's employees spent substantial time and energy "on their

12  efforts to secure the restoration of NovelPoster and its data and information" to the condition they

13  were in "prior to when defendants took control of NovelPoster," and that these efforts included

14  restoring the data and information to their prior condition, as well as responding to and conducting

15  a damage assessment of defendants' alleged CFAA violation.  Here, Mr. Shapiro has pled his loss

16  in more detail than the plaintiffs in *NovelPoster*.  Moreover, in *NovelPoster* the court also noted

17  that defendant's argument required "a factual inquiry into the accuracy of [the plaintiff's] claims

18  that is not appropriate on a motion for judgment on the pleadings."  *Id.*  AT&T's arguments also

19  require factual inquiries that are not appropriate at this stage.

20       The motion to dismiss the CFAA claim should be denied.  To the extent the Court concludes

21  Mr. Shapiro has not pled loss under the CFAA, however, Mr. Shapiro respectfully requests that

22  leave to amend should be granted to plead loss in more detail, specifically the costs associated with

23  investigating his phone for damage, remedying that damage, and the costs incurred while his phone

24  was inoperable.

25       **H.   Punitive Damages Should Not be Stricken.**

26       AT&T claims that Mr. Shapiro's punitive damages claim should be stricken because he did

27  not allege that the employee conduct referenced in the Complaint was directed or ratified by

28

– 19 –

1  AT&T's officers, directors or managing agents. Mot. at 24.  Because issues relating to ratification

2  of employee conduct are quintessentially factual, however, they cannot be resolved on a motion to

3  dismiss.  *See Siva v. Gen. Tire & Rubber Co.*, 146 Cal App. 3d 152, 159 (1983) ("[r]atification is

4  a fact question and may be proved by circumstantial evidence.").  In addition, the question of

5  whether an individual is a managing agent or has been authorized by an employer is a "fact-

6  intensive inquiry." *Paterson v. Cal. Dept. of Gen. Servs.*, 2008 WL 4737118 at *4 (E.D. Cal. 2008).

7  Given the factual nature of the inquiry, punitive damages may only be barred at the motion to

8  dismiss stage where they are unavailable as a matter of law.  *See, e.g., Rios v. City of Bakersfield*,

9  2011 WL 5554506 at *6 (E.D. Cal. 2011) (dismissing punitive damages claim against municipality

10  because such damages are precluded as a matter of law). That said, Mr. Shapiro has properly

11  alleged a basis for punitive damages.

12      In great detail, Mr. Shapiro has alleged the history of the initial SIM swap fraud, including

13  informing AT&T that he had been a victim of hacking to his mobile account and the promises made

14  by AT&T employees to provide him with additional protection to prevent such fraud in the future.

15  Compl. ¶¶ 35–36.  AT&T was under both a statutory obligation and a duty imposed by the FCC in

16  the Consent Decree to protect the personal information of its customers against fraud.  *Id.* ¶¶ 135–

17  42.  AT&T was aware that its employees could bypass protections and in certain instances acted

18  with hackers to turn over its customers' personal information.  *Id.* ¶¶ 47, 98–99, 120–121, 135–42.

19  Moreover, AT&T's Vice President promised that AT&T knew that SIM swap thieves were

20  constantly changing their tactics and that AT&T would continually enhance its safety measures in

21  response. *Id.* ¶ 121, n.73 (citing Brian Rexroad, "Secure Your Number to Reduce SIM Swap

22  Scams," AT&T's Cyber Aware (Sep. 2017), *available at*

23  https://about.att.com/pages/cyberaware/ni/blog/sim_swap).  AT&T consciously disregarded these

24  obligations by failing to supervise its employees and permitting a system to exist where employees

25  could readily bypass account protections.  *Id.* ¶¶ 95–114, 143–48, 207–36.

26      Under these circumstances, Mr. Shapiro's allegations sufficiently allege a basis for punitive

27  damages beyond the allegedly "conclusory" allegations of the claims themselves.  *See Exxon*

28  *Mobil Oil Corp. v. S. Cal. Edison Co.*, 2013 WL 12166214 at *3 (C.D. Cal. 2013) (holding that

– 20 –

1    complaint that "extensively alleges the history of past outages and litigations" sufficiently and

2    plausibly alleged punitive damages); *Khan v. 7-Eleven, Inc.,* 2015 WL 12743691 (C.D. Cal. 2015)

3    (finding that allegations of conduct of 7-Eleven employee taken in the light most favorable to

4    plaintiff sufficiently alleged punitive damages under *Iqbal*).

5          Considering the allegations of the Complaint as a whole, Mr. Shapiro's allegations also

6    support his contention that AT&T had the requisite mental state and acted with malice, fraud and

7    oppression.  Construing the allegations of the Complaint in the light most favorable to Plaintiff

8    (which the Court is required to do), the allegations show that AT&T acted with fraud, malice and

9    oppression in violating its statutory duties under Section 222(a) of the FCA and in its actions

10    specific to Mr. Shapiro.  Furthermore, as the court in *In re Yahoo!* correctly observed, "'even where

11    the claim formally sounds in negligence, if the plaintiff can make a showing that defendant's

12    conduct goes beyond gross negligence and demonstrates a knowing and reckless disregard,

13    punitive damages may be available.'"  *In re Yahoo!,* supra at 1149 (quoting *Simplicity Int'l v.*

14    *Genlabs Corp.*, 2010 WL 11515296, at *2 (C.D. Cal. Apr. 21, 2010)).  As with *In re Yahoo!*, in this

15    litigation, Mr. Shapiro has "alleged numerous fraudulent, malicious, and oppressive acts on the

16    part of Defendant[]." *Id.*  The Court should therefore not dismiss the punitive damages requests

17    for Mr. Shapiro's claims based in negligence.

18    **III.**    **CONCLUSION**

19          For the foregoing reasons, the Court should deny AT&T's Motion to Dismiss.

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    Dated: January 8, 2020               Respectfully submitted,

2

3                                      Thomas D. Warren (SBN No.160921)

4                                      twarren@piercebainbridge.com
                                     Andrew Calderón (SBN No. 316673)

5                                      acalderon@piercebainbridge.com

6                                      **PIERCE BAINBRIDGE BECK PRICE & HECHT LLP**

7                                      355 S. Grand Avenue, 44th Floor,
                                     Los Angeles, CA 90071

8                                      Telephone: (213) 262-9333
                                     Facsimile: (213) 279-2008

9

10                                      Dwayne D. Sam (*pro hac admitted*)
                                     dsam@piercebainbridge.com

11                                      **PIERCE BAINBRIDGE BECK PRICE & HECHT LLP**

12                                      600 Pennsylvania Avenue NW
                                     South Tower, Suite 700

13                                      Washington, DC 20004
                                     Telephone: (202) 843-8342

14                                      Facsimile: (646) 968-4125

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT