MARCELLUS MCRAE, SBN 140308
mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2911
Telephone: 214.698.3100
Facsimile: 214.571.2900

Attorneys for Defendant AT&T MOBILITY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

SETH SHAPIRO,

Plaintiff,

v.

AT&T MOBILITY, LLC,

Defendant.

CASE NO. 2:19-CV-8972 (CBM)

**DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

**<u>Hearing</u>:**
Date: February 18, 2020
Time: 10:00 a.m.
Place: First Street Courthouse
Courtroom # 8B, 8th Floor
350 W. 1st Street
Los Angeles, CA 90012
Judge: Hon. Consuelo B. Marshall

# TABLE OF CONTENTS

Page

I. Introduction ..................... 1

II. Argument ..................... 1

A. Mr. Shapiro Does Not Adequately Plead Proximate Cause. ..................... 1

1. Mr. Shapiro Failed To Plead Critical Steps In The Supposed Theft Of His Funds. ..................... 1

2. AT&T Cannot Be Held Liable For The Independent, Intervening Acts Of Third Parties. ..................... 3

B. Mr. Shapiro Cannot Defend His California Right To Privacy Claim. ..................... 4

1. Mr. Shapiro's Complaint Does Not Plead Facts Plausibly Suggesting AT&T Intentionally Disclosed Any Of His Information. ..................... 4

2. Mr. Shapiro Cannot Identify Any Specific Information Disclosed. ..................... 5

C. The Economic Loss Rule Bars Mr. Shapiro's Negligence And Negligent Supervision Claims. ..................... 6

1. Better Reasoned Cases Apply The Economic Loss Rule To All Contracts. ..................... 6

2. The J'Aire Factors Do Not Apply Here. ..................... 6

D. Mr. Shapiro Did Not Plead Essential Elements Of His CLRA Claim. ..................... 7

1. Mr. Shapiro Cannot Rest On An Inference of Reliance. ..................... 7

2. Mr. Shapiro Did Not Provide Required Notice Under The CLRA. ..................... 8

E. Mr. Shapiro's Losses Do Not Qualify Under The CFAA. ..................... 8

F. Mr. Shapiro's Allegations Do Not Support Punitive Damages. ..................... 9

III. Conclusion ..................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aas v. Sup. Ct.*, 24 Cal. 4th 627 (2000) .......... 6

*Amarillo v. Dobson Cellular*, 58 F.3d 635 (5th Cir. 1995) .......... 1

*Antman v. Uber Techs., Inc.*, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .......... 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174 (E.D. Cal. 2010) .......... 9

*Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017) .......... 1

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084 (C.D. Cal. 2017) .......... 6

*California v. Sup. Ct.*, 150 Cal. App. 3d 848 (1984) .......... 3

*Chevron Corp. v. Donziger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .......... 5

*Coll. Hosp. Inc. v. Sup. Ct.*, 8 Cal. 4th 704 (1994) .......... 10

*Cruz v. HomeBase*, 83 Cal. App. 4th 160 (2000) .......... 10

*Fieldstone Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357 (1997) .......... 7

*Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) .......... 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Google Location History Litig.*, 2019 WL 6911951 (N.D. Cal. Dec. 19, 2019) .......... 5

*Jackson Nat'l Life Ins. Co. v. Brown*, 2012 WL 12965709 (C.D. Cal. Dec. 27, 2012) .......... 4

*Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065 (N.D. Cal. 2014) .......... 6

*In re: Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......... 9

*Modisette v. Apple, Inc.*, 30 Cal. App. 5th 136 (2018) .......... 3

*NovelPoster v. Javitch Canfield Grp.* 140 F. Supp. 3d 954 (N.D. Cal. 2014) .......... 8, 9

*O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784 (N.D. Cal. Oct. 31, 1997) .......... 3

*Perez v. Auto Tech. Co.*, 2014 WL 12588644 (C.D. Cal. July 14, 2014) .......... 10

*Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818 (S.D. Cal. June 8, 2018) .......... 5

*Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016) .......... 7

*Schneider v. Cal. Dept. Corr.*, 151 F.3d 1194 (9th Cir. 1998) .......... 8

*Simplicity Int'l v. Genlabs Corp.*, 2010 WL 11515296 (C.D. Cal. Apr. 21, 2010) .......... 10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) .......... 7

