UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH SHAPIRO<br><br>    Plaintiff,<br>vs.<br>AT&T MOBILITY, LLC,<br><br>    Defendants. | Case No.:  2:19-CV-8972-CBM-FFM<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |

The matter before the Court is Defendant AT&T Mobility LLC's ("AT&T's" or "Defendant's") Motion to Dismiss the Complaint (the "Motion"). (Dkt. No. 21.)

## I.      BACKGROUND

This action arises from the alleged theft of $1.8 million in cryptocurrency from Plaintiff as a result of "SIM swapping."[1]  The Complaint asserts seven causes of action against AT&T:  (1) violations of The Federal Communications Act (the "FCA"), 47 U.S.C. § 201 *et seq*.; (2) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; (3) violations of California Constitutional Right to Privacy; (4) negligence; (5) negligent

---

[1] The Complaint alleges SIM swapping refers to a "relatively simple scheme, wherein third parties take control of a victim's wireless phone number," and "[t]he hackers then use that phone number as a key to access the victim's digital accounts, such as email, file storage, and financial accounts."  (Compl. ¶ 22.)

1 supervision and entrustment; (6) violations of California's Consumer Legal
2 Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (7) violations of the
3 Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  AT&T moves to
4 dismiss all of Plaintiff's claims and strike Plaintiff's request for punitive damages
5 pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  STATEMENT OF LAW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice to state a claim for relief.  *Id*. at 555.  When considering a motion to dismiss, the court accepts as true all well-pleaded allegations of material fact and construes them in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008).  The court may only consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.  DISCUSSION

**A.  California Constitutional Right to Privacy Claim**

Plaintiff's third cause of action asserts violations of Plaintiff's right to privacy under the California Constitution.  To state a claim for a violation of the right to privacy under the California Constitution, Plaintiff must allege facts "sufficient to raise a plausible inference" that (1) he has "a legally protected privacy interest"; (2) he has "a reasonable expectation of privacy under the circumstances"; and (3) "a 'serious invasion' of privacy" by Defendant occurred which "constitutes 'an egregious breach of the social norms underlying the privacy right.'" *San Francisco Apartment Ass'n v. City & Cty. of San Francisco*,

881 F.3d 1169, 1178 (9th Cir. 2018) (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994)).[2]

The Complaint alleges Plaintiff had "a reasonable expectation of privacy in his mobile device and in his AT&T account information." (Compl. ¶ 199.) Plaintiff further alleges:

1. "AT&T employees obtained unauthorized access to Mr. Shapiro's AT&T wireless account, viewed his confidential and proprietary personal information, and transferred control over [Plaintiff's] AT&T wireless number from [Plaintiff's] phone to a phone controlled by third-party hackers in exchange for money" (*id.* ¶ 19);

2. when AT&T's employees accessed Plaintiff's mobile account without authorization, his Customer Proprietary Network Information ("CPNI") "was visible," which Plaintiff alleges on information and belief "includes, but was not limited to, information about the configuration, type, and use of his subscribed AT&T services, his personal information, his SIM card details, and his billing information" (*id.* ¶¶ 92, 94); and

3. Plaintiff's family's and his own "highly sensitive and confidential personal, legal, and business information have been compromised," including copies of their passports, and their social security numbers, TSA numbers, password and log-in information for "additional accounts," and "confidential financial, business, and legal information" (*id.* ¶ 86).

The alleged disclosure of Plaintiff's AT&T account information and CPNI, and Plaintiff and his family's personal, business, legal, and financial information does not constitute an egregious breach of social norms.[3] Furthermore, Plaintiff's use of the phrases "account information," "personal, legal, and business information," and "confidential financial, business, and legal information," are too vague for the Court to determine whether Plaintiff has a right to protection of such information under the California Constitution.[4] Moreover, the Court cannot

---

[2] *See also Lewis v. Super. Ct.*, 3 Cal. 5th 561, 571 (2017).

[3] *See, e.g., Barry v. Wells Fargo Home Mortg.*, 2016 WL 4242237, at *4 (N.D. Cal. Aug. 11, 2016); *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

[4] *See, e.g., Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014); *Albin v. Trustmark Ins. Co.*, 2013 WL 12191722, at *10 (C.D. Cal. Nov. 25,

3

plausibly infer Defendant's alleged acts constituted an egregious breach of social norms based on the Complaint's conclusory allegation that "AT&T intentionally intruded on and into Mr. Shapiro's solitude, seclusion, or private affairs." (Compl. ¶ 200.)[5]

Accordingly, the Court dismisses Plaintiff's third cause of action for violation of his privacy rights under the California Constitution with leave to amend.

