1   MARCELLUS MCRAE, SBN 140308
     mmcrae@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
3   333 South Grand Avenue
    Los Angeles, CA 90071-3197
    Telephone:  213.229.7000
4   Facsimile:   213.229.7520

5   ASHLEY E. JOHNSON, admitted *pro hac vice*
     ajohnson@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    2001 Ross Avenue
7   Suite 2100
    Dallas, TX 75201-2911
8   Telephone:  214.698.3100
    Facsimile:   214.571.2900

9
    Attorneys for Defendant AT&T MOBILITY
10  LLC

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  WESTERN DIVISION

14  SETH SHAPIRO,                    CASE NO. 2:19-CV-8972 (CBM)

15              Plaintiff,           **DEFENDANT AT&T MOBILITY
                                     LLC'S NOTICE OF MOTION AND
16       v.                          MOTION TO DISMISS PLAINTIFF'S
                                     FIRST AMENDED COMPLAINT;
17  AT&T MOBILITY LLC,               MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT
18              Defendant.           THEREOF**

19                                   [*[Proposed] Order lodged concurrently
                                     herewith*]
20
                                     Action Filed:  October 17, 2019
21
                                     **Hearing:**
22                                   Date:      July 28, 2020
                                     Time:      10:00 a.m.
23                                   Place:     350 West 1st Street, 8th Floor
                                                Courtroom 8B
24                                              Los Angeles, CA 90012
                                     Judge:     Hon. Consuelo B. Marshall
25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on July 28, 2020, before the Honorable Consuelo B. Marshall, United States District Court Judge, in Courtroom 8B, at 350 West 1st Street, 8th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff Seth Shapiro's First Amended Complaint.

AT&T moves to dismiss these claims for the following reasons:

1.      Count III (California constitutional right to privacy) fails to allege an egregious breach of social norms and fails to plead the required reasonable expectation of privacy;

2.      Count VI (Consumer Legal Remedies Act) does not plead that Mr. Shapiro sent a letter properly demanding that AT&T cure his claimed harm and does not plausibly plead that Mr. Shapiro relied on any misrepresentation by AT&T.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on June 16, 2020.

Dated: June 26, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Marcellus A. McRae*
Marcellus A. McRae

Attorney for Defendant
AT&T MOBILITY LLC

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.  Introduction .................................................................................................. 1

II. Facts ............................................................................................................. 2

III. Standard of Review ...................................................................................... 3

IV. Argument ...................................................................................................... 3

   A.  Mr. Shapiro Has Not Pled an Actionable Claim for Invasion of
       Privacy under the California Constitution (Count III)............................. 3

       1.  The FAC's Description of the Allegedly Disclosed
           Information Is Too Vague To Plausibly Allege a Legally
           Protected Privacy Interest or a Reasonable Expectation of
           Privacy. ......................................................................................... 4

       2.  Mr. Shapiro Has Not Pled Facts Plausibly Suggesting that
           AT&T's Conduct Was an Egregious Breach of Social
           Norms. ........................................................................................... 7

   B.  This Court Should Dismiss Mr. Shapiro's CLRA claim (Count VI). ....... 9

       1.  Mr. Shapiro Did Not Satisfy the Notice and Demand
           Requirements of the CLRA. ......................................................... 10

       2.  Mr. Shapiro Does Not Adequately Allege Reliance..................... 13

           a.  Mr. Shapiro Did Not Plausibly Plead Reliance on the
               2006 Privacy Policy Because He Does Not Plead that
               He Read or Reviewed It. ...................................................... 13

           b.  Mr. Shapiro Has Not Pled that He Engaged in Any
               Covered "Sale or Transaction" in Reliance on Any
               Misrepresentation. ................................................................ 15

V.  Conclusion .................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Albin v. Trustmark Ins. Co.*,
  2013 WL 12191722 (C.D. Cal. Nov. 25, 2013) ..................................................... 4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 3

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
  2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ......................................................... 6

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................... 13

*Basmadjian v. Realreal, Inc.*,
  2018 WL 2761857 (N.D. Cal. June 8, 2018) ..................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 3

*Breen v. Pruter*,
  679 F. App'x 713 (10th Cir. 2017) ....................................................................... 12

*Chevron Corp. v. Donziger*,
  2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ......................................................... 5

*Davis v. Chase Bank U.S.A., N.A.*,
  650 F. Supp. 2d 1073 (C.D. Cal. 2009) ................................................................. 11

*Dekker v. Vivint Solar, Inc.*,
  2020 WL 2556956 (N.D. Cal. May 20, 2020) ......................................................... 10

*Delarosa v. Boiron, Inc.*,
  818 F. Supp. 2d 1177 (C.D. Cal. 2011) ................................................................. 11

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ............................................................................. 13

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................. 14

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014)........................................................ 11

*In re Grand Jury Proceedings*,
    40 F.3d 959 (9th Cir. 1994) ...................................................................... 5

*Handy v. LogMeIn, Inc.*,
    2015 WL 4508669 (E.D. Cal. July 24, 2015) .......................................... 14

