1

**PIERCE BAINBRIDGE P.C.**
John M. Pierce (SBN 250443)

2

jpierce@piercebainbridge.com
Andrew Calderón (SBN No. 316673)

3

acalderon@piercebainbridge.com
355 S. Grand Avenue, 44th Floor

4

Los Angeles, CA 90071
Telephone: (213) 262-9333

5

Facsimile: (213) 279-2008

6

7

*Attorneys for Plaintiff Seth Shapiro*

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

SETH SHAPIRO,

Plaintiff,

12

v.

13

AT&T MOBILITY, LLC,

Defendant.

14

Case No. 2:19-CV-08972 (CBM)

**PLAINTIFF SETH SHAPIRO'S OPPOSITION TO DEFENDANT AT&T MOBILITY LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Action Filed: October 17, 2019

**Hearing:**
Date: July 28, 2020
Time: 10:00 a.m.
Place: 350 West 1st Street, 8th Floor
        Courtroom 8B
        Los Angeles, CA 90012
Judge: Hon. Consuelo B. Marshall

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     FACTS ....................................................................................................................2

        A.      Factual History ...........................................................................................2

        B.      Procedural History ......................................................................................4

III.    STANDARD OF REVIEW ....................................................................................4

IV.     ARGUMENT ..........................................................................................................5

        A.      Mr. Shapiro More Than Adequately Pleaded an Actionable Claim for
                Invasion of Privacy Under Ninth Circuit Standards ..................................5

                1.      Mr. Shapiro Sufficiently Pleaded Facts that the Invaded Information
                        Was a Protected Privacy Interest and Was Sufficiently Sensitive to
                        Maintain a Reasonable Expectation of Privacy ...................................5

                2.      AT&T's Misconduct Was Intentional and Amounts to a Breach of
                        Social Norms......................................................................................10

                3.      Mr. Shapiro Pleaded Specific Details Sufficient to Establish a
                        Reasonable Expectation of Privacy ...................................................13

        B.      Mr. Shapiro Adequately Alleged an Actionable Violation of the CLRA.............13

                1.      Mr. Shapiro Satisfied the Notice and Demand Requirements of the
                        CLRA ..................................................................................................13

                2.      Mr. Shapiro Adequately Pleaded that He Was Familiar Enough With
                        AT&T's Privacy Policy to Establish Reliance For Purposes of the
                        Pleading Stage....................................................................................16

V.      CONCLUSION.....................................................................................................19

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
5
    556 U.S. 662 (2009)..................................................................................4

6

*Basmadjian v. Realreal, Inc.,*
    No. C 17-06910 WHA, 2018 WL 2761857 (N.D. Cal. June 8, 2018)...................16

7

*DeSoto v. Yellow Freight Sys., Inc.,*
8
    957 F.2d 655 (9th Cir. 1992) .............................................................................5

9

*Doe 1 v. AOL LLC,*
10
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..............................................................15

11

*In re Facebook,*
    956 F.3d at 606 ........................................................................................10, 11

12

*In re Facebook, Inc. v. Internet Tracking Litig.,*
13
    956 F.3d.589 (9th Cir. Apr. 9, 2020) ........................................................ *passim*

14

*Flores v. Adir Int'l, LLC,*
15
    685 F. App'x 533 (9th Cir. 2017) .......................................................................4

16

*In re Grand Jury Proceedings,*
    40 F.3d 959 (9th Cir. 1994) ..........................................................................9, 10

17

*Grodzitsky v. Am. Honda Motor Co.,*
18
    No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326 (C.D. Cal. June 12, 2013).......20

19

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) ......................................................................................10, 12
20

*Hodson v. Mars, Inc.,*
21
    162 F. Supp. 3d 1016,1023 (N.D. Cal. 2016) ......................................................17

22

*In re iPhone Application Litig.,*
23
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) .................................................................17

24

*Kanfer v. Pharmacare US, Inc.,*
    142 F. Supp. 3d 1091 (S.D. Cal. 2015) ..............................................................15
25

*Kwikset Corp. v. Superior Court,*
26
    51 Cal. 4th 310 (2011) .....................................................................................18

27

*Leonel v. Am. Airlines, Inc.,*
28
    400 F.3d 702 (9th Cir. 2005) ..............................................................................9

*Mangiaracina v. Penzone*,
   849 F.3d 1191 (9th Cir. 2017) ............................................................................4

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ....................................................................................19

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. 4th 1235 (2009) ................................................................................15

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) .......................................................................15

*Outboard Marine Corp. v. Super. Ct.*,
   52 Cal. App. 3d 30 (1975) .........................................................................15, 16

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1195 (N.D. Cal. 2014) ...........................................................17

*Robert Ross v. AT&T Mobility, LLC*,
   N.D. Cal. Case No. 19-cv-06669-JST ....................................................6, 7, 8

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010)...........11, 12

*In re Sony Gaming Networks*,
   903 F. Supp. 3d at 970 ...............................................................................18, 19

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ..........................................................................18

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
   No. CV 18-9166-GW(MAAx), 2019 WL 4392528 (C.D. Cal. May 8, 2019) .......16

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...........................................................14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................................17

*Torrent v. Ollivier*,
   2016 WL 4596341 (C.D. Cal. Sept. 2, 2016) .................................................15

*Trabakoolas v. Watts Water Techs., Inc.*,
   2012 WL 2792441 (N.D.Cal.2012) .................................................................15

