MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2911
Telephone: 214.698.3100
Facsimile: 214.571.2900

Attorneys for Defendant AT&T MOBILITY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SETH SHAPIRO,<br><br>             Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>             Defendant. | CASE NO. 2:19-CV-8972 (CBM)<br><br>**DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date: July 28, 2020<br>Time: 10:00 a.m.<br>Place: 350 West 1st Street, 8th Floor<br>       Courtroom 8B<br>       Los Angeles, CA 90012<br>Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................ 1

II. Mr. Shapiro Has Not Adequately Pled a Violation of the California Constitutional Right of Privacy. ......................................................................... 2

    A. Mr. Shapiro Errs in Contending that the Ninth Circuit Has Approved Vague Allegations that a Plaintiff Had a Legally Protected Privacy Interest or a Reasonable Expectation of Privacy. .......... 2

    B. Mr. Shapiro's Conclusory Allegation of Intentional Conduct Remains Insufficient To Plausibly Allege an Egregious Breach of Social Norms. ............................................................................................... 5

III. Mr. Shapiro Has Not Adequately Pled a Violation of the CLRA. ..................... 7

    A. Mr. Shapiro Has Not Adequately Pled He Sent a Compliant Notice and Demand Letter. ...................................................................................... 7

    B. Mr. Shapiro Has Not Adequately Pled Reliance. ..................................... 8

        1. Mr. Shapiro Errs in Contending that He Need Not Read or Hear a Representation To Rely on It. ................................................ 8

        2. Mr. Shapiro Has Not Pled a Covered "Sale or Transaction" in Reliance on the Alleged Misrepresentations. .............................. 9

IV. Conclusion ........................................................................................................ 10

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Basmadjian v. Realreal, Inc.*,
    2018 WL 2761857 (N.D. Cal. June 8, 2018) .................................................................. 7

*Chevron Corp. v. Donziger*,
    2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .............................................................. 5

*Duste v. Chevron Prod. Co.*,
    738 F. Supp. 2d 1027, 1045 (N.D. Cal. 2010) ............................................................. 5

*In re Facebook, Inc. v. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .......................................................................................... 2

*In re Grand Jury Proceedings*,
    40 F.3d 959 (9th Cir. 1994) ............................................................................................ 5

*Hensley-Maclean v. Safeway, Inc.*,
    2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ............................................................. 10

*Hodson v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) ....................................................................... 8

*Meyer v. Glenmoor Homes, Inc.*,
    246 Cal. App. 2d 242 (1966) .......................................................................................... 6

*Mintz v. Mark Bartelstein & Associates Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ....................................................................... 4

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (2009) ...................................................................................... 7

*Outboard Marine Corp. v. Super. Ct.*,
    52 Cal. App. 3d 30 (1975) ............................................................................................... 7

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ......................................................................... 8

*Razuki v. Caliber Home Loans Inc.*,
    2018 WL 2761818 (S.D. Cal. June 8, 2018) .............................................................. 6

*Rodas v. Porsche Cars N. Am., Inc.*,
    2014 WL 12596315 (C.D. Cal. Sept. 17, 2014) ....................................................... 7

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Ross v. AT&T Mobility, LLC*,
   No. 19-cv-06669-JST ................................................................................... 2, 3, 10

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................. 6

*Scott-Codiga v. County of Monterey*,
   2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ....................................................... 3

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
   2019 WL 4392528 (C.D. Cal. May 8, 2019) .......................................................... 7

*Standard Oil Co. of Tex. v. United States*,
   307 F.2d 120 (5th Cir. 1962) .................................................................................. 6

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) .................................................................................. 2

*Waller v. Hewlett-Packard Co.*,
   2011 WL 6325972 (S.D. Cal. Dec. 16, 2011) ........................................................ 7

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................. 4, 5

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ................................................................................ 2

**Statutes**

Cal. Civ. Code §1782(a)(2) ............................................................................................ 7

**I.      Introduction**

Mr. Shapiro's Opposition fails to remedy the fatal defects of either of the two claims AT&T Mobility LLC ("AT&T") moves to dismiss—violation of the California constitutional right to privacy and the California Consumer Legal Remedies Act ("CLRA"). Instead, he effectively seeks reconsideration of this Court's prior ruling. This Court should decline to reconsider its prior holdings and dismiss these claims now with prejudice.

