MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile: 213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2911
Telephone:   214.698.3100
Facsimile: 214.571.2900

Attorneys for AT&T MOBILITY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SETH SHAPIRO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AT&T MOBILITY, LLC,<br><br>　　　　　　Defendant. | CASE NO. 2:19-CV-8972 (CBM)<br><br>**DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 6 OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*[Proposed] Order lodged concurrently herewith*]<br><br>Action Filed: October 17, 2019<br><br>**Hearing:**<br>Date:　　July 20, 2021<br>Time:　　10:00 a.m.<br>Place:　　350 West 1st Street, 8th Floor<br>　　　　　Courtroom 8B<br>　　　　　Los Angeles, CA 90012<br>Judge:　Hon. Consuelo B. Marshall |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on July 20, 2021, before the Honorable Consuelo B. Marshall, United States District Court Judge, in Courtroom 8B, at 350 West 1st Street, 8th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Count 6 of Plaintiff Seth Shapiro's Third Amended Complaint ("TAC") for Concealment, because Mr. Shapiro has not alleged a duty to speak and because he has not plausibly alleged that he would have acted differently if AT&T had disclosed the limits of its security.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on May 25, 2021.

Dated: June 2, 2021

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ashley E. Johnson*
Marcellus A. McRae
Ashley E. Johnson

Attorney for Defendant
AT&T MOBILITY LLC

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I. Introduction ..................................................................................................... 1

II. Facts ................................................................................................................. 2

III. Standard of Review .......................................................................................... 3

IV. Argument ......................................................................................................... 4

    A. Claim 6 (Deceit by Concealment) Should Be Dismissed. ............................ 4

        1. Claim 6 Should Be Dismissed for Failure to Allege a Duty to Speak ........................................................................................... 4

        2. Mr. Shapiro Has Not Pled That He Was Unaware of the Allegedly Concealed Facts or Would Have Acted Differently Had He Been Aware of those Alleged Facts ..................................... 7

V. Conclusion ........................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 3

*Blissard v. FCA US LLC*,
  2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ..................................................... 6

*Clayton v. Landsing Pac. Fund, Inc.*,
  2002 WL 1058247 (N.D. Cal. May 9, 2002) ..................................................... 8

*Czuchaj v. Conair Corp.*,
  2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ................................................ 5, 6

*Herron v. Best Buy Co.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) .......................................................... 5, 6

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) .............................................................................. 4

*Hoffman v. 162 N. Wolfe LLC*,
  228 Cal. App. 4th 1178 (2014), *as modified on denial of reh'g* (Aug. 13, 2014) ........................ 4

*Johnson v. Harley-Davidson Motor Co.*,
  2011 WL 3163303 (E.D. Cal. July 22, 2011) ..................................................... 6

*Johnson v. Lucent Techs. Inc.*,
  653 F.3d 1000 (9th Cir. 2011) ............................................................................ 7

*Patera v. Citibank, N.A.*,
  79 F. Supp. 3d 1074 (N.D. Cal. 2015) ................................................................ 7

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 5

*Terpin v. AT&T Mobility, LLC*,
  2020 WL 5369410 (C.D. Cal. Sept. 8, 2020) ........................................... 1, 5, 6, 7

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Tsai v. Wang*,
 2017 WL 2587929 (N.D. Cal. June 14, 2017)..................................................................4

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
 117 F. Supp. 3d 1092 (C.D. Cal. 2015).............................................................................3

*Vess v. CIBA-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ..........................................................................................7

**Statutes**

Cal. Civ. Code § 1710(3) ........................................................................................................4

