| | |
|---|---|
| 1 | MARCELLUS MCRAE, SBN 140308 |
| | mmcrae@gibsondunn.com |
| 2 | GIBSON, DUNN & CRUTCHER LLP |
| | 333 South Grand Avenue |
| 3 | Los Angeles, CA 90071-3197 |
| | Telephone: 213.229.7000 |
| 4 | Facsimile: 213.229.7520 |
| 5 | ASHLEY E. JOHNSON, admitted *pro hac vice* |
| | ajohnson@gibsondunn.com |
| 6 | GIBSON, DUNN & CRUTCHER LLP |
| | 2001 Ross Avenue |
| 7 | Suite 2100 |
| | Dallas, TX 75201-2911 |
| 8 | Telephone: 214.698.3100 |
| | Facsimile: 214.571.2900 |
| 9 | |
| 10 | Attorneys for AT&T MOBILITY LLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SETH SHAPIRO, | CASE NO. 2:19-CV-8972 (CBM) |
| Plaintiff, | **DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 6 OF PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| v. | |
| AT&T MOBILITY LLC, | |
| Defendant. | Action Filed: October 17, 2019 |
| | **Hearing:** |
| | Date: July 20, 2021 |
| | Time: 10:00 a.m. |
| | Place: 350 West 1st Street, 8th Floor Courtroom 8B Los Angeles, CA 90012 |
| | Judge: Hon. Consuelo B. Marshall |

**TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................... 1

II. Argument ....................................................................................................... 2

    A. Claim 6 Should Be Dismissed for Failure to Allege a Duty to Speak ........... 2

        1. AT&T Did Not Have Exclusive Knowledge Of Any Purportedly Material Fact ................................................................... 2

        2. AT&T Did Not Make Any Misleading Partial Representations About its Security ............................................................................... 6

    B. Claim 6 (Deceit by Concealment) Should Be Dismissed for Failure to Allege Any Plausible Material Fact That Has Been Purportedly Concealed ................................................................................................... 7

III. Conclusion ..................................................................................................... 8

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................... 4

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) .......................................................................... 4

*In re Apple Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ......................................................................... 3

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) ....................................................................................... 2

*Ferranti v. Hewlett-Packard Co.*,
   2014 WL 4647962 (N.D. Cal. Sept. 16, 2014) .............................................................. 4

*Figy v. Frito-Lay North America, Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................................................... 3

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ......................................................................... 6

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................................... 3

*Hoffman v. 162 N. Wolfe LLC*,
   228 Cal. App. 4th 1178 (2014), *as modified on denial of reh'g* (Aug. 13, 2014) ........ 2

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................... 3, 5

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ......................................................................................... 3

*Terpin v. AT&T Mobility LLC*, 2020 WL 883221 (C.D. Cal. Feb. 24, 2020) ..................... 6

*Terpin v. AT&T Mobility LLC*,
   2020 WL 5369410 (C.D. Cal. Sept. 8, 2020) ............................................................ 1, 4

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**Other Authorities**

Ashley Carman, *US Carriers Introduce Project Verify to Replace Individual App Passwords*, https://www.theverge.com/2018/9/13/17855074/project-verify-passwords-mobile-login-att-sprint-tmobile-verizon (Sept. 13, 2018) .................... 5

## I. Introduction

Mr. Shapiro's Opposition to AT&T Mobility LLC's ("AT&T") Motion to Dismiss (the "Opposition") fails to remedy either of the independently fatal flaws in his concealment claim. First, while Mr. Shapiro seeks to craft a theory for a duty to disclose, despite offering no such theory in the Third Amended Complaint ("TAC"), he focuses on his supposed lack of information regarding *immaterial* facts, such as AT&T's subjective intentions and details of the specific avenues through which third parties could circumvent AT&T security. These facts are immaterial because a reasonable customer would focus not on *why* or *how* AT&T's security could be circumvented, but on the actual likelihood that his or her account could be accessed and/or his or her assets stolen as a result of that circumvention. As to these *material* facts, Mr. Shapiro is unable to identify any plausible basis for concluding that AT&T had exclusive knowledge of those facts, which were discussed in publicly available materials and readily discoverable by members of the public, including Mr. Shapiro. Moreover, he is unable to identify any "partial representation" that AT&T could or should have qualified with more information about its security measures. As a result, Mr. Shapiro is also unable to distinguish this Court's indistinguishable—and correct—holding in *Terpin v. AT&T Mobility LLC*, 2020 WL 5369410 (C.D. Cal. Sept. 8, 2020) ("*Terpin II*"), that a similar concealment claim warranted dismissal.

