**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SETH SHAPIRO<br><br>　　　Plaintiff,<br>vs.<br>AT&T MOBILITY, LLC,<br>　　　Defendants. | Case No.: 2:19-CV-8972-CBM-(FFMx)<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [64]** |

　　　The matter before the Court is Defendant AT&T Mobility LLC's ("Defendant's" or "AT&T's") Motion to Dismiss Plaintiff's Third Amended Complaint (the "Motion"). (Dkt. No. 64.)

## I. BACKGROUND

　　　Plaintiff Seth Shapiro ("Plaintiff") is a wireless cell service subscriber of AT&T. This action arises from AT&T's alleged failure to protect confidential information and AT&T employees' alleged assistance in transferring control of Plaintiff's wireless telephone number to third-party after which the hackers allegedly engaged in "SIM swapping" to steal more than $1.9 million in cryptocurrency from Plaintiff.

　　　The original Complaint asserted seven causes of action against AT&T: (1) violations of The Federal Communications Act (the "FCA"), 47 U.S.C. § 201 *et seq.*; (2) violations of the California Unfair Competition Law ("UCL"), Cal. Bus.

& Prof. Code § 17200 *et seq.*; (3) violations of California Constitutional Right to Privacy; (4) negligence; (5) negligent supervision and entrustment; (6) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (7) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. On May 18, 2020, the Court granted Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint as to Plaintiff's third cause of action for violation of his privacy rights under the California Constitution and sixth cause of action for violations of California's Consumer Legal Remedies Act with leave to amend. (Dkt. No. 32.)

On May 29, 2020, Plaintiff filed a First Amended Complaint ("FAC") asserting the same seven causes of action and alleging additional facts in support of Plaintiff's claims. (Dkt. No. 33.) On December 23, 2020, the Court granted Defendant's motion to dismiss Plaintiff's sixth cause of action for violation of the California Consumer Legal Remedies Act without leave to amend, but denied Defendant's Motion to dismiss Plaintiff's third cause of action for violation of his privacy rights under the California Constitution. (Dkt. No. 45.) On January 20, 2021, Plaintiff filed a Second Amended Complaint ("SAC"). (Dkt. No. 50.) Pursuant to a stipulation by the parties which was approved by the Court (*see* Dkt. Nos. 51, 52), Plaintiff filed a Third Amended Complaint ("TAC") on April 5, 2021. (Dkt. No. 55.)

The TAC names three defendants: AT&T; Sequential Technology International, LLC; and Prime Communications, L.P. The TAC asserts the following seven causes of action: (1) violations of the FCA, 47 U.S.C. § 201 *et seq.* against all Defendants; (2) violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* against AT&T; (3) violations of the California Constitutional Right to Privacy against all Defendants; (4) negligent against all Defendants; (5) negligent supervision and entrustment against all Defendants; (6) concealment against AT&T; and (7) violation of the CFAA, 18 U.S.C. § 1030, against all

Defendants. AT&T now moves to dismiss Plaintiff's sixth cause of action asserted in the TAC for concealment pursuant to Rule 12(b)(6). (Dkt. No. 64.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and punctuation omitted). When considering motions to dismiss, courts accept all facts alleged in the complaint as true, construe the pleadings in the light most favorable to the nonmoving party, and draws all reasonable inferences in favor of the plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

Moreover, under California law, "[c]oncealment is a species of fraud." *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (quoting *Moncada* v. *W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 607 (Cal. Ct. App. 2013)). Therefore, "[b]ecause concealment requires the allegation of fraud, the circumstances of the fraud are subject the heightened pleading standard established by Rule 9(b) and must be pleaded with particularity." *Id.* To plead fraud with sufficient particularity under Rule 9(b), the plaintiff must plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).

## III. DISCUSSION

To state a claim for concealment, Plaintiff must allege: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to

3

the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1125 (9th Cir. 2018) (quoting *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 189 Cal. Rptr. 3d 31, 60 (Cal. Ct. App. 2015)).