*Sunbelt Rentals, Inc v. Victor*, 43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......... 5

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Terpin v. AT&T Mobility, LLC.*,
399 F. Supp. 3d 1035 (C.D. Cal. 2019) .......... 2, 4

*Toole v. Richardson–Merrell Inc.*,
251 Cal. App. 2d 689 (1967) .......... 10

*Tyan, Inc. v. Garcia*,
2017 WL 1658811 (C.D. Cal. May 2, 2017) .......... 9

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 5

## I. Introduction

In his Opposition to AT&T Mobility LLC's motion to dismiss, Seth Shapiro attempts to save his various claims by ignoring critical holes in his allegations, effectively altering applicable pleading standards. Most of his arguments require this Court to fill in his conclusory allegations with wild guesses. When Mr. Shapiro is not requiring this Court to make factual allegations for him, he ignores relevant case law or impermissibly attempts to alter his causes of action in his Opposition.

Even more than his Complaint, Mr. Shapiro's opposition overreaches in his attempt to blame AT&T for conduct that it did not control and harm that should be assigned to the intentional misconduct of third-party hackers. Mr. Shapiro's Complaint should be dismissed in its entirety.

## II. Argument

### A. Mr. Shapiro Does Not Adequately Plead Proximate Cause.

#### 1. Mr. Shapiro Failed To Plead Critical Steps In The Supposed Theft Of His Funds.

AT&T's argument is simple: where, as here, a Complaint jumps from (1) hackers obtaining control over a plaintiff's phone number to (2) the withdrawal of millions of dollars from a cryptocurrency account, the plaintiff has not pled proximate cause. Nothing in Mr. Shapiro's Opposition addresses this fundamental problem.[1]

There is no dispute that SIM swapping refers to a scheme in which "third parties take control of a victim's wireless phone number." Compl. ¶ 22. Mr. Shapiro contends, however, that a SIM swap transfers "password reset capabilities," and accuses AT&T of "feign[ing] ignorance" about those capabilities. Opp. at 3. But Mr. Shapiro cannot state a claim for relief by pleading that SIM swaps can, in some circumstances, lead to harm.

---

[1] Mr. Shapiro asserts without any authority that proximate cause is not a requirement for federal statutory claims. Opp. at 5 n.1. That is incorrect. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305 (2017). Mr. Shapiro's failure to plausibly plead proximate cause is fatal to his FCA claim for damages. *See Amarillo v. Dobson Cellular*, 58 F.3d 635 (5th Cir. 1995). Moreover, contrary to Mr. Shapiro's assertion, AT&T certainly does "dispute" Mr. Shapiro's allegation that AT&T "violated the [FCA] and . . . is liable to Mr. Shapiro for damages available under the Act." Opp. at 5 n.1. AT&T simply focuses at the *pleading state* on the lack of proximate cause.

Instead, he must allege facts plausibly suggesting that the particular SIM swap about which he complains *did* in fact proximately cause the theft here. This distinction between what *could* happen and what *did* happen here is the fatal flaw in his Complaint.

Accepting the Complaint's allegations as true, hackers obtained control over Mr. Shapiro's phone number and eventually obtained his funds. But what happened prior to and in between those two events? How did the hackers know where Mr. Shapiro had accounts? How did they know which (if any) cell phone was linked to those accounts? Did they know his account number, username, email address, or password? Did hackers need to answer any security questions? Did Mr. Shapiro save his password online in a location that could be hacked? What was the role of Authy, a two-factor authentication app? Most importantly, did any of his cryptocurrency accounts even use a SMS-based two-factor authentication? Rather than alleging this information—all of which is in Mr. Shapiro's possession—Mr. Shapiro asserts that he pled "how hackers could use his phone number to find those funds—by accessing digital accounts (such as email)." Opp. at 5. But this conclusory assertion of what hackers "could" do with generic "digital accounts" simply repeats the fatal flaw identified above. *Id.*

Mr. Shapiro also points to a "chat log" recounting hacker communications with an individual he labels an "AT&T employee." Opp. at 4. The chat log does not reveal how the hackers identified Mr. Shapiro's accounts, how they knew of his cell phone, whether they already had other information, or how the "authy code" discussed in the chat log was obtained. *See* Compl. Ex. B, Att. A, at 1–6. Mr. Shapiro's request that this Court assume that the SIM swap must have led logically and foreseeably to the theft is unfounded. Indeed, it is this gap that led this Court in *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035 (C.D. Cal. 2019), to dismiss all damages claims for failure to plead proximate cause. *Id.* at 1044 (complaint left the Court "to speculate how having access to [plaintiff's] phone number resulted in the theft of cryptocurrency").[2] Mr. Shapiro

[2] In *Terpin*, the plaintiff has filed an amended complaint, the sufficiency of which is currently before the Court on a motion to dismiss.

cites *Terpin*, but omits this holding.