### B. Economic Loss Doctrine – Negligence & Negligent Supervision and Entrustment Claims

AT&T moves to dismiss Plaintiff's fourth and fifth causes of action for negligence and negligent supervision and entrustment on the ground they are foreclosed by the economic loss doctrine.

"Generally speaking, in actions for negligence, liability is limited to damages for physical injuries and recovery of economic loss is not allowed." *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008) (citing *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)). A "'special relationship' existing between the parties" serves as an exception to the economic loss doctrine. *Id.* (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979)).[6] In determining whether the special relationship exception to the economic loss doctrine applies, courts analyze the following six factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered the injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the

---

2013); *Scott-Codiga v. Cty. of Monterey*, 2011 WL 4434812, at *7 (N.D. Cal. Sept. 23, 2011).

[5] *See, e.g., Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018).

[6] *See also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

4

policy of preventing future harm." *J'Aire Corp.*, 24 Cal. 3d at 804. The Court must balance the *J'Aire* factors to determine whether a special relationship exists to overcome the economic loss doctrine. *See Kalitta Air*, 315 F. App'x at 606; *Tyson & Assocs., Inc. v. Denko*, 89 F.3d 846 (9th Cir. 1996). The special relationship exception applies in cases involving contracts for services where the parties are in contractual privity, such as the parties here. *See North Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 783 (1997).[7] Therefore, the Court analyzes the six *J'Aire* factors to determine whether Plaintiff sufficiently pleads a special relationship exists for purposes of the exception to the economic loss doctrine.

### 1. The Extent To Which the Transaction Was Intended To Affect Plaintiff (First *J'Aire* Factor)

The Complaint alleges Plaintiff purchased a wireless mobile phone plan from AT&T in 2006 (Compl. ¶ 10.) but does not allege that the contract was "intended to affect" Plaintiff in a particular way, as opposed to all other AT&T customers. Therefore, the Complaint fails to allege sufficient facts to plausibly satisfy the first *J'Aire* factor. *See Ott*, 31 Cal. App. 4th at 1455–56.[8]

### 2. The Foreseeability of Harm To Plaintiff (Second *J'Aire* Factor)

The Complaint alleges the risk of breach to Plaintiff's mobile account was foreseeable because (1) AT&T admitted during a Federal Communications Commission ("FCC") action in 2015 that its employees accessed customer accounts and sold private information to third parties in a breach of 280,000 customer accounts (Compl. ¶¶ 134-139); (2) the FCC found AT&T's failure to secure customers' information violated a statutory duty (*id*. ¶ 136); (3) AT&T agreed to improve its privacy and data security practices to prevent similar

---

[7] *See also Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448, 1454 (1995).
[8] *See also NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1031 (E.D. Cal. 2013).

breaches (*id*. ¶ 138); (4) the FCC warned carriers in its 2017 Report to protect customers from SIM swapping, which could put customers at risk of financial loss and privacy violations (*id*. ¶ 120); and (5) AT&T's Vice President of Security Platforms published on AT&T's "Cyber Aware" blog regarding SIM swaps in September 2017 (*id*. ¶ 121).  Plaintiff also alleges the first SIM swap to Plaintiff's mobile phone occurred in May 2018, Plaintiff subsequently informed AT&T that he had valuable accounts online, and an AT&T employee "noted the SIM swap activity in [Plaintiff's] account and assured [Plaintiff] that his SIM card would not be swapped again without his authorization." (*Id*. ¶¶ 30-37).  Therefore, the Complaint alleges sufficient facts that the harm to Plaintiff was foreseeable to plausibly satisfy the second *J'Aire* factor.[9]

### 3. The Degree of Certainty that Plaintiff Suffered the Injury (Third *J'Aire* Factor)

The Complaint alleges Plaintiff lost more than $1.8 million in cryptocurrency as a result of the SIM swapping.  (Compl. ¶ 80.)  Therefore, Plaintiff pleads sufficient facts that he suffered injury to plausibly satisfy the third *J'Aire* factor.[10]

### 4. The Closeness of the Connection Between Defendant's Conduct and the Injury Suffered (Fourth *J'Aire* Factor)

The Complaint alleges:  (1) customers' accounts can be accessed "through exploiting password reset links sent via text message to the now-hacker-controlled-phone or the two-factor authentication processes associated with the

---

[9] *See, e.g., See J'Aire*, 24 Cal. 3d at 806; *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1051 (C.D. Cal. 2019); *In re Yahoo!*, 313 F. Supp. 3d at 1132.