*Hassan v. Facebook, Inc.*,
    2019 WL 3302721 (N.D. Cal. July 23, 2019) ........................................... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ........................................................................... 3, 7, 8

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................. 13, 15

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................ 7, 9

*Kandel v. Brother Int'l Corp.*,
    2009 WL 10429764 (C.D. Cal. May 12, 2009) ...................................... 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 3

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) .............................................. 14, 15

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................. 3, 4, 7

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................... 16

*Outboard Marine Corp. v. Super. Ct.*,
    52 Cal. App. 3d 30 (1975) ...................................................................... 10

*Peacock v. 21st Amendment Brewery Cafe, LLC*,
    2018 WL 452153 (N.D. Cal. Jan. 17, 2018)...................................... 11, 12

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................... 13

Gibson, Dunn &
Crutcher LLP

*Razuki v. Caliber Home Loans, Inc.*,
   2018 WL 2761818 (S.D. Cal. June 8, 2018) ......................................................... 7, 8

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................. 8

*Scholl ex rel. Scholl v. Manor Care, Inc.*,
   2006 WL 8455411 (S.D. Cal. Oct. 13, 2006) ...................................................... 12

*Scott-Codiga v. County of Monterey*,
   2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ...................................................... 4

*Sebastian v. Kimberly-Clark Corp.*,
   2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ...................................................... 10

*In re Sony PS3 Other OS Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ....................................................................... 16

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
   2019 WL 4392528 (C.D. Cal. May 8, 2019) ................................................. 10, 11

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ............................................................. 4, 5

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................................... 17

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................................ 3

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ............................................................................... 5

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................. 10

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) .............................................................. 12

*Weisberg v. Takeda Pharm. Co. Ltd.*,
   2018 WL 6219879 (C.D. Cal. May 7, 2018) ...................................................... 17

*Wilson v. Frito-Lay N. Am., Inc.*,
   260 F. Supp. 3d 1202 (N.D. Cal. 2017) ............................................................ 16

Gibson, Dunn &
Crutcher LLP

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014)......................................................................... 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).......................................................... 14

*Zbitnoff v. Nationstar Mortg., LLC*,
    2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) .......................................................... 4

**Statutes**

Cal. Civ. Code § 1761(e) ........................................................................................ 16

Cal. Civ. Code § 1782 ............................................................................................ 10

Cal. Civ. Code § 1782(a) ....................................................................................... 11

Cal. Civ. Code § 1782(a)(2)............................................................................... 10, 12

Gibson, Dunn &
Crutcher LLP

## I.   Introduction

The First Amended Complaint ("FAC") does not come close to curing the inadequacies this Court found in Mr. Shapiro's claims under the California constitutional right to privacy and the California Consumer Legal Remedies Act ("CLRA").

As to Mr. Shapiro's claim that AT&T Mobility LLC ("AT&T" or "Defendant") violated his California constitutional right to privacy, this Court previously concluded that Mr. Shapiro's allegations were "too vague for the Court to determine whether Plaintiff has a right to protection of such information under the California Constitution." Dkt. 32 ("*Shapiro I*") at 3. This remains true for the FAC; Mr. Shapiro does no more than add a few additional, equally vague, descriptors of the information at issue. Moreover, this Court previously held that it could not "plausibly infer" that AT&T engaged in an "egregious breach of social norms" based on Mr. Shapiro's conclusory allegation of intentional conduct by AT&T. *Shapiro I* at 4. This too remains true; Mr. Shapiro does not alter the thrust of his original allegations that AT&T acted negligently by not having adequate security measures to protect him from criminal third parties.

Mr. Shapiro also does not remedy the flaws in his CLRA claim. This Court previously held that Mr. Shapiro had not pled that he sent the required notice and demand letter to AT&T. *Shapiro I* at 8. Mr. Shapiro now pleads that he provided a notice of his claim, though he does not plead that he included an appropriate demand for relief. This is because Mr. Shapiro did not make the statutorily-required demand. This failure requires dismissal of the CLRA claim in its entirety.

Even beyond this threshold failure, the FAC does not remedy the problems the Court identified in Mr. Shapiro's allegations of reliance. In a nod to this Court's conclusion that Mr. Shapiro could not have relied in 2006 on a privacy policy issued in 2019, Mr. Shapiro attaches the 2006 Privacy Policy to his FAC. *See* FAC Ex. A. But he does not allege that he ever read this 2006 Privacy Policy. With respect to Mr. Shapiro's assertion that he relied on statements by AT&T employees to purchase a new phone and

SIM card, his revision of the timeline alleged in his prior Complaint does not salvage this claim. Mr. Shapiro fails to allege that his purchase of a phone has any connection to his alleged loss of funds. The key decision Mr. Shapiro alleges he made that, purportedly, has a connection to his claim is the decision not to cancel his AT&T service. As this Court has already held, that decision is not actionable under the CLRA.

In short, Mr. Shapiro's FAC does not save his right to privacy or CLRA claims. Those claims should be dismissed, this time with prejudice.