*United States v. Miller*,
   425 U.S. 435 (1976)........................................................................................10

*Von Grabe v. Sprint*,
   312 F.Supp.2d 1285 (S.D.Cal.2003).............................................................15

– iii –

TABLE OF AUTHORITIES

1

**Statutes**

2

Cal. Civ. Code § 1750.................................................................................. *passim*

3

Cal. Civ. Code § 1782..........................................................................................14

4

Cal. Penal Code § 502...........................................................................................8

5

U.S.C. §222............................................................................................................7

6

**Other Authorities**

7

Fed. R. Civ. P. 12(b)(6).........................................................................................4

8

Fed. R. Civ. P. 15(a)(2).........................................................................................4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

I.      INTRODUCTION

In its second motion to dismiss, AT&T continues its attempt to avoid responsibility for violations of its own privacy policy and false representations about data security. Plaintiff Seth Shapiro, a technology professional familiar with privacy policies, relied on AT&T's privacy and data security representations when he contracted with AT&T for mobile phone service in 2006. AT&T violated many of its own privacy terms when it conspired with criminal hackers to turn control of Mr. Shapiro's mobile account over in exchange for bribes not once but four times, allowing those hackers to use the two-factor authentication linked to Mr. Shapiro's mobile number to reset passwords to various online accounts, view the content of Mr. Shapiro's private emails and notes, and steal approximately $1.9 million in cryptocurrency. Once Mr. Shapiro filed his Amended Complaint, AT&T moved to dismiss his claims for a violation of the right to privacy under the California Constitution and a violation of the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 et seq.).

AT&T's attack on Mr. Shapiro's claim for a violation of privacy under the California Constitution fails because: (1) whether a party has a reasonable expectation of privacy and whether there is a serious breach of a social norm are factual questions not generally appropriate to be dismissed at the pleading stage when the information at issue is sensitive and the defendant's conduct amounts to more than mere negligence; (2) Mr. Shapiro had a privacy interest in his personal emails, notes, and financial transactions are sufficient to survive the pleading stage; and (3) AT&T's own policies and public statements acknowledge the high privacy interest in consumers' account data.

AT&T's attacks on Mr. Shapiro's CLRA claim fail because: (1) Mr. Shapiro satisfied the notice and demand requirements of the CLRA by informing AT&T of the defects in their security protocols with a level of specificity sufficient to provide

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

them the opportunity to correct the defect and compensate Mr. Shapiro for his loss; (2) Mr. Shapiro did plead reliance on AT&T's 2006 Privacy Policy in a manner adequate for the pleading stage; and (3) Mr. Shapiro's purchase of a new iPhone was a covered transaction that resulted in economic loss, including additional unauthorized SIM swaps.

This is an important case with implications beyond the life-altering harms to Mr. Shapiro. AT&T's flagrant violations of consumer privacy are matters of high public interest. Besides repairing the damages that AT&T caused Mr. Shapiro, the privacy and CLRA claims may help change AT&T's duplicitous behavior that represents itself as a leader in data privacy that consumers can rely on while its employees accept bribes to grant account access to hackers. Mr. Shapiro's claims are adequately pleaded to survive the pleading stage and should be permitted to continue to hold AT&T accountable for its misconduct that imperils consumers in an age when we rely more than ever on our mobile service providers to protect the valuable data linked to our mobile phones.

## II.   FACTS

### A.   Factual History

Seth Shapiro is a former Director of Interactive Production at DIRECTV. Immediately prior to opening an account with AT&T in 2006, Mr. Shapiro was "directly involved in analyzing privacy policies and consumer data protections for DIRECTV and other technology and media corporations involved in doing business with DIRECTV, including Microsoft, TiVo, and others." Doc. No. 33, Amended Complaint ("FAC") ¶ 151. In 2006, AT&T had a privacy policy that included commitments by AT&T to protect the privacy of consumers' account information and safeguard access to consumers' accounts and data. FAC ¶ 153. These protections were important to Mr. Shapiro and he relied on AT&T's privacy policy when he decided to open a mobile phone account with AT&T. FAC ¶ 150.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1    On May 16, 2018, an AT&T employee in Arizona accessed Mr. Shapiro's
2    account without his permission and transferred it to a SIM card on a mobile phone
3    controlled by a hacker in exchange for money. FAC ¶¶ 19, 30, 47, 50.
4    Simultaneously, Mr. Shapiro lost service on his cell phone and suspected a SIM swap
5    attack, so he called AT&T, learned that his service had been transferred without his
6    consent, and had his account suspended. FAC ¶ 31-33.

7    Mr. Shapiro went into an AT&T store where an employee acknowledged that
8    there was SIM swap activity on his account. FAC ¶ 35. AT&T assured Mr. Shapiro
9    that it would protect his account while Mr. Shapiro emphasized that the financial life
10   or death of his family was at stake. FAC ¶ 35. AT&T assured Mr. Shapiro that
11   "purchasing a new wireless phone with a new SIM card would secure his account and
12   prevent additional SIM swap attacks." FAC ¶ 36. Mr. Shapiro relied on AT&T's
13   assurance and purchased a new iPhone with a new SIM card to protect his account.
14   FAC ¶ 36. Minutes after the activation of the new SIM card, an AT&T employee in
15   Arizona again accessed Mr. Shapiro's account without permission and again
16   transferred it to another SIM card controlled by a hacker. FAC ¶ 37. Despite all its
17   assurances, AT&T performed two additional unauthorized SIM swaps on Mr.
18   Shapiro's account. FAC ¶¶ 65, 67

19   During the course of the SIM swap attacks, hackers used the AT&T-provided
20   access to Mr. Shapiro's mobile number to gain access to Mr. Shapiro's password-
21   protected accounts, including his personal email accounts, exposing the contents of
22   private communications with family and friends; his Evernote account exposing the
23   contents of private notes to himself; his PayPal account, exposing personal financial
24   transactions; and several currency trading platforms exposing his personal and
25   business finances, and ultimately stealing approximately $1.9 million in
26   cryptocurrencies. FAC ¶¶ 40, 42, 44.