This Court held that Mr. Shapiro's privacy claim failed for two independent reasons:

- Mr. Shapiro's allegations regarding his "account information," "personal, legal, and business information," and "confidential financial, business, and legal information" were "too vague for the Court to determine whether Plaintiff has a right to protection of such information under the California Constitution." D.E. 32 ("*Shapiro I*") at 3.
- The Court could not "plausibly infer Defendant's alleged acts constituted an egregious breach of social norms based on the Complaint's conclusory allegation" regarding AT&T's supposed intent. *Shapiro I* at 3-4.

The allegations in the First Amended Complaint ("FAC") utterly fail to correct these defects.

The Court held that the CLRA claim also failed for two independent reasons:

- Mr. Shapiro had not pled that he satisfied the CLRA's notice and demand requirement. *Shapiro I* at 8.
- Mr. Shapiro had not pled that he relied on any statement by AT&T in connection with a sale or transaction. *Shapiro I* at 10.

Once again, the FAC fails to correct these defects.

Mr. Shapiro's Opposition, trying to save his FAC, reasserts the same arguments this Court already rejected. The Court should dismiss Mr. Shapiro's privacy and CLRA claims with prejudice.

Gibson, Dunn & Crutcher LLP

1

**II.     Mr. Shapiro Has Not Adequately Pled a Violation of the California Constitutional Right of Privacy.**

**A.     Mr. Shapiro Errs in Contending that the Ninth Circuit Has Approved Vague Allegations that a Plaintiff Had a Legally Protected Privacy Interest or a Reasonable Expectation of Privacy.**

This Court, in its previous opinion, held that Mr. Shapiro's allegations regarding his "account information" and "confidential financial, business, and legal information" were "too vague for the Court to determine whether [Mr. Shapiro] has a right to protection" under the California Constitution. *Shapiro I* at 3. Mr. Shapiro's Opposition does not even mention this Court's prior holding, and it certainly does not point to any new allegation that should change the outcome. Instead, Mr. Shapiro incorrectly asserts that the Ninth Circuit's decision in *In re Facebook, Inc. v. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) overruled, *sub silentio*, established law in this Circuit.

In *Facebook*, the court considered a very specific alleged intrusion: an allegation that Facebook "compiled highly personalized profiles from sensitive browsing histories and habits," and that it "acquir[ed] 'an enormous amount of individualized data' to compile a 'vast repository of personal data.'" 956 F.3d at 603-04. The court applied the analysis of two prior cases addressing the privacy of browsing history. *Id*. at 604-05 (citing *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) and *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014)). The court concluded that the allegation that Facebook had compiled individuals' "full-string, detailed URLs" was sufficient to survive a motion to dismiss. *Id*. at 605. It contrasted *Zynga*, which had found insufficient the plaintiffs' allegations that Facebook and Zynga violated federal law by "allegedly disclos[ing] . . . the user's Facebook IDs and the address of the Facebook webpage the user was viewing" when it clicked on a link to launch a Zynga game. *Zynga*, 750 F.3d at 1102–03. The *Facebook* court held that the case before it was distinguishable from *Zynga*'s "analysis of a reasonable expectation of privacy" because *Zynga* addressed disclosure of URLs that "revealed only that a Facebook user had clicked on a link to a gaming website," while the URLs in *Facebook* could reflect "a full-string detailed URL," including a user's "Google search." *Facebook*, 956 F.3d at 605. The *Facebook*

Gibson, Dunn & Crutcher LLP

decision was thus specific to the technical details of the browsing history at issue. It did not address, much less overrule, cases addressing generic allegations about "account information," "CPNI," or "private text messages" similar to the generic allegations Mr. Shapiro makes. FAC ¶¶ 203-05.