Gibson, Dunn & Crutcher LLP

## I. Introduction

Mr. Shapiro's Third Amended Complaint ("TAC") adds a claim for deceit by concealment but fails to adequately plead the core elements of that claim. Specifically, Mr. Shapiro neither plausibly alleges that AT&T had a duty to disclose the allegedly concealed facts, nor that Mr. Shapiro was unaware of those facts. Ordinarily, the *failure* to speak does not give rise to tort liability; a plaintiff must plausibly plead facts that impose an affirmative duty to speak on the defendant. Mr. Shapiro does not do this, as none of the circumstances in which the law imposes a duty to speak is present here. Instead, Mr. Shapiro only makes the conclusory assertion that AT&T "had a duty to disclose," TAC ¶ 261, without pleading any facts to plausibly support this claim. A defendant cannot be liable for concealment in the absence of such a duty. *See Terpin v. AT&T Mobility, LLC*, 2020 WL 5369410, at *4 (C.D. Cal. Sept. 8, 2020).

Mr. Shapiro also does not plead that he was unaware of the allegedly undisclosed facts regarding the risk of security breaches. Indeed, Mr. Shapiro ignores the undisputed fact that AT&T *disclosed* to him that it could not guarantee that third parties would not take unauthorized actions that would disclose his personal information. And Mr. Shapiro acknowledges that he was well aware of the risks presented by SIM swaps, affirmatively alleging that as soon as Mr. Shapiro's "AT&T cell phone had lost service," he "immediately suspected that a SIM swap attack was underway and called AT&T to secure his account," as he "feared" that his digital currency "could be at risk." TAC ¶ 37. Mr. Shapiro's deceit claim seeks to punish AT&T *not* for concealing material facts that he did not know, but simply for failing to provide further details on a risk of which Mr. Shapiro was well aware. The tort of concealment does not create a cause of action for such allegations.

Because Mr. Shapiro's Third Amended Complaint does not plead the minimum elements of a concealment claim, Claim 6 should be dismissed.

## II. Facts[1]

According to the allegations in the Third Amended Complaint ("TAC"), Mr. Shapiro entered into a wireless contract with AT&T in 2006. TAC ¶ 10. On May 16, 2018, Mr. Shapiro noticed that his cell phone was no longer connected to the AT&T network. TAC ¶ 36. Mr. Shapiro alleges that, upon losing connection to AT&T's wireless network, he "immediately suspected a SIM swap was underway" and "feared" his "large amounts of digital currency . . . could be at risk." TAC ¶ 37. Accordingly, Mr. Shapiro alleges that he called AT&T customer service and later visited an AT&T retail location and purchased a new phone. TAC ¶¶ 38, 40. AT&T representatives at the retail store purportedly told Mr. Shapiro that "they had noted the SIM swap activity in his account," but that his "SIM card would not be swapped again without his authorization." TAC ¶ 40.

Mr. Shapiro alleges that the wireless number associated with his SIM card had been assigned to another SIM card in a phone controlled by third-party criminal hackers. TAC ¶¶ 40, 52–53. Mr. Shapiro alleges that the hackers used the SIM swap to take control of his phone number and, without further explanation, that the hackers were somehow then able to access eleven cryptocurrency accounts and transfer funds from an unspecified number of these accounts. TAC ¶¶ 44–45, 47–49. He alleges that two more swaps occurred over the following year, but does not allege that he lost funds from those swaps. TAC ¶¶ 65, 68.

Mr. Shapiro filed his original complaint on October 17, 2019. Dkt. 1. The court dismissed Mr. Shapiro's claims for violation of his privacy rights under the California Constitution and the Consumer Legal Remedies Act ("CLRA") on May 18, 2020. Dkt. 32. Thereafter, Mr. Shapiro filed his First Amended Complaint ("FAC") on May 29, 2020 (Dkt. 33) and the court again dismissed his CLRA claim, this time without leave to amend. Dkt. 45. Mr. Shapiro then filed a Second and Third Amended Complaint ("SAC" and "TAC" respectively), adding a claim for deceit by concealment, additional allegations regarding punitive damages, and defendants Sequential Technology International, LLC and

---

[1] For this motion only, AT&T assumes the truth of the well-pled allegations in Mr. Shapiro's complaint.