Mr. Shapiro's Opposition barely addresses AT&T's second, independent basis for dismissal—that he was *already aware* of the allegedly withheld material fact that AT&T's security could be circumvented. Mr. Shapiro again resorts to the claim that he was not aware of *every detail* of why AT&T's security was subject to circumvention. Even beyond the absence of any requirement that AT&T make a disclosure with that level of granularity, Mr. Shapiro does not plausibly allege that, had he known these additional details, he would have acted differently. Indeed, Mr. Shapiro alleges he suffered *four* SIM swaps with no claim that he ever altered his self-protection, rendering implausible his conclusory claim that, if he had only realized that AT&T's security could be circumvented to allow a SIM swap of his phone

Gibson, Dunn & Crutcher LLP

1

number, he would have "taken further measures to protect himself" and canceled his relationship with AT&T. Opp. at 6.

In short, Mr. Shapiro's TAC lacks any actionable theory of concealment, and his concealment claim is rendered implausible by his own allegations asserting public knowledge of the security risk that he experienced. AT&T respectfully requests that the Court dismiss Count 6 of Mr. Shapiro's TAC.

## II. Argument

### A. Claim 6 Should Be Dismissed for Failure to Allege a Duty to Speak

Mr. Shapiro's Opposition cannot remedy the failure of his TAC to plead any basis upon which to conclude that AT&T had a "legal duty" to disclose any "material fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), *as modified on denial of reh'g* (Aug. 13, 2014). Instead, Mr. Shapiro relies heavily on his supposed lack of knowledge of *details* of what measures AT&T was and was not using for security, without any plausible basis to impose a duty to disclose those details. Neither of the two bases Mr. Shapiro asserts in his Opposition supports inferring a duty to disclose.[1]

#### 1. AT&T Did Not Have Exclusive Knowledge Of Any Purportedly Material Fact

Mr. Shapiro first argues that AT&T had "**exclusive** knowledge of the measures that it had failed and refused to implement, and its reasons for doing so." Opp. at 4. Much of his argument focuses on a baseless and implausible conspiracy theory contrived in the TAC, according to which AT&T supposedly intentionally elected not to implement certain security measures as part of an unsuccessful attempt to profit instead from a multi-carrier authentication project called ZenKey. *Id.* at 2–3.

As an initial matter, Mr. Shapiro's ZenKey conspiracy theory is so implausible as to warrant no consideration in evaluating whether the TAC pleads a *plausible* basis for imposing a duty to disclose. The court "need not accept as true allegations that are conclusory, legal

---

[1] "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

conclusions, unwarranted deductions of fact, or unreasonable inferences." *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Mr. Shapiro's theory that AT&T somehow had a profit motive to *permit* unknown criminals to conduct unauthorized SIM changes is so implausible and devoid of supporting factual allegations that it fails to satisfy his pleading obligations. *Figy v. Frito-Lay North America, Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) (declining to credit "utterly implausible" allegations in evaluating motion to dismiss).

Mr. Shapiro's "exclusive knowledge" theory also fails to meet the governing legal standard. For a duty to disclose to be based on "exclusive knowledge," the plaintiff must plead that AT&T had "exclusive knowledge of *material facts* not known to the plaintiff." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (emphasis added; internal citation omitted). But a fact is only "material" if "a reasonable consumer would deem it important in determining how to act in the transaction at issue." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176–77 (N.D. Cal. 2019). The only fact that a "reasonable consumer" would deem important with respect to the security of his or her information is whether that information will be secure. AT&T specifically disclosed that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." TAC, Ex. G at 26. Moreover, the TAC specifically alleges that the risk of unauthorized SIM swaps was a matter of public record long before the SIM swaps alleged in this case. *See* TAC ¶¶ 125–126 (citing 2016 FTC report); ¶ 127 (citing AT&T public blog posting warning customers of the risk of unauthorized SIM swaps in 2017); ¶ 133 (citing AT&T public video warning of the risk of insider threats in 2017); ¶ 147 (citing public Princeton research study performing evaluation of authentication procedures at all carriers based on publicly available

information); ¶ 148, 150(d), (e) (citing news articles about security measures).[2] Courts do not hesitate to reject concealment claims where the supposedly withheld facts were available to the public. *See, e.g., Ferranti v. Hewlett-Packard Co.*, 2014 WL 4647962, at *5 (N.D. Cal. Sept. 16, 2014) (dismissing UCL omissions claim where "Plaintiffs do not allege with particularity how [defendant] had exclusive knowledge of material facts not known to [plaintiff] when the complaint alleges that there were customer complaints posted on [defendant's] Support Forums and poor reviews on other websites"); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) (allegations in the Complaint regarding public discussion of defect at issue "demonstrate that the material facts were not within the exclusive knowledge of Defendants but available to the public").