Plaintiff's concealment claim is based on AT&T's alleged knowledge and concealment that AT&T's "data security measures were grossly inadequate, that its employees and agents could readily bypass the procedures, that its employees actively cooperated with hackers and thieves, and that it was incapable of living up to its commitments to consumers, including [Plaintiff], under state and federal law, as well as under its own Privacy Policy, to protect his Personal Information, including CPI and CPNI [Customer Proprietary Network Information]." (TAC ¶ 258.) AT&T moves to dismiss Plaintiff's concealment claim on the grounds Plaintiff does not allege AT&T owed him a duty to disclose, does not allege he was unaware of the allegedly undisclosed facts regarding the risk of security breaches, and has not plausibly alleged he would have acted differently if AT&T had disclosed the limits of its security.

**A.     Duty to Disclose**

Under California law, there are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997). Plaintiff argues AT&T had a duty to disclose under categories 2 and 3 above.

4

### 1. Exclusive Knowledge

Defendant argues while the TAC alleges in conclusory and general terms that AT&T had "exclusive knowledge of material facts" which it concealed from its customers which gave rise to a duty to disclose (*see* TAC ¶¶ 191, 204), the TAC fails to allege any specifics regarding the allegedly withheld material facts and thus fails to satisfy Rule 9(b)'s particularity requirements.

Plaintiff argues he has sufficiently pled AT&T had exclusive knowledge of the security measures it failed to implement and the reasons for doing so which gave rise to a duty to disclose based on the following allegations in the TAC:

> [F]or many years AT&T has been fully aware of well-established technology solutions, which it could have configured its systems to require, to deter and prevent unauthorized SIM swaps and resulting thefts, which it could easily have implemented well *before* [Plaintiff's] phone was SIM swapped, but failed and refused to implement" a) location detection to prevent an unauthorized SIM swap; b) text messaging to confirm with a customer whether he requested a SIM swap; c) Email confirmation to confirm whether a customer requested a SIM swap; d) Voice biometrics or Voice Id to verify a customer's identity by comparing a caller's voice to a customer; e) data sharing to "allow financial institutions real-time access to their SIM swap data so that the institution can block a requested currency transfer if there has been a SIM swap within a specified time frame"; f) Dedicated SIM swap centers "where a dedicated team of properly vetted, trained and supervised call center workers handle the remote SIM swap. (TAC ¶ 150.)

The TAC also alleges "[i]nstead of implementing solution to ***prevent*** unauthorized SIM swaps, AT&T appears to have made the conscious business decision to profit from unauthorized SIM swaps ***after*** they have occurred. On September 18, 2018, AT&T, Verizon and T Mobile publicly announced the joint business scheme they had been developing for months called "Project Verify," now known as ZenKey, to profit from the SIM swap problem" (*id*. ¶ 152 (emphasis in original)), and "ZenKey is marketed to financial institutions as an identity and authentication scheme through its 'Trust Services' offering, to prevent fraud, with the clear representation that its purpose is to combat SIM swap fraud" (*id*. ¶ 153).

However, the TAC attaches an exhibit regarding AT&T's Privacy Policy

(revised February 15, 2019), which states: "Although we strive to keep your Personal Information secure, no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." (TAC Ex. G.)[1] Because AT&T disclosed the limits to its security measures to Plaintiff, knowledge of AT&T's allegedly inadequate security measures were not within AT&T's exclusive knowledge. *See Terpin v. AT&T Mobility, LLC,* 2020 WL 5369410, at *3 (C.D. Cal. Sept. 8, 2020) (granting motion to dismiss plaintiff's deceit by concealment claim upon finding no duty to disclose arose under the exclusive knowledge of material facts category, reasoning "AT&T *did* disclose the limits of its security protections to Mr. Terpin in his AT&T contract" because "AT&T's Privacy Policy explicitly states that it 'cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with [AT&T's] Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy),'" and concluding '[b]ecause AT&T disclosed that its security system was subject to inadequacies, the fact was not within AT&T's exclusive knowledge"). Moreover, ZenKey was not within AT&T's exclusive knowledge as recognized in the TAC which alleges AT&T "publicly" announced its ZenKey project in 2018. (TAC ¶ 152.)