Mr. Shapiro also does not cite, and cannot distinguish, the directly on-point case law on which AT&T relied in its Motion, which holds that, where "several procedural steps" lie between the alleged negligence and damages, the "causal link" between the negligence and harm is "tenuous at best" and, as a result, proximate cause does not exist. *California v. Sup. Ct.*, 150 Cal. App. 3d 848, 852–53 (1984); *see also Modisette v. Apple, Inc.*, 30 Cal. App. 5th 136, 155 (2018); *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015). This case law confirms the irrelevance of Mr. Shapiro's observation that proximate cause is "[g]enerally" a "question of fact for the jury." Opp. at 3. Proximate cause is a question of fact for the jury only where it is first adequately pled, and Mr. Shapiro simply has not adequately pled proximate cause.[3]

**2. AT&T Cannot Be Held Liable For The Independent, Intervening Acts Of Third Parties.**

California case law regarding the extent of tort liability for third-party criminal acts is extensive and fact-dependent. *Compare* Mot. at 7–8, *with* Opp. at 5–7.[4] But Mr. Shapiro has not stated a claim under any standard accepted by California cases.

As set forth above, Mr. Shapiro has not pled the chain of events that led from the alleged SIM swap to the alleged theft, and therefore the Court has no means by which to examine whether that chain of events was foreseeable. Mr. Shapiro's assertion that "foreseeable intervening events do *not* absolve a defendant of tort liability," Opp. at 5, is therefore unhelpful to him. Because the "intervening events" are not pled, there are

---

[3] Mr. Shapiro accuses AT&T—twice—of "egregiously misquot[ing] the Complaint" by quoting the language of paragraph 120 of the Complaint. Opp. at 4–5 (citing Mot. at 5). But AT&T directly quotes the FTC's commonsense observation—quoted in the Complaint—that the "security of two-factor authentication schemes that use phones as one of the factors relies on the assumption that someone who steals your password has not also stolen your phone number." Compl. ¶ 120. Mr. Shapiro does not explain how AT&T misquoted this sentence, which *he used* to explain two-factor authentication.

[4] Mr. Shapiro errs in dismissing as dicta this Court's holding in *O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997), that "independent illegal acts of third parties are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury." *See* Opp. at 6 n.2.

no facts plausibly suggesting that those events are foreseeable—any fact question, like foreseeability, must be adequately *pled* before it can possibly go to the jury.[5]

**B. Mr. Shapiro Cannot Defend His California Right To Privacy Claim.**

**1. Mr. Shapiro's Complaint Does Not Plead Facts Plausibly Suggesting AT&T Intentionally Disclosed Any Of His Information.**

As noted in AT&T's motion, Mr. Shapiro's Complaint is based exclusively on the theory that AT&T did not implement sufficient security protocols or adequately train its employees. These are negligence claims, not claims of intentional wrongdoing, and Mr. Shapiro describes them as such in his Opposition. Opp. at 13; Compl. ¶¶ 87–124. Mr. Shapiro appears to now concede that negligence is categorically outside the scope of the constitutional right of privacy. *Id*. at 9. He thus asserts that AT&T "employees" (who were not actually employees)[6] violated company policy by performing a SIM swap, and that "[t]his was not mere negligence . . . it was intentional." *Id*.

Intent is not the theory of the Complaint, and Mr. Shapiro cannot remedy his failure to plead an invasion of privacy by simply asserting a "new theor[y]" of intentional misconduct in his Opposition. *See Jackson Nat'l Life Ins. Co. v. Brown*, 2012 WL 12965709, at *5 (C.D. Cal. Dec. 27, 2012). Nor can Mr. Shapiro transform his negligence-based factual allegations into an allegation of intentional misconduct simply by labeling them "intentional." That is precisely the type of "conclusory allegation" that is insufficient to state a claim under the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Moreover, AT&T could not possibly have *intentionally* disclosed "passwords," "social security numbers," and other "confidential financial, business, and legal information," because AT&T did not have any of that information

[5] *Terpin* is not relevant on this point because there, unlike here, the plaintiff alleged that he reported a SIM swap to AT&T several months before his currency was stolen, putting the defendant on notice. *Terpin*, 399 F. Supp. 3d at 1044. Here, Mr. Shapiro alleges that his currency was stolen on the first day he experienced an alleged SIM swap.