AT&T also moves to dismiss all of Plaintiff's claims for failure to "plausibly allege proximate cause."  Having found the Complaint alleges sufficient facts that the SIM swaps and risk to consumers' private information were foreseeable, AT&T's request to dismiss the Complaint in its entirety based on Plaintiff's purported failure to allege proximate cause is denied. *See Terpin*, 399 F. Supp. 3d at 1044.

[10] *See, e.g., Fields v. Wise Media, LLC*, 2013 WL 5340490 at, *2 (N.D. Cal. Sept. 24, 2013).

6

victim's digital accounts" (Compl. ¶ 26); (2) AT&T allowed its employees to illegally access Plaintiff's account to effectuate the SIM swap (*id.* ¶ 49); (3) the hackers acknowledged the AT&T employee who participated in the SIM swap in their group chat while discussing using Plaintiff's mobile phone number and accessing Plaintiff's cryptocurrency accounts (*id.* ¶¶ 54-60); (4) AT&T failed to provide adequate security practices to safeguard Plaintiff's AT&T account and data from authorized access (*id.* ¶ 215); and (5) Plaintiff lost $1.8 million in cryptocurrency as a result of the SIM swaps (*id.* ¶ 19). Therefore, the Complaint pleads sufficient facts regarding the connection between AT&T's alleged conduct and the injury suffered by Plaintiff to plausibly satisfy the fourth *J'Aire* factor.[11]

### 5. **Moral Blame Attached To Defendant's Conduct (Fifth *J'Aire* Factor)**

Plaintiff alleges AT&T knew it needed appropriate safeguards to protect customers' proprietary information, was aware customers may be vulnerable to SIM swapping which placed customers at risk for financial loss and violation of their privacy, and knew employees had accessed customer accounts and sold customer information to a third party. (Compl. ¶¶ 120-21, 134-39). Therefore, the Complaint pleads sufficient facts regarding the moral blame attached to AT&T's conduct to plausibly satisfy the fifth *J'Aire* factor.[12]

### 6. **The Policy of Preventing Future Harm (Sixth *J'Aire* Factor)**

The Complaint alleges the FCA "requires AT&T to protect [Plaintiff's] sensitive personal information to which it has access as a result of its unique position as a telecommunication carrier" (Compl. ¶ 88), and the FCC concluded in its 2015 investigation that AT&T's "failure to reasonably secure customers' proprietary information violates a carrier's statutory duty…and also constitutes an

---

[11] *See, e.g., North Am. Chem. Co. v. Sup. Ct.*, 59 Cal. App. 4th 764, 786 (1997); *In re Yahoo!*, 313 F. Supp. 3d at 1132.

[12] *See, e.g., In re Yahoo!*, 313 F. Supp. 3d at 1132.

unjust and unreasonable practice" (*id.* ¶ 136). Plaintiff also alleges the FCC has recognized "[a]bsent carriers' adoption of adequate security safeguards, consumers' sensitive information… can be disclosed to third parties without consumers' knowledge or consent" and held that "*carriers must safeguard these kinds of information….*" (*Id.* ¶ 98.) Therefore, the Complaint alleges sufficient facts to plausibly satisfy the sixth *J'Aire* factor.[13]

\* \* \*

In summary, Plaintiff pleads sufficient facts to plausibly satisfy each of the *J'Aire* factors, except for the first factor regarding the intended effect on Plaintiff. Balancing the *J'Aire* factors, the Court therefore finds Plaintiff alleges sufficient facts regarding a special relationship with AT&T to survive Defendant's Motion to dismiss Plaintiff's negligence and negligent supervision and entrustment claims based on the economic loss doctrine.[14]

**C.     Consumer Legal Remedies Act Claim**

AT&T moves to dismiss Plaintiff's sixth cause of action for violation of the Consumer Legal Remedies Act ("CLRA") on the ground Plaintiff fails to plead (1) notice was given; and (2) actual reliance on any misrepresentations by AT&T.