## II.   Facts[1]

According to the allegations in the FAC, Mr. Shapiro entered into a wireless contract with AT&T in 2006. FAC ¶ 10. On May 16, 2018, Mr. Shapiro noticed that his cell phone was no longer connected to the AT&T network. FAC ¶ 31. He later learned that the wireless number associated with his SIM card had been assigned to another SIM card in a phone controlled by third-party criminal hackers. FAC ¶¶ 34–35, 46–47. Mr. Shapiro alleges that the hackers used the SIM swap to take control of his phone number and, without further explanation, that the hackers were able to access his cryptocurrency accounts, as well as his "account information," "personal, legal, and business information," and "confidential financial, business, and legal information." FAC ¶¶ 39–42, 49, 86.

While hackers were allegedly gaining access to Mr. Shapiro's cryptocurrency accounts, Mr. Shapiro called AT&T customer service and later visited an AT&T retail location and purchased a new phone. FAC ¶¶ 32–36. AT&T representatives at the retail store purportedly told Mr. Shapiro that "they had noted the SIM swap activity in his account," but that his "SIM card would not be swapped again without his authorization." FAC ¶ 35. Mr. Shapiro alleges that he purchased a new phone because AT&T employees told him that purchasing a new phone would "secure his account." FAC ¶ 36. Nevertheless, he alleges that a few minutes later, another unauthorized SIM swap

---

[1] For this motion only, AT&T assumes the truth of the adequately pled allegations in Mr. Shapiro's First Amended Complaint.

occurred, and that while he was waiting to speak to another AT&T representative, hackers transferred and stole roughly $1.9 million from his cryptocurrency accounts. FAC ¶¶ 37–41.

### III.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Moreover, claims that sound in fraud "must meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (internal citation omitted). "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA" where those claims sound in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### IV.  Argument

#### A.  Mr. Shapiro Has Not Pled an Actionable Claim for Invasion of Privacy under the California Constitution (Count III).

To establish an invasion of privacy violation under the California Constitution, a plaintiff must allege: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v. Nat'l Collegiate Athletic*

*Ass'n*, 7 Cal. 4th 1, 35–37 (1994)). Importantly, the California Constitution sets "a high bar for an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025.

This Court dismissed Mr. Shapiro's invasion of privacy claim for two reasons. First, the Court found that Mr. Shapiro's "vague" allegations regarding the information that provides the basis for his claim were insufficient to plausibly plead that he "has a right to protection of such information under the California Constitution." *Shapiro I* at 3. Second, the Court found that Mr. Shapiro did not plead enough facts for the Court to "plausibly infer" that AT&T's "alleged acts constituted an egregious breach of social norms." *Id.* at 4.

The FAC makes only minor modifications to Mr. Shapiro's invasion of privacy claim. Those minor modifications do not remedy the deficiencies in Mr. Shapiro's pleading. Accordingly, his claim for a violation of his right to privacy should be dismissed again, this time with prejudice.

### 1. The FAC's Description of the Allegedly Disclosed Information Is Too Vague To Plausibly Allege a Legally Protected Privacy Interest or a Reasonable Expectation of Privacy.

To adequately plead an invasion of privacy, a plaintiff must allege the "specific private facts that were disclosed to the public." *Scott-Codiga v. County of Monterey*, 2011 WL 4434812, at *7 (N.D. Cal. Sept. 23, 2011). Without the required specificity, a court cannot determine whether the plaintiff had a protected privacy interest in the disclosed information. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1035 (N.D. Cal. 2014). In applying this rule, courts have repeatedly held that generic allegations regarding the disclosure of text messages, financial information, and private information are not specific enough to plead a reasonable expectation of privacy. *See id.* (text messages); *Albin v. Trustmark Ins. Co.*, 2013 WL 12191722, at *10 (C.D. Cal. Nov. 25, 2013) (financial information); *Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014) ("private information").

Consistent with this case law, this Court previously held that Mr. Shapiro's allegations regarding his "account information," "personal, legal, and business

information," and "confidential financial, business, and legal information," were all "too vague for the Court to determine whether Plaintiff has a right to protection." *Shapiro I* at 3. The FAC adds little on this point. Indeed, this Court already addressed—and found insufficient—the bulk of the alleged private information that the FAC alleges was disclosed, including "information about the configuration, type, and use of [Mr. Shapiro's] subscribed AT&T services, his personal information, his SIM card details, and his billing information." *See Shapiro I* at 3; FAC ¶¶ 86, 94. Mr. Shapiro offers no persuasive reason to reconsider the Court's prior conclusion with respect to these allegations, a conclusion supported by substantial case law. *Shapiro I* at 3.[2]

The new allegations in the FAC restate, in slightly different terms, the same general categories of allegedly private information that were identified in the Complaint. Mr. Shapiro adds allegations that AT&T allowed other parties to access his CPNI, and that, through use of his CPNI, third parties accessed online accounts containing "private text messages," "personal and professional confidential information," and "personal financial transactions, account balances, and business activities." FAC ¶ 205. These allegations merely repackage the same generic allegations that the Court already found insufficient. *Shapiro I* at 3; *see also In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994) (in more-protective Fourth Amendment context, "an American depositor has no reasonable expectation of privacy in copies of his or her bank records, such as checks, deposit slips, and financial statements maintained by the bank"). Accordingly, these allegations of the FAC do not establish "a legally protected privacy interest or