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1    **B.    Procedural History**

2    On August 9, 2019, Mr. Shapiro sent AT&T a notice and demand letter. FAC

3    ¶ 180. Mr. Shapiro filed his Complaint on October 17, 2019. (Doc. No. 1, Complaint.)

4    AT&T filed a motion to dismiss the Complaint. (Doc. No. 21, Motion to Dismiss.)

5    The Court denied AT&T's motion to dismiss for five of seven claims but granted it

6    as to Mr. Shapiro's claims for violations of privacy under the California Constitution

7    and the CLRA. (Doc. No. 32, Order re: Defendant's Mot. to Dismiss the Complaint.)

8    On May 29, 2020, Mr. Shapiro filed his Amended Complaint. (Doc. No. 33,

9    Amended Complaint.) On June 26, 2020, AT&T filed its Motion to Dismiss the

10   Amended Complaint. (Doc. No. 37, Mot. to Dismiss II.)

11   **III.    STANDARD OF REVIEW**

12   A motion to dismiss should be denied if a complaint "contain[s] sufficient

13   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

14   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the

16   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In

17   deciding a Rule 12(b)(6) motion, the Court must accept all allegations of material

18   fact as true, construe the allegations in the light most favorable to the nonmoving

19   party and draw all reasonable inferences in favor of the same. *Mangiaracina v.*

20   *Penzone*, 849 F.3d 1191, 1198 (9th Cir. 2017); *Flores v. Adir Int'l, LLC*, 685 F. App'x

21   533, 534 (9th Cir. 2017). "[A] well-pleaded complaint may proceed even if it strikes

22   a savvy judge that actual proof of those facts is improbable, and that a recovery is

23   very remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)

24   (quotation omitted).

25   The court should freely grant a plaintiff leave to amend a deficient claim "when

26   justice so requires." Fed. R. Civ. P. 15(a)(2). Where a motion to dismiss is granted,

27   "leave to amend should be granted 'unless the court determines that the allegation of

28

4

other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## IV.   ARGUMENT

### A.   Mr. Shapiro More Than Adequately Pleaded an Actionable Claim for Invasion of Privacy Under Ninth Circuit Standards

To state a claim for invasion of privacy under the California Constitution, plaintiffs must show that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive'" conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *In re Facebook, Inc. v. Internet Tracking Litig.*, 956 F.3d.589, 601 (9th Cir. Apr. 9, 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 286 (2009)). AT&T omits, however, that "[t]hese elements do not constitute a categorical test, but rather serve as threshold components of a valid claim to be used to 'weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.'" *Id.* at 602 (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994)). Not only do Mr. Shapiro's allegations exceed an "insignificant or de minimis" intrusion but AT&T's arguments that Mr. Shapiro fails to adequately plead a legally protected privacy interest, reasonable expectation of privacy, and breach of a social norm are unpersuasive in light of recent Ninth Circuit authority.

#### 1.   Mr. Shapiro Sufficiently Pleaded Facts that the Invaded Information Was a Protected Privacy Interest and Was Sufficiently Sensitive to Maintain a Reasonable Expectation of Privacy

AT&T's argument that Mr. Shapiro's "description of the allegedly disclosed information is too vague to plausibly allege a legal protected privacy interest or

5

1   reasonable expectation of privacy" relies on non-binding opinions inconsistent with
2   recent Ninth Circuit authority. In *In re Facebook, Inc.*, the Ninth Circuit rejected a
3   defendant's demand for greater specificity of private information and made clear that
4   when sensitive information is involved, the court cannot conclude at the pleading
5   stage that a plaintiff has no reasonable expectation of privacy. 956 F.3d. at 603-04.

6      In *In re Facebook*, the Ninth Circuit considered in part whether the plaintiffs
7   adequately alleged claims that Facebook violated the right to privacy under the
8   California Constitution when it tracked users' browsing data without their consent
9   after they logged off, matched users browsing history with their Facebook profiles—
10  which potentially contained a variety of personal information (e.g., employment
11  history, political/religious affiliations, etc.)—and sold this individualized data to third
12  parties. *Id.* at 598-99. Like AT&T, Facebook tried to argue that to show a reasonable
13  expectation of privacy, the plaintiffs need "to identify specific, sensitive information
14  that Facebook collected, and that their more general allegation that Facebook
15  acquired 'an enormous amount of individualized data' is insufficient." *Id*. at 603. The
16  Ninth Circuit rejected this argument, stating "[t]he question is not necessarily whether
17  Plaintiffs maintained a reasonable expectation of privacy in the information in and of
18  itself. [Courts] must examine whether the data itself is sensitive *and* whether the
19  manner it was collected…violates social norms." *Id*.