Mr. Shapiro urges this Court to follow a Northern District of California decision that misconstrued *Facebook*. *See* Dkt. 39-1 (*Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-JST (N.D. Cal.) (Dkt. 36)) ("*Ross*"). In *Ross*, the court noted that the *Facebook* court had rejected the argument that the plaintiff should have to plead "specific, sensitive information that Facebook collected," rather than focusing on the "more general allegation that Facebook acquired an enormous amount of individualized data." *Ross* at 12. But, as explained above, the *Facebook* court's conclusion that the allegations before it were adequate in the context of a challenge to Facebook's alleged compilation of specific browsing history does not address the case law that requires specific allegations where email messages or financial records are involved. The *Ross* court's broad reading of *Facebook* is inconsistent with the Ninth Circuit's reaffirmation of *Zynga*. This Court should not read *Facebook* to overrule well-established law absent an indication from the Ninth Circuit that it intended to do so. This is particularly true given that Mr. Shapiro makes no allegations that AT&T "compile[d]" his data at all, even though such compilation was the key allegation in *Facebook*. Moreover, *Facebook* addressed allegations that the defendant intentionally compiled the information at issue—including allegations that "company executives were aware" of that compilation. 956 F.3d at 596. This starkly contrasts with Mr. Shapiro's allegations of criminal acts by third parties and rogue actors alleged to be employed by AT&T. FAC ¶¶ 46-50.

In addition, both the *Ross* court and Mr. Shapiro mistakenly conclude that conclusory assertions that CPNI is "sensitive information" establish a reasonable expectation of privacy in such data. Opp. at 7; *Ross* at 11. In particular, both note that the Federal Communications Act ("FCA")—under which Mr. Shapiro separately has a claim—protects such information. *Id*. But AT&T's motion is not directed at Mr.

Shapiro's FCA claim. Moreover, the FCA and the California constitutional right of privacy are not coterminous. The question on this motion is whether a general allegation that AT&T, through a supposed "employee," "access[ed]" Mr. Shapiro's CPNI suffices to allege the "specific private facts that were disclosed to the public." FAC ¶ 97; *Scott-Codiga v. County of Monterey*, 2011 WL 4434812, at *7 (N.D. Cal. Sept. 23, 2011).[1] Mr. Shapiro fails to cite a single case that concludes that any data akin to CPNI—which provides information on, for example, the target and duration of telephone calls—meets this standard. And he certainly fails to plead any "specific private facts" that a hacker could glean from his CPNI. *Cf. In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (requiring plaintiff to allege "*with specificity* the material in the content of" a message for it to be protected (emphasis in original)).

Mr. Shapiro's mischaracterization of the *Yahoo* decision highlights the flaw in his argument. Mr. Shapiro argues that *Yahoo* recognizes a "legally protected privacy interest in the personal financial and employment information contained in an email account." Opp. at 8 (quoting *Yahoo*, 7 F. Supp. 3d at 1041). In fact, the *Yahoo* court stated that there "can be" a protected interest in such content, but *dismissed* the claim before it because plaintiffs' allegations that they had a privacy interest in the specific content of their emails were "fatally conclusory." *Id*. Mr. Shapiro's pleading has the same flaw and warrants the same treatment. Mr. Shapiro's reliance on *Mintz v. Mark Bartelstein & Associates Inc.*, 906 F. Supp. 2d 1017 (C.D. Cal. 2012), is similarly flawed. Opp. at 8. Mr. Shapiro notes that the court's decision in that case "recognized that unauthorized access to an email account itself breached legitimate privacy rights," but he omits that the plaintiff there alleged *specific* content was contained in wrongly accessed emails; namely, the terms of the plaintiff's employment, including his compensation. *Mintz*, 906 F. Supp. 2d at 1033.

---

[1] Mr. Shapiro's assertion that unauthorized access to email would violate California Penal Code § 502 (Opp. at 8), even if true, similarly says nothing about the viability of his privacy claim.

Finally, Mr. Shapiro attempts to shift focus from his vague allegations to general allegations that a person's email "could reveal" private information. Opp. at 9. But Mr. Shapiro's obligation is to plead what specific information he contends AT&T's conduct *did* reveal; not to speculate generally about the confidentiality of email. *See* Br. at 4 (gathering cases). Mr. Shapiro asserts that he did plead with "sufficient specificity" because he alleged such generic categories as "private email correspondence with his spouse, family members, friends, and business associates." Opp. at 13. But the law requires Mr. Shapiro to plead "specific email content in specific emails" so the Court can evaluate its sufficiency. *Yahoo*, 7 F. Supp. 3d at 1042.[2] Because Mr. Shapiro fails to do so—and fails even to argue that the FAC differs in any material way from the Complaint this Court *already held* was too vague—this Court should dismiss his claim that AT&T violated his constitutional right of privacy.