1   Prime Communications, L.P. Dkt. 50, 55. Mr. Shapiro's claim for concealment alleges that
2   AT&T did not properly disclose "that its system was subject to SIM swap fraud, that its
3   employees cooperated with hackers in such fraud, that such fraud was prevalent in the
4   cryptocurrency community, and that its security measures were ineffective in preventing the
5   fraud." TAC ¶ 260. Mr. Shapiro also attaches to the TAC AT&T's Privacy Policy. TAC, Ex.
6   G ("Privacy Policy"). However, the Policy specifically discloses that AT&T "cannot
7   guarantee that your Personal Information will never be disclosed in a manner inconsistent
8   with [AT&T's] Policy (for example, as the result of unauthorized acts by third parties that
9   violate the law or this Policy)." *Id.* at 26.

10        AT&T now files this motion to dismiss Mr. Shapiro's claim for deceit by
11  concealment.[2]

## III. Standard of Review

13  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
14  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
15  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim
16  is plausible "when the plaintiff pleads factual content that allows the court to draw the
17  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.
18  at 678. A "pleading that offers labels and conclusions or a formulaic recitation of the
19  elements of a cause of action will not do." *Id.* (internal quotation marks and citations
20  omitted). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability,
21  it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*
22  (quoting *Twombly*, 550 U.S. at 557).

23        Moreover, claims for deceit sound in fraud and thus "must meet the heightened
24  pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.
25  Supp. 3d 1092, 1106 (C.D. Cal. 2015) (internal citation omitted).

---

[2] Pursuant to the Parties' stipulation and , this partial motion to dismiss postpones the deadline to answer Shapiro's TAC (including claims not challenged by this motion) until 14 days after the Court's ruling on AT&T's Motion to Dismiss the TAC. Dkt. 63; Fed. R. Civ. P. 12(a)(4).

## IV. Argument

### A. Claim 6 (Deceit by Concealment) Should Be Dismissed.

#### 1. Claim 6 Should Be Dismissed for Failure to Allege a Duty to Speak.

Deceit by concealment is suppression of a fact by one who is "bound to disclose it." Cal. Civ. Code § 1710(3). A defendant is only liable for fraudulent concealment if he or she had a "legal duty" to disclose a "material fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), *as modified on denial of reh'g* (Aug. 13, 2014). Such a duty only exists in four limited circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (internal citation omitted).

Here, Mr. Shapiro alleges AT&T "had a duty to disclose" that its security measures were not impenetrable (TAC ¶ 261), but he does not plead facts to support a legal basis for this duty. Mr. Shapiro does not and cannot allege that he and AT&T were fiduciaries, because a "fiduciary relationship generally does not arise out of ordinary arms-length business dealings." *Tsai v. Wang*, 2017 WL 2587929, at *4 (N.D. Cal. June 14, 2017) (internal citation omitted). Instead, although Mr. Shapiro offers *no basis* for his claimed duty in the concealment claim, elsewhere in the TAC he appears to attempt to lay the groundwork for that claim based on the allegations that "AT&T had exclusive knowledge" of material facts, that AT&T "actively concealed" material facts from Mr. Shapiro, and that such facts were necessary to "materially qualify its partial disclosures" concerning use of customers' CPNI. TAC ¶ 191. He has not pled facts to support these conclusory allegations.

First, Mr. Shapiro's allegations of "exclusive knowledge" are conclusory in the extreme. He alleges that "AT&T had exclusive knowledge of material facts not known or knowable to its customers," apparently about "the weaknesses and failures of its account and data security practices." TAC ¶ 191. But Mr. Shapiro makes no more specific allegations about these supposedly withheld material facts than his general reference to "weaknesses

and failures." His claim is therefore inadequate, particularly given the specificity requirement of Rule 9(b). *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (rejecting allegation that "Apple was in a superior position of knowledge with regard to its own technology" as it "lacked specific substantiating facts" required by Rule 9(b) to plead "exclusive knowledge"). Instead, and far from exclusive knowledge, the TAC alleges that public articles about SIM swaps abounded, describing SIM swap crimes and concluding that such crimes involve mobile store employees (including from AT&T), target cryptocurrency investors, and befall AT&T customers. TAC ¶¶ 147–48.