Notably, Judge Wright has already relied on AT&T's explicit disclosure of the limits of its security to dismiss a materially identical theory of exclusive knowledge in *Terpin II*. 2020 WL 5369410, at *3 ("Because AT&T disclosed [in its Privacy Policy] that its security system was subject to inadequacies, the fact was not within AT&T's exclusive knowledge."); Mot. at 5. Moreover, given the public discussion of unauthorized SIM swaps and AT&T's public posting of the Privacy Policy, Mr. Shapiro certainly does not (and cannot plausibly) plead the additional requirement that, "given the nature of the defect, it was difficult to discover." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 575 (N.D. Cal. 2019). Accordingly, Mr. Shapiro cannot allege that these potentially material facts were not disclosed.

Because Mr. Shapiro cannot plausibly claim that AT&T failed to disclose the *material* facts, he focuses instead on allegations that AT&T did not disclose alleged facts purporting to explain *why* AT&T could not "guarantee" security (e.g., the ZenKey conspiracy theory) or *what specific measures* AT&T did not employ that caused allegedly inadequate security (e.g., requiring that a person authenticate via a text or email). But these alleged facts are not material. A "reasonable consumer" considering whether to be an AT&T customer and

---

[2] Mr. Shapiro also points to publicly available information having nothing to do with SIM swaps (*see, e.g.* TAC ¶¶ 141–144); AT&T focuses herein on publicly available information that is alleged to reference SIM swaps or potential security measures to protect accounts.

whether to adequately protect his or her financial accounts would be concerned about whether his or her personal information could be disclosed, *not* about AT&T's mental state or the details of security measures that a "reasonable consumer" could not meaningfully evaluate for effectiveness or feasibility. Moreover, even these details were, in many cases, either known to customers or easily accessible to them (and thus not "difficult to discover"). For example, any customer who sought to perform a SIM swap would (or, at a minimum, easily could) know whether AT&T required that he or she validate a text message or email before performing the SIM swap. *See* Opp. at 2-3; TAC ¶ 150(b)-(c).[3]

Mr. Shapiro's proposed standard—that a defendant must not only disclose the *material* facts, but also every proprietary detail bearing on those facts, including defendant's intent and confidential techniques employed by defendant—is unworkable and contrary to California law. After all, as the Northern District of California recognized in *Sanders v. Apple Inc.*, "allegations of this nature . . . could be made about any alleged design defect in any manufactured product." 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009). If a plaintiff need plead no more than that the defendant "was in a superior position of knowledge with regard to its own technology," it is difficult to see how the "exclusive knowledge" requirement imposes any meaningful limitation on the circumstances in which a "duty to disclose" exists. *Id.* In this case, since there are virtually infinite permutations on the ways that criminal can access Personal Information, plaintiffs could also manufacture a duty to disclose from a failure to identify each such scenario. In addition to the imponderable (and impossible) burden of providing such disclosures, these details are not material where AT&T specifically disclosed that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for

---

[3] Similarly, the project that was named ZenKey was publicly introduced as Project Verify in September 2018, at which point Mr. Shapiro had knowledge of the facts that now underlie his ZenKey conspiracy theory and the supposedly concealed facts surrounding it. *See* Ashley Carman, *US Carriers Introduce Project Verify to Replace Individual App Passwords*, https://www.theverge.com/2018/9/13/17855074/project-verify-passwords-mobile-login-att-sprint-tmobile-verizon (Sept. 13, 2018).

example, as the result of unauthorized acts by third parties that violate the law or this Policy)." TAC, Ex. G at 26.

### 2. AT&T Did Not Make Any Misleading Partial Representations About its Security

Mr. Shapiro also argues in his Opposition that AT&T made "misleading" representations about security, which appears intended as an attempt to plead a "partial representation" theory for a duty to disclose. But nothing in his Opposition or TAC supports that theory. The two "partial representations" he points to are *not* representations that AT&T's security will prevent unauthorized SIM swaps, but part of a single warning to customers that while AT&T "strive[s] to keep your Personal Information secure . . . no security measures are perfect." Opp. at 5. To the extent Mr. Shapiro's allegation is that AT&T *did not* strive to keep personal information secure, it is not only not supported by any plausible factual allegations, but also does not support a claim that AT&T did "not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013).