Accordingly, Plaintiff fails to allege material facts in AT&T's exclusive knowledge giving rise to a duty to disclose.

### 2. Materially Misleading Misrepresentations

Plaintiff also argues AT&T had a duty to disclose because it made

---

[1] Plaintiff argues AT&T's disclosure that "no security measures are perfect" did not disclose "the truth" that "basic measures had not been implemented." However, Plaintiff does not cite to any allegation in the TAC or any false/misleading representation by AT&T that it implemented location detection, text messaging, email confirmation, voice biometrics or Voice Id, data sharing, dedicated SIM swap centers.

"misleading representations about security" by stating "*we strive* to keep your Personal Information secure" in its privacy policy (quoting TAC Ex. G), which Plaintiff contends gave the false impression that AT&T was "doing everything to prevent security violations" when instead AT&T had not implemented basic security measures such as location detection, sending text messages, sending an email, using voice biometrics, and data sharing. However, immediately following the excerpt from AT&T's privacy policy quoted by Plaintiff above, AT&T stated it could not guarantee that a customer's private information would never be disclosed. (*See* TAC Ex. G ( "Although we strive to keep your Personal Information secure, no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy).")

Thus, Plaintiff fails to plead sufficient facts regarding misleading representations by AT&T about security giving rise to a duty to disclose.

\*   \*   \*

Accordingly, the TAC fails to plead sufficient facts regarding a duty to disclose to state a claim for concealment.

**B.  Plaintiff's Knowledge and Whether Plaintiff Would Have Acted Differently Had He Known of the Alleged Concealed Facts**

Plaintiff argues he has adequately pled he would have acted differently had he known the truth about AT&T's security based on the TAC's allegation that "[h]ad AT&T disclosed the true facts about its dangerously poor data security practices and that it was motivated to profit from SIM swaps rather than correct the problem, [Plaintiff] would have taken further measures to protect himself and would have ceased being a customer of AT&T." (TAC ¶ 262.) Defendant argues this single allegation in the TAC that Plaintiff would have ceased being a customer of AT&T had he known of AT&T's data security practices is not

7

plausible because the TAC alleges Plaintiff was the victim of four SIM swaps but does not allege Plaintiff ever "altered his self-protection" after those SIM swaps. Defendant thus contends Plaintiff's conclusory allegation in paragraph 262 of the TAC that he would have "taken further measures to protect himself" by ceasing to be a customer of AT&T if he had known AT&T's security could be circumvented to allow a SIM swap of his phone number is implausible.

As discussed above, AT&T disclosed in writing to Plaintiff that its security measures could not guarantee non-disclosure of a customer's personal information (TAC Ex. G).  The TAC thus fails to allege plausible facts demonstrating Plaintiff would have acted differently had he known about the limits to AT&T's security because Plaintiff continued to be a customer of AT&T despite the fact that the limits to AT&T's security measures had already been disclosed to him.  Therefore, Plaintiff fails to plead sufficient facts that he would have acted differently had he known about the inadequacy of AT&T's security to state a claim for concealment.

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** AT&T's Motion to Dismiss Plaintiff's sixth cause of action in the TAC for concealment **with leave to amend**.[2]

To the extent Plaintiff files an amended complaint to allege additional facts correcting the deficiencies identified in this Order, Plaintiff shall file an amended complaint **no later than August 6, 2021**.  A failure to file an amended complaint by that date shall result in dismissal of Plaintiff's concealment claim with prejudice.

**IT IS SO ORDERED.**

DATED:  July 28, 2021.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[2] *See, e.g., Terpin*, 2020 WL 883221, at *6 (granting motion to dismiss concealment claim in case against AT&T involving SIM swapping with leave to amend to plead additional facts to state a claim).