[6] Mr. Shapiro's assertion that AT&T has conceded these men are employees (Opp. at 9 n.3) is incorrect. The Complaint's allegation was that the government stated that AT&T had "confirmed" the men were "contract employee[s]," Compl. n.11, a very different assertion (even if true). In any event, the employment status of the men is not the basis for AT&T's motion.

and is not alleged to be the entity that actually disclosed that information. Opp. at 10.

**2. Mr. Shapiro Cannot Identify Any Specific Information Disclosed.**

Mr. Shapiro also fails to specifically allege what information AT&T disclosed. Mot. at 10–11. Mr. Shapiro argues that his allegation regarding CPNI is specific enough to sustain his claim. Opp. at 9–10. The Complaint defines CPNI as "information about the configuration, type, and use of his AT&T services, his personal information, his SIM card details, and his billing information." Compl. ¶ 94. Mr. Shapiro does not explain why he would have a reasonable expectation of privacy in this vaguely described information. Taking these nebulous terms one-by-one, none are sufficiently specific. Mot. at 11. Numerous cases have dismissed similar allegations:

- **Sim Card Details**: *Sunbelt Rentals, Inc v. Victor*, 43 F. Supp. 3d 1026, 1035 (N.D. Cal. 2014) (dismissing claim alleging that the defendant accessed his "iPhone" and his "private electronic data and electronic communications"); *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) (holding that the plaintiffs had "no privacy interest in the subscriber information, IP addresses, and IP logs associated with their email accounts").
- **Use of AT&T Services**: *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding, in the higher Fourth Amendment context, that email and Internet users have no expectation of privacy in "the to/from addresses of their messages or the IP addresses of the websites they visit," just like "telephone users have no expectation of privacy in the numbers they dial."); *In re Google Location History Litig.*, 2019 WL 6911951, at *10 (N.D. Cal. Dec. 19, 2019) (dismissing as non-specific a claim based on tracking of user's location and use of its services).

Second, Mr. Shapiro argues that hackers accessed "his and his family's highly sensitive data, including" "passports" and "social security numbers." Opp. at 10. The Complaint makes clear that AT&T did not disclose or have access to this information. Compl. ¶ 86. Moreover, later acts of third parties do not satisfy California's invasion-of-privacy standards. *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *1

(S.D. Cal. June 8, 2018) (dismissing invasion of privacy claim where hackers later used disclosed information to "open credit cards").

**C. The Economic Loss Rule Bars Mr. Shapiro's Negligence And Negligent Supervision Claims.**

**1. Better Reasoned Cases Apply The Economic Loss Rule To All Contracts.**

As AT&T argued, numerous courts—including this one—have held that the special relationship exception to the economic loss rule does not apply to parties in contractual privity. Mot. at 12–15. Mr. Shapiro does not rebut AT&T's reasoning that *J'Aire* addressed a plaintiff who was not in privity with the defendant, and its reasoning was specific to that situation. Nor does Mr. Shapiro address AT&T's policy argument against broad exceptions to the economic loss rule. Mot. at 15. Instead, Mr. Shapiro appears to argue that the economic loss rule does not apply to contracts for services, and that the special relationship exception does apply to contracts for services.

In fact, this Court has applied the economic loss rule—and refused to apply the special relationship exception—to claims stemming from contracts for services. *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091–94 (C.D. Cal. 2017). And this Court and the California Supreme Court have rejected the case first inventing a distinction between contracts for goods and services. *See Aas v. Sup. Ct.*, 24 Cal. 4th 627, 643 (2000) (rejecting reasoning in *N. Am. Chem. Co. v. Sup. Ct.*, 59 Cal. App. 4th 764, 784 (1997)); *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) (following *Aas*).