1.     **Notice**

The CLRA requires written notice to the seller at least thirty days prior to the commencement of an action for damages. Cal. Civ. Code § 1782(a). The Complaint does not allege Plaintiff gave written notice to AT&T at least 30 days prior to filing the Complaint on October 17, 2019.[15]

---

[13] *See, e.g., Fields*, 2013 WL 5340490, at \*3; *In re Yahoo!*, 313 F. Supp. 3d 1113, 1132–33.

[14] *See In re Yahoo!*, 313 F. Supp. 3d at 1133; *Fields*, 2013 WL 5340490, at \*3.

[15] Plaintiff only argues in his opposition that he delivered written notice to Defendant. However, the Court cannot consider arguments not included in the Complaint in determining whether the Complaint pleads sufficient facts to state a claim.

8

### 2. **Reliance**

"[C]onsumers seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance on the misrepresentation and harm." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (internal quotation omitted).

Plaintiff's CLRA claim is based in part on his alleged reliance on a written AT&T Privacy Policy, which outlines AT&T's promises to safeguard customer information. The written AT&T Privacy Policy attached to the Complaint is dated February 2019, twelve years after Plaintiff purchased his AT&T mobile account in 2006. (*See* Compl. Ex. G.)[16] Accordingly, Plaintiff has not alleged reliance on the Privacy Policy for purpose of his CLRA claim.

Plaintiff's CLRA claim is also based on his alleged reliance on oral representations made by AT&T employees. As to the oral representations, the Complaint alleges:

> 1. After the first SIM swap occurred on May 16, 2018, Plaintiff immediately went to an AT&T retail store and informed AT&T employees, including AT&T Sale Representative Juneice Arias, that he suspected an unauthorized SIM swap had occurred on his account and that he had confidential information and digital currency that could be at risk (*id.* ¶ 34);
>
> 2. "AT&T employees advised [Plaintiff] to purchase a new wireless phone with a new SIM card from AT&T. On this advice, [Plaintiff] purchased a new iPhone for several hundred dollars, as well as a new SIM card, in the AT&T retail store. AT&T employees then activated the new phone and the new SIM card and restored [Plaintiff's] service, thereby allowing [Plaintiff] to regain control over his cell phone number" (*id.* ¶ 35);
>
> 3. "AT&T told [Plaintiff] at that time that they had noted the SIM swap activity in his account and assured him that his SIM card would not be swapped again without his authorization. On this assurance, [Plaintiff] decided not to close his AT&T account" (*id.* ¶ 36); and
>
> 4. Three SIM swaps to Plaintiff's mobile device occurred after

---

[16] Plaintiff argues the Court should infer he relied on "AT&T's 2006 Privacy Policy" when he signed up for his AT&T account in 2006, but no 2006 Privacy Policy is alleged in or attached to the Complaint.

9

>AT&T employees' representations that Plaintiff's SIM card would not be swapped again without his authorization (*id.* ¶¶ 37, 65, 68).

Therefore, the Complaint alleges Plaintiff bought the new SIM card and mobile phone ***before*** the alleged oral misrepresentation by AT&T employees that Plaintiff's SIM card would not be swapped again without his authorization. Accordingly, the Complaint does not sufficiently plead Plaintiff relied on these oral representations prior to purchasing the SIM card and new iPhone. *See Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("[A] CLRA claim cannot be based on events following a sales transaction.").

Furthermore, under the CLRA, a transaction is "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." Cal. Civ. Code § 1761(e). Therefore, Plaintiff's decision not to cancel his account in 2018 is not a sale or transaction for purposes of the CLRA. Moreover, because the original transaction occurred in 2006 when Plaintiff purchased his AT&T mobile phone plan, and the Complaint does not allege any subsequent agreement was entered or that a sale occurred after the alleged oral statements by AT&T employees in 2018, Plaintiff cannot plead reliance on the oral representations made by employees in 2018 for his CLRA claim.[17]

Accordingly, Plaintiff's CLRA claim is dismissed with leave to amend to plead additional facts regarding written notice provided to AT&T and Plaintiff's actual reliance on AT&T's representations.[18]

---

[17] *See, e.g., Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014) (a sale or transaction does not extend to cover representations made after the original purchase for purposes of the CLRA); *Hensley-Maclean v. Safeway Inc.*, 2014 WL 1364906, at *7 (N.D. Cal. Apr. 7, 2014); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 n.6 (2006).

[18] *See Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009).