---

[2]  *See also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (even in more generous Fourth Amendment context, email and Internet users have no expectation of privacy in "the to/from addresses of their messages or the IP addresses of the websites they visit," just like "telephone users have no expectation of privacy in the numbers they dial"); *Sunbelt Rentals*, 43 F. Supp. 3d at 1035 (dismissing claim alleging defendant accessed Plaintiff's "iPhone" and his "private electronic data and electronic communications"); *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) (plaintiffs had "no privacy interest in the subscriber information, IP addresses, and IP logs associated with their email accounts"); *Albin*, 2013 WL 12191722, at *10 (allegation that defendant disclosed "financial information" insufficient).

Gibson, Dunn &
Crutcher LLP

reasonable expectation of privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014), *cited in Shapiro I* at 3 n.4.

The FAC also appears to target an alternative conception of the "reasonable expectation of privacy" by alleging facts to suggest that Mr. Shapiro subjectively expected that all of his information would remain private. For example, Mr. Shapiro alleges that he had a "reasonable expectation of privacy" in his online accounts because he had "passcodes" or "passwords" that "protected" all of his online information. FAC ¶¶ 204–05. But the question under the law is not whether the plaintiff expected the information would remain private. To the contrary, the law evaluates whether a plaintiff has a "legally protected privacy interest and reasonable expectation of privacy." *In re Yahoo*, 7 F. Supp. 3d at 1040 ("[T]o the extent Plaintiffs claim they have a legally protected privacy interest and reasonable expectation of privacy in email *generally*, regardless of the specific content in the emails at issue, Plaintiffs' claim fails as a matter of law." (emphasis in original)). As the court held in *Yahoo*, a plaintiff must allege "*with specificity* the material in the content of the [messages]." *Id.* (emphasis in original). If the plaintiff does not specify the "content of the messages that were exposed," the court is forced to guess whether "the exposed information [was] personal or private." *Hassan v. Facebook, Inc.*, 2019 WL 3302721, at *2 (N.D. Cal. July 23, 2019). The generic assertion that Mr. Shapiro expected his passcodes to maintain the privacy of his information is simply not what the case law requires.

When Mr. Shapiro's allegations are measured against the standard applied by California law, those allegations lack the required specificity. Mr. Shapiro does not even generally describe the contents of the messages allegedly disclosed, much less specify the contents of those messages. Without this specificity, the Court must speculate whether the messages were "personal or private" and, more importantly, whether Mr. Shapiro had a reasonable expectation of privacy in the messages. *Id.* But under *Iqbal*, "speculation cannot serve as the basis to defeat a motion to dismiss." *Ass'n for Info.*

*Media & Equip. v. Regents of the Univ. of Cal.*, 2012 WL 7683452, at *4 (C.D. Cal. Nov. 20, 2012) (Marshall, J.).

In sum, Mr. Shapiro's allegations are still too vague to determine whether he had a reasonable expectation of privacy. As a result, his invasion of privacy claim should be dismissed.

### 2. Mr. Shapiro Has Not Pled Facts Plausibly Suggesting that AT&T's Conduct Was an Egregious Breach of Social Norms.

To plead an invasion of privacy violation, a plaintiff must also allege that the defendant's conduct is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37; *Shapiro I* at 2. Courts applying this test uniformly hold that "negligent conduct" does not constitute "actionable conduct under the California Constitution," even when it "leads to theft of highly personal information, including social security numbers." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *see also Low*, 900 F. Supp. 2d at 1025. Yet, as this Court previously recognized, Mr. Shapiro's only allegation of intentional conduct was "conclusory" and thus insufficient for the Court to plausibly infer that AT&T's conduct "constituted an egregious breach of social norms." *Shapiro I* at 3.

In addressing claims similar to those here, several courts have held that allegations that a defendant "fail[ed] to protect [] data" do not allege an egregious breach of social norms. *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018), *cited in Shapiro I* at 4 n.5. In *Razuki*, the court did not find egregious conduct where the plaintiff alleged that the defendant "intentionally violated his privacy by choosing to implement low-budget security measures with an 'absolute disregard of its consequences.'" *Id.* The court held that "[l]osing personal data through insufficient security doesn't rise to the level of an egregious breach of social norms underlying the protection of sensitive data like social security numbers." *Id.* As the court explained, even the "serious" "privacy damage" alleged by the plaintiff in *Razuki* did not "suggest

the type of intentional, egregious privacy invasion contemplated in" the California Supreme Court's decision in *Hill*, where drug-test monitors watched college athletes provide urine samples. *Id.* (citing *Hill*, 7 Cal. 4th at 93).