20     Since *In re Facebook*, a district court has already relied on it to reject AT&T's
21  vagueness argument in a similar SIM swap case. In *Robert Ross v. AT&T Mobility,*
22  *LLC*, N.D. Cal. Case No. 19-cv-06669-JST, Mr. Ross, a former AT&T consumer,
23  filed a similar lawsuit, including a violation of the right to privacy under the
24  California Constitution, to hold AT&T accountable for an unauthorized SIM swap
25  that resulted in a loss of approximately $1 million.[1] AT&T moved to dismiss Mr.

26

27  _____
    [1] Mr. Shapiro filed a Request for Judicial Notice of the Northern District of California's ruling on
    AT&T's motion to dismiss in that case.

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1   Ross' complaint, including Mr. Ross' privacy claim on the same grounds that "Ross
2   failed to plead with specificity the information that AT&T allegedly accessed or
3   disclosed without his authorization . . . ." Order Granting in Part & Denying in Part
4   Motion to Dismiss, *Ross v. AT&T Mobility, LLC,* Case No. 19-cv-06669-JST, Dkt.
5   No. 36 (N.D. Cal. May 14, 2020) at 10:13-14. The district court rejected AT&T's
6   argument because "the type of information implicated in an unauthorized SIM swap
7   is sensitive." *Id.* at 14:2-8. Like the plaintiff in *Ross*, Mr. Shapiro alleged that AT&T
8   violated his right to privacy by accessing his Customer Proprietary Network
9   Information ("CPNI") without his authorization. FAC ¶¶ 203-205.

10        AT&T does not deny that CPNI is sensitive information. The Federal
11   Communications Act requires telecommunications carriers to protect the
12   confidentiality of CPNI. U.S.C. §§222(a)-(c).[2] Since at least 2006, AT&T's own
13   privacy policy has acknowledged the consumer's right and AT&T's duty under
14   federal law to protect the confidentiality of CPNI.[3] AT&T commits not to "sell, trade
15   or share" consumer CPNI.[4] Yet, AT&T has repeatedly done just that. AT&T was
16   recently among telecommunications carriers fined for failing to protect consumers'

17

18

19

20

21

22   [2] U.S.C. §§222(c)(1) reads as follows: "Except as required by law or with the approval of the
     customer, a telecommunications carrier that receives or obtains customer proprietary network
23   information by virtue of its provision of a telecommunications service shall only use, disclose, or
     permit access to individually identifiable customer proprietary network information in its provision
24   of (A) the telecommunications service from which such information is derived, or (B) services
     necessary to, or used in, the provision of such telecommunications service, including the publishing
25   of directories."

     [3] "Privacy Policy," AT&T, effective June 16, 2006. AT&T assures customers that "Protecting the
26   confidentiality of your CPNI is your right and our duty under federal law."

27   [4] *Id.*

28
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1   CPNI by disclosing it to third parties, not unlike the violations in *In re Facebook*.[5]

2       AT&T points to *In re Yahoo* as holding that there is no privacy interest in

3   emails generally and that plaintiffs must allege with specificity the material in the

4   content of messages. MTD, 6. First, as discussed above, this claimed specificity

5   requirement is superseded by *In re Facebook*'s rejection of that requirement in favor

6   of focusing instead on the data's sensitivity. Regardless, *In re Yahoo* specifically

7   states that there is a "legally protected privacy interest in the personal financial and

8   employment information contained in an email account." 7 F. Supp. 3d 1016, 1041

9   (N.D. Cal. 2014) (citing *Mintz v. Mark Bartelstein & Associates Inc.*, 906 F.Supp.2d

10  1017, 1033–34 (C.D.Cal.2012)). Mr. Shapiro pleaded that his email correspondence

11  included exactly that—"email correspondence with his spouse, family members,

12  friends, and **business associates**[.]" FAC ¶ 205 (emphasis added).

13      Further, California courts and statutes have recognized the protected privacy

14  interest email accounts. In *Mintz*, the court recognized that unauthorized access to an

15  email account itself breached legitimate privacy rights and constituted a "serious and

16  offensive [conduct] that the California legislature subjects the perpetrator to criminal

17  liability under California Penal Code § 502.". 906 F. Supp. 2d at 1034. Indeed, the

18  California Penal Code section 502 states, "[the] protection of the integrity of all types

19  and forms of lawfully created computers, computer systems, and computer data is

20  vital to the protection of the privacy of individuals." Cal. Penal Code § 502. AT&T

21  has again failed to show that no reasonable expectation of privacy could exist as a

22  matter of law. Rather, as in *In re Facebook* and *Ross*, at minimum, material questions

23

24  [5] In the Matter of AT&T Inc., 35 FCC Rcd 1743 (2), No. 202032170004, (Feb. 28, 2020),   "In
    this Notice of Apparent Liability, we propose a penalty of $57,265,625 against AT&T Inc....for

25  apparently violating...privacy of customer information...[when it] apparently disclosed its
    customers' location information, without their consent, to a third party who was not authorized to

26  receive it."https://docs.fcc.gov/public/attachments/FCC-20-26A1.pdf "In this Notice of Apparent
    Liability, we propose a penalty of $57,265,625 against AT&T Inc....for apparently

27  violating...privacy of customer information...[when it] apparently disclosed its customers'
    location information, without their consent, to a third party who was not authorized to receive it."