### B. Mr. Shapiro's Conclusory Allegation of Intentional Conduct Remains Insufficient To Plausibly Allege an Egregious Breach of Social Norms.

This Court previously rejected Mr. Shapiro's privacy claim because the Court could not "plausibly infer Defendant's alleged acts constituted an egregious breach of social norms based on the Complaint's conclusory allegation" of intent. *Shapiro I* at 4. Here again, Mr. Shapiro declines to address the Court's holding. Instead, Mr. Shapiro reasserts his conclusory allegation that AT&T "through its employees, intentionally

---

[2] Mr. Shapiro appears to misunderstand AT&T's point regarding *In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994). Mr. Shapiro alleges that hackers accessed his "financial accounts," which revealed information regarding his "personal financial transactions, account balances, and business activities." FAC ¶ 205. *In re Grand Jury* holds that, "[i]n general, an American depositor has no reasonable expectation of privacy in copies of his or her bank records." *Id*. Mr. Shapiro observes that *In re Grand Jury* pertains to the "right of governmental entities" to access such records, but individuals have *more* protection from government searches and seizures under the Fourth Amendment than they have under the California constitutional right of privacy. Opp. at 9-10; *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013). Since the Fourth Amendment does not generally protect bank records, it follows that vague descriptions of records of "financial transactions, account balances, and business activities" (FAC ¶ 205) would be insufficient to plead an expectation of privacy under the California Constitution, which offers less protection. In any event, Mr. Shapiro's theory that *In re Grand Jury* is distinguishable because online bank records are more private than paper bank records (Opp. at 9-10) is simply unsupported.

invaded his privacy." Opp. at 11 (emphasis removed). Mr. Shapiro's failure to plausibly allege any facts to bolster this conclusory assertion warrants dismissal.

This conclusory assertion further fails because the FAC is devoid of any plausible allegation that the alleged AT&T "employees" that Mr. Shapiro claims assisted the hackers acted within the scope of their employment or for the interest of AT&T in such misconduct. *See, e.g., Duste v. Chevron Prod. Co.*, 738 F. Supp. 2d 1027, 1045 (N.D. Cal. 2010) ("If the employee inflicts an injury out of personal malice, the employee is not acting within the scope of employment."). To the contrary, the "employees'" alleged conduct harmed AT&T and breached its policies.  Therefore, these conclusory allegations are not a basis to impute their supposed intent to AT&T. FAC ¶¶ 48, 50. *See, e.g., Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264 (1966) ("The knowledge acquired by an agent who is acting adversely to his principal will not be attributed to the principal."); *Standard Oil Co. of Tex. v. United States*, 307 F.2d 120, 129 (5th Cir. 1962).

When it comes to AT&T itself, Mr. Shapiro alleges that AT&T had failures in "hiring, training, and supervising staff" and failed to adopt "adequate security practices." FAC ¶¶ 189, 220; *see also id.* ¶¶ 212-41. Because these allegations assert negligence, his attempt to distinguish the cases on which AT&T relies as negligence cases is unavailing. Opp. at 11-12. Further, he erroneously distinguishes *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008), which held that negligently creating an "increased risk" that private information would be stolen did not amount to an egregious breach of social norms. *Id.* at 1128. Such an "increased risk" is all that Mr. Shapiro alleges here *as to AT&T*, as opposed to the criminal actors who stole his assets. Mr. Shapiro disagrees, characterizing *Ruiz* as only applying where no actual harm has yet occurred. Opp. at 12. But the key failing in the allegations in *Ruiz*, as here, is that the defendant did not intentionally disclose any information, but allegedly negligently created conditions in which criminals could take such information. 540 F. Supp. 2d at 1128. Accordingly, *Ruiz* requires dismissal here. *See also Razuki v. Caliber Home Loans Inc.*,

2018 WL 2761818, at *1 (S.D. Cal. June 8, 2018) (similar). Mr. Shapiro has failed to plausibly plead that AT&T engaged in any conduct so serious in nature, scope, and impact as to constitute an egregious breach of social norms.