Moreover, AT&T's privacy policy—which is attached to the TAC—specifically discloses that AT&T "cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with [AT&T's] Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." TAC, Ex. G ("Privacy Policy") 26; *see Terpin*, 2020 WL 5369410, at *3 ("Because AT&T disclosed [in its Privacy Policy] that its security system was subject to inadequacies, the fact was not within AT&T's exclusive knowledge."). And Mr. Shapiro acknowledges that he himself "immediately suspected" a SIM swap when his phone went dead, and "feared" his "large amounts of digital currency . . . could be at risk." TAC ¶ 37. Accordingly, Mr. Shapiro's conclusory allegation that AT&T had *exclusive* knowledge of some unidentified yet key security risk that would have changed his decision making is not only not plausible, but is undermined by his own allegations. To the extent his claim is that AT&T should have further disclosed the specific *mechanism* by which AT&T's security could be circumvented, he provides no allegations plausibly suggesting that the precise details of *how* a risk could manifest would be material, much less that any customer would act differently in reliance on such details.

Second, Mr. Shapiro also does not allege any facts plausibly supporting his conclusory allegation that AT&T *actively concealed* information from him. Active concealment requires the party to take "affirmative acts . . . in hiding, concealing, or covering up the matters complained of." *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *6 (S.D. Cal. Apr. 18, 2014) (internal quotation marks omitted); *see also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161,

Gibson, Dunn & Crutcher LLP

5

1176 (E.D. Cal. 2013) ("Mere nondisclosure does not constitute active concealment."). If it were permissible to "infer affirmative acts from mere knowledge and inaction, then active concealment would be reduced to a weakened form of exclusive knowledge." *Czuchaj*, 2014 WL 1664235, at *6; *cf. Johnson v. Harley-Davidson Motor Co.*, 2011 WL 3163303, at *5 (E.D. Cal. July 22, 2011). Yet Mr. Shapiro does not allege that AT&T took *any* "affirmative acts" to conceal some fact regarding the supposed "weaknesses and failures of its account and data security practices," much less allege facts about what those "affirmative acts" are. As a result, Mr. Shapiro has not alleged a duty to disclose based on active concealment. *See Terpin*, 2020 WL 5369410, at *3 (dismissing similar claim based on an active concealment theory because an "omission itself does not amount to AT&T's affirmatively covering up the information," and because AT&T did not promise "absolute protection when it knew otherwise"); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *14 (C.D. Cal. Nov. 9, 2018) (dismissing claim based on an active concealment theory in the absence of "a well-supported allegation of intentional acts to conceal" knowledge from the plaintiff).

Finally, Mr. Shapiro does not plausibly allege that AT&T made a partial disclosure of a material fact. This exception applies when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (internal citations omitted). Although Mr. Shapiro does not explicitly identify a "partial representation" that he asserts provides the basis for his deceit by concealment claim, he alleges that additional "disclosures were necessary to materially qualify AT&T's representations that it did not sell and took measures to protect consumer data, and to materially qualify its representations its partial disclosures concerning its use of customers' CPNI." *See* TAC ¶ 191. But as noted above, AT&T has *already* unambiguously disclosed the fact that its ability to protect consumer data is not unlimited in the Privacy Policy attached to the TAC as Exhibit G:

> "Although we strive to keep your personal information secure, **no security measures are perfect**, and we **cannot guarantee** that your Personal

Information will never be disclosed in a manner inconsistent with this Policy (for example, **as the result of unauthorized acts by third parties** that violate the law or this Policy)."