Moreover, AT&T's disclosures that (i) its security was not perfect; (ii) it could not guarantee that personal information would never be disclosed in violation of the policy; and (iii) in fact, personal information could be disclosed "as the result of unauthorized acts by third parties that violate the law or this Policy" *do* "materially qualify" any positive statement about AT&T's security. That is precisely the conclusion that Judge Wright reached in addressing similar allegations in *Terpin*. The court observed that the "gravamen of [the] concealment claims is that AT&T hid the fallibility of its data security system from [Plaintiff]," and held that AT&T "did in fact disclose the limits of its security" via its Privacy Policy. *Terpin I*, 2020 WL 883221, at *5; *see also Terpin II*, 2020 WL 5369410, at *3–4. While Mr. Shapiro attempts to distinguish *Terpin* based on Mr. Shapiro's addition of the ZenKey conspiracy theory, that has no bearing on the correctness of the Court's holding. Specifically, where the "gravamen of" the claims at issue is that AT&T hid facts relating to alleged flaws in its security, but AT&T in fact disclosed those facts, there is no concealment

claim. To the extent AT&T did not detail every aspect of every potential circumvention of its security measures, those details are not material.

### B. Claim 6 (Deceit by Concealment) Should Be Dismissed for Failure to Allege Any Plausible Material Fact That Has Been Purportedly Concealed

Finally, Mr. Shapiro addresses only summarily the second and independent fatal flaw in his concealment claim: that he has not plausibly pled that he was unaware of the allegedly concealed facts and would have acted differently if he had known the truth. Mr. Shapiro made clear in his Opposition that the "central allegations" of his concealment claim are that "AT&T had not implemented basic security measures to prevent unauthorized SIM swaps *because it wanted to profit from the problem.*" Opp. at 2. But he pleads no basis to conclude that his evaluation of whether to continue with an AT&T account—or whether to implement basic security measures to shield his cryptocurrency—was influenced by *the reasons* that AT&T had the level of security that it had. That is, even crediting the implausible assertion that AT&T had an inexplicable corporate interest in allowing theft by third-party criminals, Mr. Shapiro would be at equal risk of harm from a theft of his funds whether it was caused by an intentional choice by AT&T not to adopt adequate security, or by reasonable, good faith security that was circumvented. It is implausible for Mr. Shapiro to claim that he stayed with AT&T and apparently chose not to secure his cryptocurrency despite being aware that AT&T could not guarantee his security simply because he was not aware of AT&T's imagined bad motive.

As to the potentially *material* fact—that AT&T's security could be circumvented, including by "unauthorized acts by third parties"—Mr. Shapiro cannot plausibly allege that he was unaware of the fact or that he would have acted differently if the disclosures he proposes had been made. The Opposition does not contest that Mr. Shapiro in fact had "knowledge that an unauthorized SIM swap can occur" (Opp. at 6). And it cannot dispute that AT&T's privacy policy attached to the TAC specifically discloses that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of

1 unauthorized acts by third parties that violate the law or this Policy)." TAC, Ex. G at 26. If
2 Mr. Shapiro intends to allege that the risk of an unauthorized SIM swap was *higher* than he
3 concluded based on the Privacy Policy, he neither points to any facts to support his
4 conclusions about what level of risk he faced nor makes any factual allegations about the
5 actual or expected level of unauthorized SIM swaps.
6      Finally, as noted in AT&T's motion, the Court need not speculate on whether Mr.
7 Shapiro might have acted differently if he had been aware of more details about AT&T's
8 policies. In fact, the TAC itself alleges that Mr. Shapiro was SIM swapped *on four separate*
9 *occasions*. TAC ¶ 24. Yet he remained an AT&T customer with no claims that he made any
10 changes to his level or type of self-protection, despite these events that would have
11 supposedly put him on notice of alleged weaknesses in AT&T's security. This renders
12 implausible Mr. Shapiro's requested inference that he relied on AT&T's supposed
13 concealment at any prior time.

### III. Conclusion

15      For the reasons set forth above, the Court should dismiss Claim 6 (Concealment)
16 because Mr. Shapiro has failed to plead AT&T's duty to disclose with particularity and has
17 failed to plead his own lack of awareness of allegedly concealed facts or that he would have
18 acted differently if those facts were known.

20 Dated: July 6, 2021                             Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ *Ashley E. Johnson*
        Marcellus McRae
        Ashley E. Johnson

Attorney for Defendant
AT&T MOBILITY LLC

Gibson, Dunn &
Crutcher LLP

8