**2. The *J'Aire* Factors Do Not Apply Here.**

Mr. Shapiro also argues his claim satisfies the *J'Aire* factors. For the first factor—whether the contract was intended to affect the plaintiff—Mr. Shapiro argues that AT&T's Privacy Policy, entered into by "tens of millions of subscribers" (Compl. ¶ 2), was intended to individually affect him. Opp. at 12–13. But if this type of connection were sufficient, the first factor would always be satisfied in cases with contracting parties. To have any meaning, this factor must require a plaintiff who is *particularly*

affected in a way that is distinguishable from others. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014) (citing *Fieldstone Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357, 368 (1997)).

For the remaining *J'Aire* factors, AT&T rests on its initial brief. Mot. at 16–17. Most of these factors disfavor Mr. Shapiro due to his failure to plead proximate cause.

**D. Mr. Shapiro Did Not Plead Essential Elements Of His CLRA Claim.**

**1. Mr. Shapiro Cannot Rest On An Inference of Reliance.**

AT&T argued that Mr. Shapiro did not plead reliance on AT&T's Privacy Policy—a necessary element of his Consumer Legal Remedies Act ("CLRA") claim—because (1) he never alleged that he saw, much less read, the Policy; (2) the Policy was issued 12 years after he became a customer; and (3) the Policy put him on notice that "no security measures are perfect." Mot. at 18–20. Implicitly acknowledging that he did not plead reliance on the Policy, Mr. Shapiro argues that this Court should infer his reliance. Opp. at 15. Neither the case law nor the facts justifies an inference of reliance.

Many cases reject an *inference* of reliance where the plaintiff did not see the underlying representation. For example, in *Rojas-Lozano v. Google, Inc.*, the court rejected an "inference of reliance" because the plaintiff "failed to allege what she saw, what she believed as a result, how knowledge would impact her behavior, or facts that otherwise support a reasonable inference that an omitted fact was material." 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016). *See also Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (inference of reliance requires the plaintiff to allege "at a minimum . . . that he saw the representation at issue").

Here, Mr. Shapiro did not allege—and does not argue—that he ever read, heard, or even saw AT&T's Privacy Policy. This shortcoming prevents an inference of reliance. Moreover, he does not explain how he could possibly have relied on any general statements regarding security—whether in the Privacy Policy or in person—when the Privacy Policy was also clear that AT&T's security would not be perfect, and third parties could still circumvent it. Mot. at 19. Instead, Mr. Shapiro summarily asserts

that regardless of the Privacy Policy, AT&T employees "assured him that his SIM card would not be swapped again without his authorization." Compl. ¶ 36; Opp. at 15–16. This shift in focus highlights that Mr. Shapiro cannot plausibly allege reliance on the AT&T "Privacy Policy" on which his Complaint focuses. Compl. ¶¶ 149–71. But alleged reliance on oral representations fares no better in overcoming explicit disclosures in the Privacy Policy that "no security measures are perfect" and AT&T "cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." Compl., Ex. C at 26. Mr. Shapiro fails even to grapple with those disclosures, much less explain how he can have plausibly alleged reliance in light of them.

**2. Mr. Shapiro Did Not Plead That He Provided Notice.**

Mr. Shapiro alleges that he provided requisite notice under the CLRA, but his Complaint makes no such allegation. Mr. Shapiro cannot add new facts in his Opposition. *Schneider v. Cal. Dept. Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)).

**E. Mr. Shapiro's Losses Do Not Qualify Under The CFAA.**

Mr. Shapiro argues that he adequately alleged loss because he alleged that (1) he spent over $5,000 investigating who hacked his accounts and (2) he lost roughly $1.8 million from his cryptocurrency accounts. Opp. at 18–19. Both arguments are flawed.

First, Mr. Shapiro tries to save his CFAA claim by comparing his loss allegations to those in *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 963–64 (N.D. Cal. 2014). In *NovelPoster*, the plaintiffs alleged "the approximate number of hours that [the plaintiffs] spent on their restorative efforts, and the approximate value of their services," allowing the court to conclude that they suffered losses over $5,000. *Id.* at 963. Mr. Shapiro, on the other hand, alleged only that he "spent in excess of $5,000 investigating" the SIM swap. Compl. ¶ 202. *NovelPoster* demonstrates precisely what

Mr. Shapiro was required to (but did not) allege.