### D. Computer Fraud and Abuse Act

Defendant moves to dismiss Plaintiff's seventh cause of action for violation of the Computer Fraud and Abuse Act ("CFAA") on the ground Plaintiff does not plead he suffered a recoverable loss under the CFAA. To recover under Section 1030(c)(4)(A)(i)(1) of the CFAA, there must be "[a] loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(1). Here, the Complaint alleges Plaintiff spent "in excess of $5,000 investigating who accessed his mobile device and damaged information on it." (Compl. ¶¶ 250-55.) Therefore, Plaintiff sufficiently alleges a qualifying loss within the meaning of the CFAA.[19]

### E. Punitive Damages

AT&T moves to strike Plaintiff's request for punitive damages on the ground Plaintiff has not pled any involvement by an "officer, director or managing agent" of AT&T with respect to any of the alleged misconduct, and fails to adequately plead malice, fraud or oppression.

Under California law, an employer is not liable for punitive damages "based upon acts of an employee . . . unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. However, federal civil procedure rules only require "a short and plain statement" of relief sought, and "malice, intent, knowledge, and other conditions of the mind may be alleged generally." Fed. R. Civ. Proc. 8, 9. Therefore, notwithstanding California Civil Code § 3294, "in federal court, a plaintiff may include a 'short and plain' prayer for punitive

---

[19] *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016); *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1029 (C.D. Cal. 2012). Because Plaintiff adequately pleads a loss of more than $5,000 in investigation costs, the Court does not address whether the alleged $1.8 million loss of cryptocurrency constitutes a "loss" under the CFAA.

damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Tamburri v. Suntrust Mortg., Inc.*, 2012 WL 3582924, at *3 (N.D. Cal. Aug. 20, 2012).[20]

The Complaint alleges AT&T knew of the risk of financial loss to customers and the need to protect customers against such risks, AT&T was aware in 2015 that employees accessed customers' AT&T accounts and sold customers' personal information to third parties, AT&T knew it needed to protect customers' private information, AT&T was reckless in employing and/or entrusting employees in work involving customers' confidential information, AT&T knew its employees were unfit and were likely to harm customers but failed to prevent access to customers' accounts.  (Compl. ¶¶ 113, 120-21, 134-39, 145, 225-28). The Complaint also alleges:  (1) Plaintiff informed Defendant he had valuable accounts making him susceptible to further attacks, and an AT&T employee told Plaintiff his CPNI security would be tightened to prevent similar breaches; (2) AT&T permitted its employees to use and/or disclose Plaintiff's CPNI without Plaintiff's prior consent; (3) AT&T admitted security threats to customers' private information could come from inside the company; and (4) Plaintiff's SIM was swapped three times after he informed AT&T employees of the first SIM swap. (*Id.* ¶¶ 32-33, 35-37, 65, 68, 97, 126-27).  Therefore, the Complaint satisfies federal pleading standards for punitive damages because it sufficiently alleges AT&T's awareness of the unfitness of its employees and a conscious or reckless disregard of Plaintiff's rights.[21]

### IV.   CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART**

---

[20] *See also Beltran v. Confidential Servs., Inc.*, 2009 WL 10672193, at *3 (S.D. Cal. Oct. 23, 2009).

[21] *See, e.g., VNT Prop. 1, LLC v. City of Buena Park*, 2015 WL 12765111, at *8 (C.D. Cal. Nov. 9, 2015); *Alejandro v. ST Micro Electronics, Inc.*, 2015 WL 5262102, at *12 (N.D. Cal. Sept. 5, 2015).

Defendant's Motion to Dismiss as follows:

    (1)    Defendant's Motion to Dismiss is granted as to Plaintiff's third cause of action for violation of his privacy rights under the California Constitution with leave to amend;

    (2)    Defendant's Motion to dismiss is denied as to Plaintiff's fourth and fifth causes of action for negligence and negligent supervision and entrustment;

    (3)    Defendant's Motion to Dismiss is granted as to Plaintiff's sixth cause of action for violations of California's Consumer Legal Remedies Act with leave to amend; and

    (4)    Defendant's Motion to Dismiss is denied as to Plaintiff's seventh cause of action for violation of the Computer Fraud and Abuse Act.

Defendant's Motion to strike Plaintiff's claim for punitive damages is **DENIED**.

To the extent Plaintiff seeks to amend the Complaint to plead additional facts addressing the deficiencies set forth in this Order, Plaintiff may file an amended complaint no later than **May 29, 2020**.

**IT IS SO ORDERED.**

DATED: May 18, 2020.

                                  CONSUELO B. MARSHALL
                                  UNITED STATES DISTRICT JUDGE