Similarly, in *Ruiz v. Gap, Inc.*, the defendant failed to prevent a thief from stealing a laptop that contained the plaintiff's "personal information, including his social security number." 540 F. Supp. 2d 1121, 1124 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010). The defendant also failed to use encryption on the laptop, which would have protected the plaintiff's personal information. *Id.* at 1125. Although the plaintiff had adequately pled a negligence claim, the court concluded that his factual allegations "do not approach th[e] standard" of egregious breach of social norms established by California law. *Id.* at 1128. Accordingly, the court dismissed the constitutional right to privacy claim. *Id*.

This Court's dismissal of Mr. Shapiro's constitutional right to privacy claim follows this case law. *Shapiro I* at 3–4. And nothing in the FAC remedies those deficiencies. Instead, on this point, the FAC adds a single sentence characterizing the motives of the AT&T contractors who allegedly sold Mr. Shapiro's mobile phone number. Specifically, the FAC now alleges that "[t]he offensiveness of the intrusion into Mr. Shapiro's privacy was heightened by the motives of AT&T employees who sold access to Mr. Shapiro's mobile phone number and private data to hackers for criminal purposes." FAC ¶ 207. But this merely restates an allegation in Mr. Shapiro's initial Complaint. *See Shapiro I* at 3 ("AT&T employees . . . transferred control over [Plaintiff's] AT&T wireless number from [Plaintiff's] phone to a phone controlled by third-party hackers *in exchange for money*") (first and second alteration in original; italics added)*; see also* Dkt. 1 at ¶¶ 48–51 (alleging that contractors violated AT&T company policy by selling access to Mr. Shapiro's phone number).

Mr. Shapiro's FAC fails to address the central problem with his privacy claim: it alleges mere negligence. According to the FAC, AT&T failed to adequately train and supervise its employees and did not install proper levels of security. FAC ¶ 189. These

are negligence claims, and they do not rise to the level of "actionable conduct under the California Constitution." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063. Even the allegedly inadequately supervised "employees" who the FAC alleges conducted the SIM swap are not alleged to have intentionally disclosed private information or data. Instead, the FAC alleges that they accessed Mr. Shapiro's CPNI, and that hackers then obtained Mr. Shapiro's sensitive information as an indirect result of the SIM swap. *See* FAC ¶¶ 204–05 (alleging that AT&T permitted individuals to access his CPNI, and that third parties then accessed his personal information "through use of his CPNI"). As noted above, other courts have dismissed similar claims alleging inadequate levels of security. In both *Razuki* and *Ruiz*, the courts dismissed claims where the plaintiffs merely alleged that thieves stole personal information because the defendants had inadequate security. Mr. Shapiro alleges the same type of conduct, and the same result is appropriate.

Mr. Shapiro's negligence claim cannot morph into a claim for intentional conduct simply by his declaring it so. For that reason, Mr. Shapiro's allegation that "AT&T intentionally intruded on and into Mr. Shapiro's solitude, seclusion, or private affairs" is inadequate. As this Court previously held, this type of "conclusory allegation" does not allow the Court to "plausibly infer . . . an egregious breach of social norms." *Shapiro I* at 4.

In sum, Mr. Shapiro did not adequately address the flaws identified in the Court's first opinion. His new allegations, like his old ones, do not describe any actions that amount to an egregious breach of social norms. Accordingly, the Court should dismiss his invasion of privacy claim under the California Constitution with prejudice.

**B.    This Court Should Dismiss Mr. Shapiro's CLRA claim (Count VI).**

Mr. Shapiro's CLRA claim is generally based on allegations that he relied on (i) a written AT&T Privacy Policy, which was attached to his Complaint; and (ii) alleged oral representations made by AT&T employees. This Court previously dismissed Mr. Shapiro's CLRA claim in its entirety because he did not plead that he had provided

AT&T the notice required by the CLRA. The Court also rejected Mr. Shapiro's first theory because the Privacy Policy on which Mr. Shapiro alleged he had relied was issued in 2019, 12 years after Mr. Shapiro alleged that he opened an AT&T mobile account. The Court rejected Mr. Shapiro's second theory because he failed to allege that he relied on oral representations in order to engage in any "sale or transaction" as required under the CLRA. *Shapiro I* at 8–10.

The FAC does not cure these deficiencies. Accordingly, the Court should dismiss Mr. Shapiro's CLRA claim again, this time with prejudice.

### 1. Mr. Shapiro Did Not Satisfy the Notice and Demand Requirements of the CLRA.

Before filing a claim for damages under the CLRA, a plaintiff must provide the defendant with at least thirty days of notice. Cal. Civ. Code § 1782. The notice must, among other things, "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." *Id.* § 1782(a)(2). This demand requirement is designed to give the defendant "sufficient opportunity to correct or replace a deficient product." *Sotelo v. Rawlings Sporting Goods Co., Inc.*, 2019 WL 4392528, at *6 (C.D. Cal. May 8, 2019). It is also designed to "facilitate pre-complaint settlements of consumer actions wherever possible." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975). This Court previously dismissed Mr. Shapiro's CLRA claim for failure to allege that he had given the required notice.