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1    of fact remain on the sensitivity of Mr. Shapiro's breached data.

2         Mr. Shapiro had a reasonable expectation of privacy in his personal email

3    accounts, notetaking applications, and financial accounts. The privacy interest that

4    the Ninth Circuit observed in *In Re Fac*ebook for browsing history that could reveal

5    "employment history, political and religious affiliations, interests, etc." could also be

6    revealed by reviewing someone's personal emails, private notes, and financial

7    transaction histories. Just think about how much someone could learn about you by

8    combing through your personal emails, notes, and financial transactions. At a very

9    minimum, whether Mr. Shapiro has a reasonable expectation of privacy in the

10   extensive personal data contained in his online accounts is a factual question

11   inappropriate for dismissal as a matter of law. *Leonel v. Am. Airlines, Inc.*, 400 F.3d

12   702, 712 (9th Cir. 2005) ("Whether a party has a reasonable expectation of privacy

13   is a context-specific inquiry that should not be adjudicated as a matter of law unless

14   the undisputed material facts show no reasonable expectation of privacy.") (citation

15   and internal quotation marks omitted). Mr. Shapiro's allegations that AT&T accessed

16   his CPNI without permission and facilitated the access of his personal email,

17   notetaking, and financial accounts more than adequately raises a facial plausibility

18   that AT&T caused the invasion of information for which Mr. Shapiro possessed a

19   reasonable expectation of privacy.

20        After failing to argue that email cannot support a privacy interest or reasonable

21   expectation of privacy, AT&T advances a false equivalency in citing *In Re Grand*

22   *Jury* that "checks, deposit slips, and financial statements maintained by the bank" and

23   the stolen passwords which granted direct access to the funds within Mr. Shapiro's

24   financial accounts are one in the same. MTD, 5. The facts of *In re Grand Jury*

25   *Proceedings*, 40 F.3d 959 (9th Cir. 1994) are in no way analogous, however,

26   especially considering the technological advances since the case's decision, where

27   the nature of access to online bank records (especially that information that would

28

9

grant access to cryptocurrency, as is the situation with Shapiro) is entirely more intrusive than access to the paper records available at the time this older case was decided. Moreover, however, AT&T omits that the holding of *Grand Jury* cites to *United States v. Miller*, 425 U.S. 435, 442 (1976), which held that the plaintiff had no expectation of privacy in such bank records concerning the *government's right to search and seizure of bank records*. *In re Grand Jury* itself concerns the right of governmental entities to access foreign bank account records. *In re Grand Jury*, 40 F.3d 959 at 963-64. In no way does either case suggest that consumers do not have a reasonable expectation of the privacy of their financial information from non-governmental malicious actors like those who violated Mr. Shapiro's private financial information.

### 2. AT&T's Misconduct Was Intentional and Amounts to a Breach of Social Norms

To establish an invasion of privacy claim, the invasion must be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. AT&T omits, however, that "[d]etermining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objections, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606. AT&T's misconduct is highly offensive under several of these factors. First, AT&T's invasion of Mr. Shapiro's privacy in his CPNI data and online accounts resulted in the theft of approximately $1. million—a serious harm. Second, the degree and setting of the intrusions are highly offensive because they were repeated four times and resulted in criminal threats to Mr. Shapiro and his family.[6]  Third, AT&T's motives were highly

---

[6] FAC ¶ 29, 76.  Hackers texted Mr. Shapiro and demanded money, threatening "I know where you live, I know who your family is."

offensive because its employees intentionally performed the intrusions in exchange for bribes—a federal crime for which they were prosecuted.[7]  Regardless, like the plaintiffs in *In re Facebook*, Mr. Shapiro has alleged sufficient facts about AT&T's criminal intrusions that the question of whether they could highly offend a reasonable person cannot be resolved at the pleading stage. *In re Facebook,* 956 F.3d at 606.

AT&T incorrectly asserts that Mr. Shapiro claimed that AT&T merely negligently invaded his privacy, when in fact Mr. Shapiro pleaded that AT&T, through its employees, *intentionally invaded* his privacy. AT&T employees used their employee access to Mr. Shapiro's AT&T account to view his confidential AT&T account information and disseminate that information to third party hackers. FAC ¶ 46-49. This was not mere negligence on the part of the AT&T; it was a purposeful crime that they committed for payment from a third party. *Id.* ¶ 50. Further, Mr. Shapiro alleges that, in an effort retain and increase its customer base, AT&T intentionally misled its customers about its known-to-be deficient security practices. *Id.* ¶ 178. This purposeful conduct also goes beyond mere negligence and is thus sufficient to support a pleading that AT&T committed an egregious breach of social norms.

Finally, AT&T put forth no binding legal basis rendering its intrusions inoffensive, and instead relies on non-binding case law not on point with these intrusions. None of the case law AT&T cites in support of its position addresses a similar fact pattern. *Ruiz v. Gap Inc., Razuki v. Caliber Home Loans Inc., and In re iPhone Litigation* are all inapposite because the plaintiffs in these cases rooted the right to privacy claim in mere negligence—not purposeful insider leaking of private

---

[7] FAC ¶ 19, 28, 46-52

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1   data to third parties by defendants via its own or its employees' actions.[8] Indeed,

2   the theft of Mr. Shapiro's private information by one or more AT&T employees is a

3   far more egregious "type of intentional, egregious privacy invasion" than the one

4   contemplated in *Hill*, where the defendant's employees were merely passive

5   observers, and there was no allegation that such employees made any improper use

6   of their observations. *Hill v. Nat'l Collegiate Athletic Assoc.*, 7 Cal. 4th 1, 14, 40

7   (1994). Therefore, the nefarious actions taken by AT&T via its employees absolutely

8   mark an egregious and highly offensive breach of privacy.