**III. Mr. Shapiro Has Not Adequately Pled a Violation of the CLRA.**

    **A. Mr. Shapiro Has Not Adequately Pled He Sent a Compliant Notice and Demand Letter.**

Mr. Shapiro attempts to recharacterize his pre-litigation letter as a CLRA-compliant notice and demand, asserting alternatively that he made a proper demand or that this Court should excuse his failure to do so. Neither plea is persuasive.

First, Mr. Shapiro offers no reasoning or authority for construing the words "[a]bsent appropriate relief" in his letter as a "[d]emand that [AT&T] correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." Cal. Civ. Code §1782(a)(2). Such language does not demand *anything* of AT&T, much less give it "sufficient opportunity to correct or replace a deficient product." *Sotelo v. Rawlings Sporting Goods Co., Inc.*, 2019 WL 4392528, at *6 (C.D. Cal. May 8, 2019). It also does not "demand *how* defendant should correct its alleged violations of the CLRA." *Basmadjian v. Realreal, Inc.*, 2018 WL 2761857, at *4 (N.D. Cal. June 8, 2018) (emphasis added); *see also* Br. at 12. Accordingly, Mr. Shapiro's plea to defer this question to a jury is meritless. Where the unambiguous terms of the letter—which Mr. Shapiro does not dispute this Court can properly consider on a motion to dismiss—do not contain any demand, speculation about what a jury might find does not save the defective claim from dismissal.

Mr. Shapiro purports to distinguish case law AT&T cites by noting that in some cases, plaintiffs failed to give adequate notice instead of, or in addition to, failing to make an appropriate demand. Opp. at 15-16. But the CLRA requires both notice and an adequate demand. Mr. Shapiro's suggestion that his satisfaction of *one* of the requirements of Section 1782(a) excuses him from satisfying the other is unsupported.

Finally, Mr. Shapiro urges this Court, in the alternative, to dismiss without

prejudice and allow him to send a belated letter to salvage this claim. He wrongly argues that the California Court of Appeal's decision in *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009), requires this result. Opp. at 14-15. This Court plainly has discretion regarding whether a dismissal should be with or without prejudice. *See, e.g.*, *Rodas v. Porsche Cars N. Am., Inc.*, 2014 WL 12596315, at *4 (C.D. Cal. Sept. 17, 2014); *Waller v. Hewlett-Packard Co.*, 2011 WL 6325972, at *6 (S.D. Cal. Dec. 16, 2011). Mr. Shapiro claims to have suffered the alleged harm over two years ago, and brought this suit nearly nine months ago. To permit him to send a new letter now would run afoul of the purpose of the notice provision: to "facilitate precomplaint settlements of consumer actions wherever possible." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975). The Court should dismiss Mr. Shapiro's CLRA claim with prejudice.

### B.   Mr. Shapiro Has Not Adequately Pled Reliance.

#### 1.   Mr. Shapiro Errs in Contending that He Need Not Read or Hear a Representation To Rely on It.

Mr. Shapiro does not dispute that he did not plead that he read the Privacy Policy that he allegedly relied on. Instead, he insists that he "did not need to plead that he read AT&T's 2006 Privacy Policy" to allege that he acted in reliance on it. This is nonsense.

A person cannot rely on a statement he or she neither heard nor saw. Mr. Shapiro offers no explanation, much less authority, for taking such position. Mr. Shapiro argues that *Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016 (N.D. Cal. 2016), holds that "reliance can be inferred when a defendant makes misrepresentations about a material fact." Opp. at 16. That is not correct. In fact, *Hodson* holds only that a court can infer that the plaintiff read the label on a product where the plaintiff pled that he "saw the product packaging and labeling as well as the signage in retail stores where he purchased" the product. 162 F. Supp. 3d at 1023. Even if a privacy policy were akin to a short label, such that seeing it necessarily suggested reading it, Mr. Shapiro has not even pled that he *saw* the Privacy Policy. Instead, his Opposition asserts that he needs only to show

that he "relied on its existence." Opp. at 16. But Mr. Shapiro's CLRA theory is that AT&T misrepresented to him that his "confidential data would be safeguarded and protected." FAC ¶ 246. The fact that a Privacy Policy *existed* does not represent anything about what protections, if any, AT&T described in the policy.