TAC, Ex. G at 26 (emphasis added). In *Terpin*, the court held that the exact language quoted above was sufficient to defeat a claim of concealment based on partial representation. 2020 WL 5369410, at *4 ("Although AT&T did not specifically spell out that a security breach may occur if an employee violates their obligations and overrides the code at the behest of a criminal, it did disclose that a breach may be the 'result of unauthorized acts by third parties.'"). Mr. Shapiro's argument is nothing more than an allegation that AT&T had a legal duty to disclose *more details* about the ways in which a breach of security might happen, which simply is not the circumstance of a partial representation.

### 2. Mr. Shapiro Has Not Pled That He Was Unaware of the Allegedly Concealed Facts or Would Have Acted Differently Had He Been Aware of those Alleged Facts.

A claim for deceit also requires a plaintiff to plausibly plead that he was unaware of a concealed material fact and would have acted differently had he known about it. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011–12 (9th Cir. 2011). Because this claim sounds in fraud, it must be plead with particularity. *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003); *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015).

Mr. Shapiro neither adequately pleads that he was unaware of the allegedly concealed facts nor pleads facts plausibly suggesting that he would have acted differently if he had known of them. Instead, he **admits** that he was aware of the risks of SIM swaps, as he alleges that upon noticing that his cell service had been disconnected, he "**immediately suspected that a SIM swap attack was underway** and called AT&T to secure his account." TAC ¶ 37 (emphasis added). Mr. Shapiro also describes himself as a "technology expert," and alleges that during his previous employment at DIRECTV, prior to opening his AT&T account, he "was directly involved in analyzing privacy policies and consumer data protections for DIRECTV and other technology and media corporations . . . including Microsoft, TiVo, and others." TAC ¶¶ 9, 166. It is implausible that such an individual would

not be aware of public articles regarding risks to cryptocurrency investors—and indeed Mr. Shapiro's "immediate[]" suspicions that he had been SIM swapped confirm that he was aware of these risks. *See* TAC ¶ 147–48. Mr. Shapiro's conclusory allegations that he was "misled" do not plausibly plead that he was unaware of the limits of AT&T's security, despite his experience and knowledge and the public coverage of those limits.

Moreover, as noted above, AT&T's privacy policy attached to the TAC specifically discloses that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." TAC, Ex. G at 26. Yet this is exactly what Mr. Shapiro alleges happened to him—unauthorized hackers violated the law by bribing a third party who also broke the law, giving the hackers control over Mr. Shapiro's telephone number. *See* TAC ¶ 24.

Because Mr. Shapiro has not plausibly pled that he was unaware of any allegedly undisclosed facts, it naturally follows that he has not plausibly pled that he would have acted differently if AT&T had disclosed some additional, unspecified facts about the security risks of SIM swaps. *See Clayton v. Landsing Pac. Fund, Inc.*, 2002 WL 1058247, at *6 (N.D. Cal. May 9, 2002), *aff'd*, 56 F. App'x 379 (9th Cir. 2003) (no claim for fraudulent concealment where defendants "*actually disclosed the information . . . plaintiff [alleged] was kept secret from her*") (emphasis in original). That is, Mr. Shapiro was aware of the risk of SIM swaps, and aware that, if a SIM swap occurred, he apparently had inadequate security on his cryptocurrency. TAC ¶ 37. He does not allege any particular fact that would have changed his view of this risk or changed his decision regarding his relationship with AT&T. Indeed, he alleges that he was SIM swapped *four times*. TAC ¶ 24. That he continued to be an AT&T customer after his personal exposure to the reality that AT&T had disclosed makes implausible his conclusory allegation that he relied on AT&T's supposed failure to disclose.

## V. Conclusion

For the reasons set forth above, the Court should dismiss Claim 6 (Concealment) due Mr. Shapiro's failure to particularly plead AT&T's duty to disclose and Plaintiff's lack of awareness of allegedly concealed facts.

Dated: June 2, 2021

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ashley E. Johnson*
Marcellus McRae
Ashley E. Johnson

Attorney for Defendant
AT&T MOBILITY, LLC