Second, Mr. Shapiro argues that his cryptocurrency loss qualifies under the CFAA. Countless courts—including California courts—reject this argument. The only losses that qualify under the CFAA are those that "arise from the investigation or repair of a damaged computer system or data, or from an interruption of service." *NovelPoster*, 140 F. Supp. 3d at 963–64. Mere loss of something valuable, like cryptocurrency, is not enough—the interruption of service must directly cause the loss. *See In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016); *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010).[7]

Here, Mr. Shapiro's alleged loss of cryptocurrency did not stem from the inability to access his SIM card or any other interruption of service, but from hackers later obtaining something of value after they interrupted his cell phone service. Compl. ¶¶ 24, 37. Accordingly, Mr. Shapiro's CFAA claim must be dismissed.

**F. Mr. Shapiro's Allegations Do Not Support Punitive Damages.**

Finally, Mr. Shapiro has no colorable defense of his claim for punitive damages.

With respect to AT&T's argument that Mr. Shapiro must plead that an officer, director, or managing agent had advanced knowledge of the unfit employee or authorized the employee's conduct, Mr. Shapiro argues that "AT&T's Vice President" was aware of SIM swaps and that employees could act in concert with hackers to effect SIM swaps. Opp. at 20. But an awareness by AT&T that SIM swaps were possible and needed to be confronted is not the same thing as an awareness, much less authorization or ratification, of either the unfit person or the alleged SIM swap and resulting loss here.

Punitive damages are only available where a managing agent of the corporation accepts or ratifies an employee's misconduct. Mot. at 23–24. To ratify an employee's conduct, a managing agent must know that the employee was "engaged in harmful

---

[7] Mr. Shapiro cites *Tyan, Inc. v. Garcia*, 2017 WL 1658811, at *14 (C.D. Cal. May 2, 2017), to support a broader construction of loss. But that case contains no discussion of relevant case law, and indeed it is not even clear if the defendant argued that CFAA losses were limited under the law.

activities towards plaintiffs." *Coll. Hosp. Inc. v. Sup. Ct.*, 8 Cal. 4th 704, 725–26 (1994); *see also Cruz v. HomeBase*, 83 Cal. App. 4th 160, 168 (2000) (requiring "actual knowledge that [employees] had acted maliciously."). Here, nothing in the Complaint shows that any officer, director, or managing agent knew of Robert Jack or Jarratt White or authorized or ratified their alleged actions. In fact, Mr. Shapiro admits that the alleged SIM swap was "unauthorized" and against company policy. Compl. ¶¶ 33–34.

Finally, Mr. Shapiro attempts to circumvent the clear rule that "[m]ere negligence, even gross negligence, . . . [cannot] justify such an award [for punitive damages]." *Toole v. Richardson–Merrell Inc.*, 251 Cal. App. 2d 689 (1967). He argues that *Simplicity Int'l v. Genlabs Corp.*, 2010 WL 11515296, at *2 (C.D. Cal. Apr. 21, 2010), holds that a claim formally "sounding in negligence" can still lead to punitive damages. The rest of that quote, however, makes clear that the plaintiff must also allege facts showing that the defendant had the "intent to vex, annoy, and injure" or acted in such reckless disregard that its conduct can "be characterized as wanton or willful." *Id.* Mr. Shapiro's allegations do not meet this standard—he offers only the conclusory assertion that AT&T acted with malice, fraud, or oppression based on "the allegations of the Complaint as a whole." Opp. at 21. But he does not point to a single section of his Complaint showing how AT&T purportedly acted with the required mental state. Instead, he points to distinguishable cases that *did* contain adequate allegations, and simply asserts that his claims are similarly sufficient, apparently based on nothing more than an alleged awareness by AT&T of SIM swaps. Opp. at 20–21. But Mr. Shapiro cannot rely on the allegation that AT&T is aware of SIM swaps generally to meet his burden of actually pleading that AT&T acted with the mental state required for punitive damages. His conclusory allegations as to mental state are not sufficient under *Twombly*. *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *7 (C.D. Cal. July 14, 2014).

## III. Conclusion

Mr. Shapiro has failed to plead facts plausibly suggesting that he is entitled to relief. Accordingly, his Complaint should be dismissed with prejudice.

Dated: January 22, 2020

MARCELLUS MCRAE
GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Marcellus McRae*
Marcellus McRae

Attorneys for Defendant AT&T MOBILITY, LLC

103637488.7