In the FAC, Mr. Shapiro alleges that he provided "written notice via certified mail to AT&T of his intent to file an action for damages." FAC ¶¶ 180, 252. Although he does not attach the letter at issue, this Court may consider the letter itself, as it is referenced in the FAC.[3] Accordingly, AT&T attaches the letter to the Declaration of

---

[3] A document can be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As other courts have noted, a CLRA notice letter "forms the basis" of a CLRA claim and therefore may be considered on a motion to dismiss. *Dekker v. Vivint Solar, Inc.*, 2020 WL 2556956, at *4 (N.D. Cal. May 20, 2020); *Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675, at *3 (S.D. Cal. Dec. 18, 2017).

Gibson, Dunn & Crutcher LLP

Ashley E. Johnson filed contemporaneously herewith. *See* Declaration of Ashley E. Johnson Exh. A. The FAC does not plead that the notice letter satisfied the requirements of the statute, and review of Exhibit A confirms that it did not. *Id.* Specifically, while Mr. Shapiro pleads that he provided AT&T with notice, neither he nor Exhibit A addresses the CLRA's demand requirement.

Under the plain language of this requirement, a plaintiff must notify the prospective defendant "of the particular alleged violations of" the CLRA and must "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of" the CLRA. Cal. Civ. Code § 1782(a). Courts must apply the notice provision literally. *Sotelo*, 2019 WL 4392528, at *6; *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1192 (C.D. Cal. 2011). Even "actual notice" does not excuse a plaintiff from complying with Section 1782. *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009).

Applying these principles, courts regularly dismiss CLRA claims for even technical failures in otherwise compliant notice and demand letters. *See, e.g.*, *Peacock v. 21st Amendment Brewery Cafe, LLC*, 2018 WL 452153, at *8 (N.D. Cal. Jan. 17, 2018) (plaintiff did not specify how defendants' practices violated the CLRA); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1016 (N.D. Cal. 2014) (plaintiff did not "provide notice regarding each particular product on which his CLRA claim is based"); *Kandel v. Brother Int'l Corp.*, 2009 WL 10429764, at *3 (C.D. Cal. May 12, 2009) (plaintiff sent CLRA to the wrong address).

Where, as here, the plaintiff omits the required demand from the notice letter, dismissal is similarly appropriate. In *Basmadjian v. Realreal, Inc.*, for example, the plaintiff "failed to demand how defendant should correct its alleged violations of the CLRA, and thus failed to properly comply with CLRA's notice requirement." 2018 WL 2761857, at *4 (N.D. Cal. June 8, 2018). The court dismissed the claim. Similarly, in *Peacock*, the court dismissed a CLRA claim because the plaintiff's notice and demand letter did not inform the defendant "which provisions of section 1770 it allegedly

violated . . . or what [the plaintiff] expected the [defendant] to do about it." 2018 WL 452153, at *8.[4]

Mr. Shapiro's notice letter to AT&T does not comply with the CLRA's demand requirement. While Mr. Shapiro's counsel sent AT&T a letter (on behalf of Mr. Shapiro and two other plaintiffs), he did not "demand" that AT&T "correct, repair, or replace" the service "alleged to be in violation" of the CLRA. Cal. Civ. Code § 1782(a)(2). The letter merely informs AT&T that Mr. Shapiro will bring a lawsuit for alleged violations of several laws, regardless of whether AT&T offers to cure Mr. Shapiro's alleged injuries. Ex. A at 1–2. The letter specifically states that the purpose of Mr. Shapiro's lawsuit is not to rectify his alleged harm but rather to "hold AT&T accountable for its violations of" several laws, one of which is the CLRA. Ex. A at 2. Nowhere did Mr. Shapiro say that AT&T could stop him from filing his lawsuit, even if AT&T was willing and able to rectify the alleged harm.

This falls far short of Mr. Shapiro's obligation. Courts have required plaintiffs to "describe" or otherwise note "how" the defendant should rectify the alleged harm. *Scholl*, 2006 WL 8455411, at *16; *Basmadjian*, 2018 WL 2761857, at *4. With no direction, AT&T could not begin to remedy Mr. Shapiro's alleged harm, obstructing the CLRA's "goal of precomplaint resolution." *Breen v. Pruter*, 679 F. App'x 713, 721 (10th Cir. 2017). Without indicating what he "expected [AT&T] to do about" his alleged harm, Mr. Shapiro failed to send AT&T a compliant notice and demand letter. *Peacock*, 2018 WL 452153, at *8. Accordingly, his CLRA claim should be dismissed.

---

[4] Other courts describe the notice requirement similarly. *See Scholl ex rel. Scholl v. Manor Care, Inc.*, 2006 WL 8455411, at *16 (S.D. Cal. Oct. 13, 2006) (noting that the defendants were "correct in arguing that Section 1782 requires that consumers describe the 'correction, repair, replacement, or other remedy' they request"); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (holding that the plaintiff's notice and demand letter "must identify the particular § 1770 violations that the plaintiff is alleging and *demand that the defendant correct those violations*") (emphasis added).