9       The facts in AT&T's cited case are further distinguishable. For example, the

10  *Ruiz* court stressed that the plaintiff had not suffered any actual harm—he was only

11  "at an increased risk of identity theft"—and that the mere possibility of future harm

12  was insufficient to constitute a serious invasion of privacy. *Ruiz v. Gap, Inc.*, 540 F.

13  Supp. 2d 1121, 1125, 1128 (2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010). That

14  holding has no relevance here: nearly $2 million was stolen from Mr. Shapiro and his

15  family, all of his private communications and other accounts were compromised and

16  used by criminals to blackmail and extort him, his wife was forced to return to work

17  and give less attention to their children, and his family lives in fear of being similarly

18  victimized again or worse—having their personal safety compromised. FAC ¶76 [and

19  other paragraphs]. The harm inflicted upon Mr. Shapiro was real and severe, and his

20  family was not only real, it was also extremely severe, and continues to affect and his

21  family was financially and personally severe, and it has pervaded Mr. Shapiro's

22  professional and personal life. Therefore, the breach acted out by AT&T's

23  representatives was egregious and highly offensive, and thus represents an invasion

24

---

25  [8] For example, AT&T's reliance on *Razuki v. Caliber Home Loans Inc.* is flawed and
    distinguishable because the court held that defendant had committed mere negligence—not an
26  intentional violation of plaintiff's privacy—in choosing a cheaper security system which
    unwittingly allowed hackers to ultimately steal sensitive customer information. 2018 WL 2761818,
    at *1 (S.D. Cal. June 8, 2018). Similarly, *Ruiz v. Gap Inc.* involved an employer negligently
27  permitting laptops containing unencrypted personal information of job applicants to be stolen. 540
    F. Supp. 2d 1121, 1124-25 (2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

of Mr. Shapiro's privacy.

### 3. Mr. Shapiro Pleaded Specific Details Sufficient to Establish a Reasonable Expectation of Privacy

Mr. Shapiro did sufficiently plead the private information that was wrongfully disclosed with sufficient specificity, and AT&T's allegations otherwise are therefore facially inaccurate. Namely, Shapiro stated that the "private information" included in the contents of his email included "his private email correspondence with his spouse, family members, friends, and business associates; passwords on his private notetaking application where he stored personal and professional confidential information; and passwords on his financial accounts that revealed his personal financial transactions, account balances, and business activities." [Shapiro, at 48.] Therefore, AT&T's allegation that "Mr. Shapiro does not even generally describe the contents of the messages allegedly disclosed…" is blatantly untrue. [MTD, at 6.] Moreover, Mr. Shapiro's conduct evidences his objectively reasonable expectation of privacy in his information—in taking reasonable measures to ensure his privacy by implementing passwords in both his iPhone, and passwords on all of his accounts containing sensitive information, Mr. Shapiro demonstrates his objectively reasonable expectation of privacy. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1035 (N.D. Cal. 2014).

### B. Mr. Shapiro Adequately Alleged an Actionable Violation of the CLRA

### 1. Mr. Shapiro Satisfied the Notice and Demand Requirements of the CLRA

AT&T disputes issues of fact to attack the sufficiency of Mr. Shapiro's notice and demand letter. Mr. Shapiro alleges, and AT&T concedes, that Mr. Shapiro sent AT&T a notice and demand letter more than 30 days prior to filing his Complaint. FAC ¶ 252; *AT&T II* at 10-11. AT&T disputes, however, that Mr. Shapiro's letter satisfies the requirements of the CLRA. The plain language of Mr. Shapiro's letter shows that AT&T is wrong, or at a minimum that there is a factual dispute.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

The CLRA requires that a plaintiff notify the prospective defendant "of the particular alleged violations of" the CLRA and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of" the CLRA. Cal. Civ. Code § 1782(a). The plain language of the CLRA does not require, nor does AT&T provide binding authority, that a plaintiff must include more.

Mr. Shapiro's notice and demand letter notified AT&T of the particular alleged violations, including a summary of the incident, AT&T's involvement and violations, and Mr. Shapiro's then-estimated $1.8 million loss. (Dkt. 38-1 at 1-2.) Additionally, Mr. Shapiro's letter also demanded that AT&T rectify its violations:

> AT&T's failures to protect my clients' sensitive and confidential information resulted in egregious privacy violations, theft, emotional distress, and business and reputational damage. **Absent appropriate relief**, my clients will seek the full extent of damages available to them under the law, including but not limited to the claims outlined above, in 30 days.

(*Id.* at 3) (emphasis added). As evident above, Mr. Shapiro's letter made clear the general details of the violations, his $1.8 million[9] loss and a demand for appropriate relief.

A reasonable person could read Mr. Shapiro's letter and understand that "appropriate relief" included, at the very least, compensating Mr. Shapiro for his loss. At a minimum, AT&T's argument that the demand is not sufficiently clear is a factual dispute that should be left to the jury to resolve. Even if Mr. Shapiro's letter did contain a technical deficiency, the remedy is not dismissal but leave to issue a new demand letter. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. 4th 1235, 1260–61 (2009) (holding that in order to properly satisfy the purpose of the CLRA notice

---

[9] : Mr. Shapiro's original Complaint included a loss of $1.8 million that was changed to $1.9 million in the Amended Complaint based on an evaluation of Mr. Shapiro's loss by the Department of Justice.