Mr. Shapiro argues that AT&T has no binding case that involves *both* the CLRA *and* a claim of reliance on a statement in a policy in which a court held that a plaintiff must read a representation before it can rely on it. Opp. at 17. But this is a matter of common sense applicable to *all* reliance requirements, not a complicated proposition only applicable in narrow factual contexts for certain statutes. In *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014), for example, the court cites a string of cases addressing the UCL, the CLRA, and California's False Advertising Law, many of which treat one or more of these claims in tandem. The court holds that, "[t]o make the reliance showing, this Court has consistently held that plaintiffs in misrepresentation cases must allege that they actually read the challenged representations." *Id*. (gathering cases); *see also* Br. 13-15 (gathering cases). Mr. Shapiro has now demonstrated two times that he cannot plausibly plead reliance. His inability to assert an actionable misrepresentation that he relied upon prior to entering into a wireless agreement with AT&T defeats his CLRA claim. It is time to dismiss his claim with prejudice.

### 2. Mr. Shapiro Has Not Pled a Covered "Sale or Transaction" in Reliance on the Alleged Misrepresentations.

Mr. Shapiro also has not pled that he made a "sale or transaction" covered by the CLRA. Here again, Mr. Shapiro disregards the Court's prior holding that his "decision not to cancel his account in 2018 is not a sale or transaction for purposes of the CLRA." *Shapiro I* at 10. He does not allege that AT&T misrepresented or omitted material information at or before the moment he entered into a wireless service agreement with AT&T and became a customer. Instead, he attempts for the first time in his Opposition to recharacterize his decision not to cancel his account as a sale by claiming that his purchase of a new iPhone somehow "reactivated" his account which then supposedly

"made possible the subsequent SIM swaps and the $1.9 million loss" and "caused [him] to incur additional monthly subscriber fees." Opp. at 18-19. These assertions reaffirm that Mr. Shapiro's claim is *still* that the decision not to cancel the account—not the purchase of a phone—was the key decision for purposes of his claim. Indeed, the FAC specifically bases the CLRA claim on the allegation that "AT&T's wireless service did not protect and/or safeguard Mr. Shapiro's data from unauthorized access," not on any allegation about a flawed or defective *phone*. FAC ¶ 247. Because Mr. Shapiro alleges that he was harmed by inadequate security on AT&T's wireless service, not by any defect in the phone, he has not pled a covered sale or transaction.[3]

Notably, while Mr. Shapiro submits the *Ross* decision with respect to his privacy claim, he ignores *Ross*'s dismissal of the CLRA claim on similar grounds to those AT&T raises here. In *Ross*, the court held that "'it is the defendant's *pre-sale* representations and omissions that matter under the CLRA.'" *Ross* at 26 (quoting *Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *7 (N.D. Cal. Apr. 7, 2014) (emphasis added by *Ross*)). In *Ross*, as here, the plaintiff could allege only that he continued his AT&T service despite the alleged misrepresentation. *Ross* at 26. The *Ross* court rejected that theory and dismissed the CLRA claim. The same result is appropriate here.

## IV.  Conclusion

For all of the reasons outlined above and in its moving papers, AT&T respectfully requests that the Court dismiss Mr. Shapiro's privacy and CLRA claims with prejudice.

Dated: July 14, 2020                By:   /s/ *Ashley E. Johnson*
                                          Marcellus McRae
                                          Ashley E. Johnson

                                          Attorneys for Defendant
                                          AT&T MOBILITY LLC

---

[3] Mr. Shapiro argues, in the alternative, that he at least suffered the harm of a phone that he would not have purchased absent the supposed misrepresentations about AT&T's security. Opp. at 18. He does not allege that he would have not purchased a phone in the FAC. *See* FAC ¶ 36. In any event, this argument is unavailing for the reasons noted above. But even assuming otherwise, this argument would require dismissal of his CLRA claim to the extent it seeks recovery of anything more than the cost of the iPhone.