### 2.    Mr. Shapiro Does Not Adequately Allege Reliance.

To state a claim under the CLRA, the plaintiff must plead "actual reliance" on the defendant's misrepresentation or omission. *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047–48 (N.D. Cal. 2014); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (affirming dismissal of a CLRA claim for failure to plead "reliance"). In its prior opinion, the Court held that Mr. Shapiro had not adequately alleged reliance on any misrepresentation or omission. *Shapiro I* at 9–10. The FAC continues to allege the same two theories of reliance included in the original Complaint: specifically, that Mr. Shapiro relied on (1) AT&T's Privacy Policy and (2) oral representations from AT&T employees. Mr. Shapiro's new allegations are insufficient to correct the flaws that the Court identified in these two theories.

### a.    Mr. Shapiro Did Not Plausibly Plead Reliance on the 2006 Privacy Policy Because He Does Not Plead that He Read or Reviewed It.

In Mr. Shapiro's initial Complaint, he claimed that he relied on AT&T's Privacy Policy when he became a customer in 2006. *Shapiro I* at 9. But, as the Court pointed out, he attached the 2019 version of AT&T's Privacy Policy, not the 2006 version, and made no allegations regarding a 2006 version. *Shapiro I* at 9 & n.16. In the FAC, Mr. Shapiro attaches the 2006 Privacy Policy, but fails to remedy a more fundamental problem: he never alleges that he read the 2006 Privacy Policy.  Indeed, Mr. Shapiro implicitly concedes he has no knowledge of whether he relied on the 2006 Privacy Policy, alleging only that "[o]n information and belief," either the 2006 Privacy Policy or some "substantially similar" policy was "operative" when he opened his account. FAC ¶152.  This is insufficient to state a claim.

To allege reliance on a written misrepresentation, courts "consistently" hold that the plaintiff must allege—at a bare minimum—that he "actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014); *see also In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013)

1    ("[N]one of the Plaintiffs presents evidence that he or she even saw, let alone read and

2    relied upon, the alleged misrepresentations contained in the Apple Privacy Policies.").

3         Where the plaintiff does not plead that he or she actually read the challenged

4    representation, a plaintiff cannot "plausibly" claim that he or she would have "been

5    aware of the [alleged] defect" had the defendant "publicized this information." *Ehrlich*

6    *v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010). Countless courts

7    have reached the same conclusion. *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 932 F.

8    Supp. 2d 1089, 1093 (N.D. Cal. 2013) ("Plaintiffs do not even allege that they actually

9    read the alleged misrepresentation—the Privacy Policy—which would be necessary to

10   support a claim of misrepresentation.").

11        For example, in *Handy v. LogMeIn, Inc.*, the plaintiff set forth the "Defendant's

12   advertisements" in the body of his complaint, but he did not "allege that he saw these

13   [advertisements] before he purchased the [product] or that he relied upon them." 2015

14   WL 4508669, at *8 (E.D. Cal. July 24, 2015). This failure was "fatal to his claim." *Id.*

15   And in *Ehrlich v. BMW of N. Am., LLC*, the court dismissed a CLRA claim because the

16   plaintiff did not adequately plead reliance. The court held that the complaint did not

17   allege that the plaintiff reviewed "any brochure, website, or promotional material"

18   before making his purchase. 801 F. Supp. 2d at 919.

19        Even when plaintiffs allege that a misrepresentation was part of their initial

20   signing packages, courts still require them to allege that they read the challenged

21   representation. For example, in *In re Yahoo! Inc. Customer Data Security Breach*

22   *Litigation*, the "Plaintiffs had to click through Defendants' Terms of Service in order to

23   create their accounts," but the plaintiffs never alleged "that they 'actually read'

24   Defendants' Terms of Service" or "the separate Privacy Policy containing the alleged

25   misrepresentation at issue." 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017). As a

26   result, the court dismissed their claims.

27        Here, Mr. Shapiro never alleges that he had read—or even *seen*—any part of the

28   2006 Privacy Policy when he decided to contract with AT&T. Instead, he simply adds a

conclusory allegation that he "relied on AT&T's Privacy Policy and related commitments when he chose to open his account with AT&T in approximately 2006." FAC ¶ 150. He alleges no facts to make this conclusory allegation plausible; he alleges neither that he received the Privacy Policy, nor in what context he received it, nor that he read it. Instead, he alleges that "[p]rivacy was important to" him, a very different allegation. FAC ¶ 151. In addition, he alleges that he "would have behaved differently" in 2006 if he had known that the Privacy Policy "was false and misleading and that it would not secure his CPNI." FAC ¶ 164. But again, alleging he would have acted differently if he had known that the SIM swap would happen is very different from pointing to a specific provision in the Privacy Policy that Mr. Shapiro recalls reading and relying on. Mr. Shapiro neither identifies any alleged misrepresentation that he claims to have specifically relied on, nor claims to have read any portion of the 2006 Privacy Policy. It is straightforward that a plaintiff cannot plausibly allege that he or she "act[ed] in reliance on a statement" he or she did "not see, read, or hear." *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1022.