1   requirements, a flawed claim "must simply be dismissed [without prejudice] until 30
2   days or more after the plaintiff complies with the notice requirements").[10]

3       AT&T's argument that Mr. Shapiro's letter should have included greater detail
4   to describe or note how AT&T could rectify its violations exceeds the plain
5   requirements of the CLRA and relies on non-binding cases that are easily
6   distinguished. AT&T's citation to *Sotelo* , for instance, completely disregards  Mr.
7   Shapiro's specific allege that it was AT&T's wireless cell **service** and negligent
8   security protocols that were deficient. In contrast, the *Sotelo* court found that the
9   plaintiff inadequately described the model of the **product** he alleged was deficient.
10  *Sotelo v. Rawlings Sporting Goods Co., Inc*., No. CV 18-9166-GW(MAAx), 2019
11  WL 4392528, at *6 (C.D. Cal. May 8, 2019).  In citing a case that concerns a physical
12  good rather than a software or service (as is the case here), AT&T seeks to obfuscate
13  the *Sotelo* court's finding that "the purpose of the CLRA notice requirement is to
14  allow a manufacturer or vendor sufficient opportunity to correct or replace a deficient
15  product." *Id.*  While indicating specific product names or model numbers may be
16  appropriate for a tangible good, Mr. Shapiro plainly stated that AT&T's negligent
17  security was defective, which is sufficient to alert AT&T to the issue with this service,

18

19  _____

20  [10] "The federal district court cases upon which AT&T relies for its assertion that failure to comply
    with the notice requirement requires dismissal with prejudice fail to properly take into account the
    purpose of the notice requirement. That requirement exists in order to allow a defendant to avoid
21  liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or
    indicates within that 30–day period that it will correct those wrongs within a reasonable time. A
22  dismissal with prejudice of a damages claim filed without the requisite notice is not required to
    satisfy this purpose." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1260–61
23  (2009)(citationsomitted).
    This *Morgan* standard handed down by the California Court of Appeal superseded the earlier
24  standard outlined in *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975) and *Von
    Grabe v. Sprint*, 312 F.Supp.2d 1285, 1304 (S.D.Cal.2003), both of which AT&T cites in its Motion
25  toDismiss.
    Since *Morgan*, courts have followed its example and dismissed without prejudice CLRA claims
26  lacking sufficient notice. *See e.g., Torrent v. Ollivier*, 2016 WL 4596341, at *2–3 (C.D. Cal. Sept.
    2, 2016); *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1106–07 (S.D. Cal. 2015) ;
27  *Trabakoolas v. Watts Water Techs., Inc.*, 2012 WL 2792441, at *5–8 (N.D.Cal.2012); *Doe 1 v.
    AOL LLC*, 719 F. Supp. 2d 1102, 1110–11 (N.D. Cal. 2010).

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

and for them to "permit the appropriate corrections or replacements", which they failed to do. *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40 (1975).

Moreover, Mr. Shapiro not only pleaded with specificity the AT&T service at issue, he demonstrated to AT&T exactly how much money was stolen as a result of their defective service, how it was stolen, and who he believed responsible for his losses. Therefore, AT&T's citation to *Basmadjian v. Realreal, Inc.*, No. C 17-06910 WHA, 2018 WL 2761857, at *4 (N.D. Cal. June 8, 2018) (dismissing CLRA claim because plaintiff conceded that she did not demand how the defendant should correct alleged CLRA violations) is completely unfounded and inapplicable to Mr. Shapiro's case.

    **2.**     **Mr. Shapiro Adequately Pleaded that He Was Familiar Enough With AT&T's Privacy Policy to Establish Reliance For Purposes of the Pleading Stage**

        **a.**     **Mr. Shapiro Plausibly Pleads Actual Reliance on AT&T's 2006 Privacy Policy Because the Policy Created an Expectation of Data Security**

Mr. Shapiro did not need to plead that he read AT&T's 2006 Privacy Policy. Not only does the CLRA not have such a heightened pleading standard, but reliance can be inferred when a defendant makes misrepresentations about a material fact. *Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016). Material facts are those that a reasonable consumer would find important when making a purchasing decision. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009), Mr. Shapiro pleaded that privacy was important to him and specifically that he relied on AT&T's Privacy Policy when deciding to open his account. FAC ¶¶ 150, 152-153, 164. AT&T does not contest that the privacy protections in its 2006 Privacy Policy were material facts. Because AT&T misrepresented the material facts in its 2006 Privacy Policy, it is not necessary that Mr. Shapiro plead that he read the entirety of the policy to have relied on it; rather, it is sufficient to show that Mr. Shapiro relied on its existence. *Id.* ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach

16

1    importance to its existence or nonexistence in determining his choice of action in the

2    transaction in question', and as such materiality is generally a question of fact. . . .").

3          AT&T fails to cite any binding case establishing that a CLRA plaintiff must

4    allege reading the relied upon policy to establish reliance at the pleading stage. See,

5    e.g., *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d-1195 (N.D. Cal. 2014) (involves UCL

6    rather than CLRA); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D.