Accordingly, Mr. Shapiro has not plausibly pled that he relied on AT&T's Privacy Policy in deciding to commence service with AT&T. And without reliance, Mr. Shapiro cannot allege a "causal connection between a defendant's actions and [his] alleged harm." *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d at 1093. The Court should dismiss Mr. Shapiro's CLRA claim insofar as it is based on AT&T's 2006 Privacy Policy.

### b.  Mr. Shapiro Has Not Pled that He Engaged in Any Covered "Sale or Transaction" in Reliance on Any Misrepresentation.

Mr. Shapiro also bases his CLRA claim on alleged oral misrepresentations by supposed AT&T "employees."[5] Specifically, he alleges that an AT&T employee told him that AT&T was "monitoring his account" and "his SIM card would not be swapped

---

[5] Neither was actually an "employee," though AT&T assumes the truth of Mr. Shapiro's allegation for purposes of this motion.

Gibson, Dunn & Crutcher LLP

again without his authorization." FAC ¶ 35. Based on that statement, Mr. Shapiro alleges that he "decided not to close his AT&T account." *Id.* But as this Court previously held, this does not state a claim for a violation of the CLRA. *Shapiro I* at 10. The CLRA only permits plaintiffs to sue for damages that result from a sale or transaction. Cal. Civ. Code § 1761(e). As this Court concluded, Mr. Shapiro's "decision not to cancel his account in 2018 is not a sale or transaction for purposes of the CLRA." *Shapiro I* at 10; *see also Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014) (holding that a sale or transaction does not extend to cover representations made after the original purchase for purposes of the CLRA). Mr. Shapiro does not add any relevant facts on this point. Accordingly, the FAC still does not state a claim under the CLRA.

The FAC attempts to escape this fatal flaw by altering the sequence of events pled in the original Complaint. The Court previously recognized that Mr. Shapiro's original Complaint "alleges Plaintiff bought the new SIM card and mobile phone ***before*** the alleged oral misrepresentation." *Shapiro I* at 10. Mr. Shapiro now changes the facts, pleading that AT&T employees told him before he purchased a new phone that "purchasing a new wireless phone with a new SIM card would secure his account and prevent additional SIM swap attacks." FAC ¶ 36. Mr. Shapiro alleges that he relied on "this assurance" when he "purchased a new iPhone . . . as well as a new SIM card, in the AT&T retail store." FAC ¶ 36.

Mr. Shapiro's attempt to recharacterize his reliance as purchase of an iPhone, rather than continuation of service, to avoid the Court's ruling regarding a "sale or transaction," is unavailing. To adequately plead a CLRA claim, the plaintiff must plead not only that he relied on a statement, but also that he "suffered economic injury as a result of that reliance." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014) (holding that the plaintiff must plead "damages caused by that misrepresentation"). That is, to adequately plead a CLRA claim for damages lost through the SIM swap, Mr. Shapiro must plausibly plead that he relied on a statement by AT&T to enter a sale or

transaction, and that his acts in reliance on that statement caused the harm for which he seeks to recover. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (plaintiff "must show that the misrepresentation was an *immediate cause* of the injury-producing conduct") (emphasis added). But "if the damages sustained were otherwise inevitable or due to unrelated causes," the plaintiff cannot hold the defendant liable for his harm. *Weisberg v. Takeda Pharm. Co. Ltd.*, 2018 WL 6219879, at *4 (C.D. Cal. May 7, 2018) (internal citation omitted).

The FAC does not allege that the SIM swap had any connection to the particular device Mr. Shapiro was using or that the phone itself had inadequate security. Instead, the FAC alleges that the SIM swaps occurred by individuals who did not have access to Mr. Shapiro's wireless device, and that those individuals conducted the SIM swap by taking over Mr. Shapiro's wireless number and "improperly access[ing]" Mr. Shapiro's "*AT&T account*," not by seizing his phone. FAC ¶¶ 35, 37 (emphasis added). Thus, Mr. Shapiro's decision to purchase a phone is a red herring; the only potential reliance that the alleged facts suggest could have caused the loss of his cryptocurrency is Mr. Shapiro's decision not to cancel his service. As this Court held previously, that decision is not actionable under the CLRA.

Accordingly, Mr. Shapiro's CLRA claim should be dismissed for this reason as well.

## V.    Conclusion

For the reasons set forth above, the Court should dismiss Mr. Shapiro's claim for invasion of privacy under the California Constitution (Count III) as well as his CLRA claim (Count VI). Because Mr. Shapiro cannot remedy the flaws in these claims, the dismissal should now be with prejudice.

1   Dated: June 26, 2020

2                                       MARCELLUS MCRAE
                                        ASHLEY E. JOHNSON
3                                       GIBSON, DUNN & CRUTCHER LLP

4

5                                       By:  /s/ *Marcellus McRae*
                                                 Marcellus McRae
6                                                Ashley E. Johnson

7                                       Attorneys for Defendant AT&T MOBILITY,
                                        LLC
8

9

10

11

12   103956057.8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28