7    Cal. 2013) (plaintiffs relied on online reviews). The details of Mr. Shapiro's reliance

8    on AT&T's Privacy Policy should be the subject of discovery. *See Kwikset Corp. v.*

9    *Superior Court*, 51 Cal. 4th 310, 327 (2011) (reiterating that *"at the pleading stage,*

10   general factual allegations of injury resulting from the defendant's conduct may

11   suffice . . . .").

12         AT&T's argument that Mr. Shapiro's allegation "'[o]n information and belief'

13   that the 2006 Privacy Policy or some 'substantially similar' policy was 'operative'"

14   is insufficient to establish reliance is a red herring. Pleading "on information and

15   belief" is permitted and sufficient to establish a factual element at the pleading stage.

16   *See, e.g., Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly*

17   plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon

18   information and belief where the facts are peculiarly within the possession and

19   control of the defendant or where the belief is based on factual information that makes

20   the inference of culpability plausible").

21         To the extent that the Court concludes that Mr. Shapiro has not pleaded actual

22   reliance and cannot rely on an inference of reliance, Mr. Shapiro respectfully requests

23   that leave to amend should be granted to plead actual reliance. *See In re Sony Gaming*

24   *Networks*, 903 F. Supp. 3d at 970 (granting plaintiffs leave to amend complaint to

25   plead actual reliance).

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1
### b. Mr. Shapiro's iPhone Purchase Was a Covered Transaction That Resulted in Harm

2   AT&T mischaracterizes Mr. Shapiro's interactions at the AT&T retail store in

3   2018.[11] AT&T's argument that "[t]he FAC does not allege that the SIM swap had any

4   connection to the particular device Mr. Shapiro was using or that the phone itself had

5   inadequate security" is wrong. Mr. Shapiro's service had been suspended following

6   the first SIM swap.  *Id.* at ¶ 33. Mr. Shapiro relied on AT&T's assurance that

7   "purchasing the new wireless phone with a new SIM card would secure his account

8   and prevent additional SIM swap attacks."  *Id.* at ¶ 36. As a result, Mr. Shapiro

9   purchased the new iPhone for several hundred dollars which restored his service

10  when activated. *Id.* The new iPhone did not perform as promised and purchasing it

11  immediately put Mr. Shapiro at risk as he was SIM swapped again mere minutes later

12  while still in the AT&T store. *Id.* at ¶ 37. Thus, Mr. Shapiro's reliance on AT&T's

13  assurance resulting in the purchase of the new phone that reactivated his account was

14  an immediate cause that played a substantial part in enabling the subsequent SIM

15  swap to occur mere minutes later.

16  AT&T's argument that Mr. Shapiro did not suffer harm as a result of his reliance

17  on AT&T's misrepresentations that induced him to purchase the new iPhone ignores

18  at least three economic injuries. *First*, the several hundred-dollar cost of the iPhone

19  itself was an economic injury. FAC ¶ 36. *Second*, the purchase of the new iPhone

20  reactivated Mr. Shapiro's account, which made possible the subsequent SIM swaps

21  and the $1.9 million loss. *Id.* at ¶ 37-41. *Finally*, reactivating his account via the new

22

23  [11] Mr. Shapiro never stated in the original Complaint that AT&T's assurance that purchasing a new phone

24  and SIM card would protect his account came after the transaction. If anything, it wasn't clear in the original
    Complaint when the assurance was made. The Court understandably inferred in its MTD Order that AT&T's

25  assurance came after the purchase of the phone because it was described in a latter sentence, however, that
    temporal relation was not intended. The assurance was the reason Mr. Shapiro agreed to purchase the new

26  phone and the Amended Complaint makes this clear. Mr. Shapiro's life savings and data security were at
    stake, his only focus was securing his account and he relied on AT&T's assurances that purchasing the new

27  phone and SIM card would accomplish that. FAC ¶¶ 34-36.

28

1    iPhone purchase caused Mr. Shapiro to incur additional monthly subscriber fees as

2    he thereafter maintained his AT&T account until at least May 2019. *Id.* at ¶ 19.

3           Additionally, AT&T's failure to inform Mr. Shapiro that SIM swaps could occur

4    regardless of AT&T's policies and regardless of whether he purchased a new phone

5    were material omissions that, if disclosed, would have changed Mr. Shapiro's

6    behavior. FAC ¶ 249. The materiality of AT&T's omission is a question for the jury.

7    *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) (noting that whether an

8    omission is material for purposes of CLRA is a question of fact, not properly decided

9    in a motion to dismiss); see also *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-

10   1142-SVW-PLA, 2013 WL 2631326, at *5 (C.D. Cal. June 12, 2013) (denying

11   defendant's motion to dismiss CLRA claim "because Plaintiffs [had] alleged that the

12   omission was material" and had therefore sufficiently pleaded actual reliance.)

13   **V.      CONCLUSION**

14          For the foregoing reasons, the Court should deny AT&T's Motion to Dismiss.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1

Dated: July 7, 2020                        Respectfully submitted,

2

_____/s/ John Pierce_____

3

John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com

4

Andrew Calderón (SBN No. 316673)
acalderon@piercebainbridge.com

5

**PIERCE BAINBRIDGE P.C.**

6

355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

7

Telephone: (213) 262-9333
Facsimile: (213) 279-2008

8

9

*Attorneys for Plaintiff Seth Shapiro*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT