MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile: 213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201-2911
Telephone:   214.698.3100
Facsimile: 214.571.2900

Attorneys for AT&T MOBILITY LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SETH SHAPIRO,<br><br>          Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br><br>          Defendant. | CASE NO. 2:19-CV-8972 (CBM)<br><br>**DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS 6 AND 7 OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*[Proposed] Order lodged concurrently herewith*]<br><br>Action Filed: October 17, 2019<br><br>**Hearing**:<br>Date:        September 28, 2021<br>Time:       10:00 a.m.<br>Place:     350 West 1st Street, 8th Floor<br>               Courtroom 8B<br>               Los Angeles, CA 90012<br>Judge:     Hon. Consuelo B. Marshall |

1

## <u>NOTICE OF MOTION</u>

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that at 10:00 a.m. on September 28, 2021, before the

4  Honorable Consuelo B. Marshall, United States District Court Judge, in Courtroom 8B, at

5  350 West 1st Street, 8th Floor, Los Angeles, California 90012, Defendant AT&T Mobility

6  LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(b)(6) of

7  the Federal Rules of Civil Procedure, to dismiss the following portions of Plaintiff Seth

8  Shapiro's Fourth Amended Complaint ("FAC"):

9     1. Claim 6 (Deceit by Concealment) because Mr. Shapiro has not plausibly alleged a

10        duty to speak, and because he has not plausibly alleged that he was unaware of the

11        allegedly concealed facts or would have acted differently if AT&T had disclosed the

12        limits of its security.

13    2. Claim 7 (Intentional Misrepresentation) because Mr. Shapiro's addition of a new

14        cause of action in the FAC is procedurally improper. In addition, Mr. Shapiro does

15        not plausibly allege a false statement, much less with the required particularity, and

16        does not plausibly allege that he would have acted differently absent the allegedly

17        fraudulent statement.

18      The Motion is based on this Notice of Motion, the Memorandum of Points and

19  Authorities that follows, all pleadings and records on file in this action, and any other

20  arguments and evidence presented to this Court at or before the hearing on the Motion.

21      This Motion is made following the conference of counsel pursuant to Civil Local

22  Rule 7-3, which took place on August 20, 2021.

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Dated: August 27, 2021

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:   */s/  Ashley E. Johnson*
      Marcellus A. McRae
      Ashley E. Johnson

      Attorney for Defendant
      AT&T MOBILITY LLC

# TABLE OF CONTENTS

Page

I.      Introduction ................................................................................................ 1

II.     Facts .......................................................................................................... 2

III.    Standard of Review .................................................................................... 4

IV.     Argument ................................................................................................... 4

        A.      Claim 6 (Deceit by Concealment) Should Be Dismissed with
                Prejudice. ....................................................................................... 4

                1.      Claim 6 Should Be Dismissed with Prejudice for Failure to
                        Allege a Duty to Speak. ...................................................... 5

                2.      Claim 6 Should Be Dismissed with Prejudice Because Mr.
                        Shapiro Has Not Pled That He Was Unaware of the Allegedly
                        Concealed Facts or Would Have Acted Differently Had He
                        Been Aware of those Alleged Facts. .................................... 9

        B.      Claim 7 (Intentional Misrepresentation) Should Be Dismissed. ..... 11

                1.      Claim 7 Should Be Dismissed as Procedurally Improper. ... 11

                2.      Claim 7 Should Be Dismissed Because Mr. Shapiro Does Not
                        Adequately Allege a Claim for Fraudulent Misrepresentation. .......... 11

V.      Conclusion ............................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andren v. Alere, Inc.,*
    207 F. Supp. 3d 1133 (S.D. Cal. 2016) ...................................................................7

*In re Apple Inc. Device Performance Litig.,*
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................4

*Bailey v. Kind, LLC,*
    2016 WL 3456981 (C.D. Cal. Jun. 16, 2016) ...................................................... 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................4

*Blissard v. FCA US LLC,*
    2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) .........................................................8

*Bullard v. Wastequip, Inc.,*
    2014 WL 10987394 (C.D. Cal. Sept. 11, 2014) ............................................. 12, 13

*Clayton v. Landsing Pac. Fund, Inc.,*
    2002 WL 1058247 (N.D. Cal. May 9, 2002), *aff'd,*
    56 F. App'x 379 (9th Cir. 2003) ........................................................................ 10

*Czuchaj v. Conair Corp.,*
    2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) .......................................................8

*Ferranti v. Hewlett-Packard Co.,*
    2014 WL 4647962 (N.D. Cal. Sept. 16, 2014) ......................................................6

*Figy v. Frito-Lay North America, Inc.,*
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..................................................................6

*Herron v. Best Buy Co.,*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) .................................................................8

*Hodsdon v. Mars, Inc.,*
    891 F.3d 857 (9th Cir. 2018) ..........................................................................5, 7, 9

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Hoffman v. 162 N. Wolfe LLC,*
    228 Cal. App. 4th 1178 (2014), *as modified on denial of reh'g* (Aug. 13, 2014).......................4

*Johnson v. Harley-Davidson Motor Co.,*
    2011 WL 3163303 (E.D. Cal. July 22, 2011).............................................................8

*Johnson v. Lucent Techs. Inc.,*
    653 F.3d 1000 (9th Cir. 2011) ..............................................................................9

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ............................................................................ 12

*Magpali v. Farmers Grp., Inc.,*
    48 Cal. App. 4th 471 (1996) ............................................................................... 13

*Manderville v. PCG&S Group, Inc.,*
    146 Cal. App. 4th 1486 (2007) ........................................................................... 12

*Patera v. Citibank, N.A.,*
    79 F. Supp. 3d 1074 (N.D. Cal. 2015) ................................................................ 10

*Sanders v. Apple Inc.,*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................. 5, 6

*Smith v. Allstate Ins. Co.,*
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................... 14

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ...............................................................................5

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
    2 Cal. App. 4th at 158–59 (1991)........................................................................ 13

*Tenzer v. Superscope, Inc.,*
    39 Cal. 3d 18 (1985)........................................................................................... 14

*Terpin v. AT&T Mobility LLC,*
    2020 WL 5369410 (C.D. Cal. Sept. 8, 2020).............................................6, 8, 9, 14

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015)........................................................... 4, 13

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
**(continued)**

<u>Page(s)</u>

*Vess v. CIBA-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................. 10

**Statutes**

Cal. Civ. Code § 1710(3) .....................................................................................................4

**Rules**

Fed. R. Civ. P. 12(a)(4) ......................................................................................................4

## I.      Introduction

In the Court's prior order, the Court dismissed Mr. Shapiro's claim for concealment because the Third Amended Complaint ("TAC") "fails to plead sufficient facts regarding a duty to disclose" and "fails to plead sufficient facts that [Mr. Shapiro] would have acted differently had he known about the inadequacy of AT&T's security." Dkt. 72, Order re: Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint, at 7-8 ("*Shapiro III*"). Mr. Shapiro's Fourth Amended Complaint ("FAC") should have the same fate. Rather than remedy the flaws identified by the Court, the FAC adds further speculation about AT&T's supposed "profit motive" to allow criminals to perform unauthorized SIM swaps. This speculation is facially implausible and unsupported by any facts. Moreover, it does not undermine this Court's prior conclusion that because AT&T disclosed to its customers, including Mr. Shapiro, that it could not guarantee the security of their accounts, Mr. Shapiro has pled neither a duty to disclose, nor that he would have acted differently absent the alleged concealment.

Mr. Shapiro also adds in the FAC a new claim for intentional misrepresentation. Mr. Shapiro adds this claim belatedly in his *fourth* amended complaint despite the fact that the Court only gave him leave to amend the TAC to remedy the flaws in the concealment claim. Moreover, despite the requirement that Mr. Shapiro plead this claim with particularity under Rule of Civil Procedure 9(b), Mr. Shapiro only summarily alleges that AT&T informed him his account would be "safe," without alleging any of the particulars surrounding that representation that are necessary to state a claim for fraud. Similarly, Mr. Shapiro fails to plead any facts suggesting that this alleged statement was false when made. Finally, as with Mr. Shapiro's concealment claim, Mr. Shapiro's misrepresentation claim fails because he has not plausibly pled that he would have acted differently in the absence of the claimed misrepresentation, given that he continued to be an AT&T customer despite AT&T's disclosures of the limits of its security measures and his own experience of multiple unauthorized SIM swaps.

Because the FAC does not plead the minimum elements of a concealment or

intentional misrepresentation claim, and because allowing Mr. Shapiro any additional attempt to plead his fraud claims would be futile, Claims 6 and 7 should be dismissed with prejudice.

## II.   Facts[1]

According to the allegations in the FAC, Mr. Shapiro entered into a wireless contract with AT&T in 2006. FAC ¶ 10. On May 16, 2018, Mr. Shapiro noticed that his cell phone was no longer connected to the AT&T network. FAC ¶ 36. Mr. Shapiro alleges that, upon losing connection to AT&T's wireless network, he "immediately suspected a SIM swap was underway" and "feared" his "large amounts of digital currency . . . could be at risk." FAC ¶ 37. Accordingly, Mr. Shapiro alleges that he called AT&T customer service and later visited an AT&T retail location and purchased a new phone, but experienced another SIM swap while at the retail store. FAC ¶¶ 38, 40, 42. AT&T representatives at the retail store purportedly told Mr. Shapiro that "they had noted the SIM swap activity in his account," but that his "SIM card would not be swapped again without his authorization." FAC ¶ 40.

Mr. Shapiro alleges that the wireless number associated with his SIM card had been assigned to another SIM card in a phone controlled by third-party criminal hackers. FAC ¶¶ 40, 52–53. Mr. Shapiro alleges that the hackers used the SIM swap to take control of his phone number and, without further explanation, the hackers were somehow then able to access eleven cryptocurrency accounts and transfer funds from an unspecified number of these accounts. FAC ¶¶ 44–45, 47–49. He alleges that two more unauthorized swaps occurred over the following year, but does not allege that he lost funds from those swaps. FAC ¶¶ 65, 68.

Mr. Shapiro filed his original complaint on October 17, 2019. Dkt. 1. The Court dismissed Mr. Shapiro's claims for violation of his privacy rights under the California Constitution and the Consumer Legal Remedies Act ("CLRA") on May 18, 2020. Dkt. 32. Thereafter, Mr. Shapiro filed his First Amended Complaint on May 29, 2020 (Dkt. 33), and

---

[1]   For this motion only, AT&T assumes the truth of the well-pled allegations in Mr. Shapiro's complaint.

the Court again dismissed his CLRA claim, this time without leave to amend. Dkt. 45. Mr. Shapiro then filed a Second and Third Amended Complaint ("SAC" and "TAC" respectively), adding a claim for deceit by concealment, additional allegations regarding punitive damages, and defendants Sequential Technology International, LLC and Prime Communications, L.P. (Dkt. 50, 55), and AT&T again moved to dismiss (Dkt. 64).

On July 28, 2021, the Court granted AT&T's motion to dismiss Mr. Shapiro's claim for deceit by concealment with leave to amend. *Shapiro III* at 8. Although Mr. Shapiro alleged that AT&T failed to disclose the limits of its security systems, the Court held that he had not adequately alleged that AT&T had "a duty to disclose." *Shapiro III* at 6–7. The Court rejected Mr. Shapiro's claim that AT&T had "exclusive knowledge" of undisclosed material facts, because AT&T actually disclosed the limits of its security systems. In addition, the Court held that Mr. Shapiro did not identify any material "misleading representations" because any purportedly misleading statements were qualified by AT&T's disclosure that "it could not guarantee that a customer's private information would never be disclosed." *Id.* The Court also dismissed Mr. Shapiro's concealment claim on the independent ground that he failed to allege plausible facts demonstrating Plaintiff would have acted differently had he known about the limits to AT&T's security because Plaintiff continued to be a customer of AT&T despite the fact that the limits to AT&T's security measures had already been disclosed to him. *Id.* at 7.

The FAC differs from the TAC in three primary ways. First, Mr. Shapiro adds 15 new paragraphs that repeat, reword, and expound on his conspiracy theory that AT&T did not adopt appropriate measures to prevent SIM swaps because of a supposed profit motive in ZenKey. FAC ¶¶ 199–213. The Court previously held that similar allegations did not adequately plead a duty to disclose or that Mr. Shapiro would have acted differently if the supposed withheld facts were disclosed. *Shapiro III* at 6–7. Second, Mr. Shapiro makes immaterial revisions to the allegations of Count 6 itself, without changing the core theory the Court found insufficient. FAC ¶¶ 275–282. Third, Mr. Shapiro adds a brand new claim against AT&T for intentional misrepresentation (Count 7) based on the allegation that

AT&T representatives said that his "mobile phone service was safe and that he was protected from a potential future unauthorized SIM swap because a note had been placed on his account." FAC ¶ 284.

AT&T now files this motion to dismiss Mr. Shapiro's claims for deceit by concealment and intentional misrepresentation.[2]

### III.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Moreover, claims for deceit sound in fraud and thus "must meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (internal citation omitted).

### IV.    Argument

**A.    Claim 6 (Deceit by Concealment) Should Be Dismissed with Prejudice.**

Deceit by concealment is suppression of a fact by one who is "bound to disclose it." Cal. Civ. Code § 1710(3). A defendant is only liable for fraudulent concealment if he or she had a "legal duty" to disclose a "material fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), *as modified on denial of reh'g* (Aug. 13, 2014). Such a duty only exists in

---

[2]  Pursuant to the Parties' stipulation, this partial motion to dismiss postpones the deadline to answer Shapiro's FAC (including claims not challenged by this motion) until 14 days after the Court's ruling on AT&T's Motion to Dismiss the FAC. Dkt. 77; Fed. R. Civ. P. 12(a)(4).

four limited circumstances: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (internal citation omitted).

In dismissing Mr. Shapiro's deceit by concealment claim, this Court previously held that Mr. Shapiro failed "to plead sufficient facts regarding misleading representations by AT&T about security giving rise to a duty to disclose" based on either a theory of "exclusive knowledge" or "materially misleading misrepresentations." *Shapiro III* at 6–7. Further, the court dismissed this claim for the independent reason that "Plaintiff fails to plead sufficient facts that he would have acted differently had he known about the inadequacy of AT&T's security to state a claim for concealment." *Id.* at 8. Mr. Shapiro's newest allegations do not address these flaws. Accordingly, his deceit by concealment claim should be dismissed with prejudice.

### 1.  Claim 6 Should Be Dismissed with Prejudice for Failure to Allege a Duty to Speak.

Although a key element of a deceit by concealment claim is the imposition of a legal duty to speak, Mr. Shapiro still does not allege any basis for such a duty here.

As an initial matter, Mr. Shapiro's primary additions to the FAC consist of elaboration on his ZenKey conspiracy theory, as set forth in paragraphs 199–213 and 275–282 of the FAC. These allegations are so implausible as to warrant no consideration in evaluating whether the FAC pleads facts *plausibly* suggesting that AT&T had a duty to disclose the facts at issue. Indeed, Mr. Shapiro does not plead any actual facts that suggest that AT&T somehow had a profit motive to permit unknown criminals to conduct unauthorized SIM changes. Instead, the FAC only offers allegations "that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences," and the Court "need not accept as true" such allegations. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

2001)). Accordingly, the Court should disregard Mr. Shapiro's additional speculation in the FAC about ZenKey because it is inadequate to support his pleading obligations. *See Figy v. Frito-Lay North America, Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) (declining to credit "utterly implausible" allegations in evaluating motion to dismiss).

Additionally, Mr. Shapiro's conclusory allegations do not plead a duty to disclose in any event, particularly given the specificity requirement of Rule 9(b). *Sanders*, 672 F. Supp. 2d at 986. Mr. Shapiro attempts to distinguish this Court's previous and consistent holdings in *Shapiro III* and *Terpin v. AT&T Mobility LLC*, 2020 WL 5369410 (C.D. Cal. Sept. 8, 2020), by alleging that AT&T had "exclusive knowledge of the foregoing business strategy [*i.e.*, of not implementing further security measures because of ZenKey] and did not disclose any part of the strategy to its customers including Mr. Shapiro." FAC ¶ 276; *see also* FAC ¶ 212 (pleading AT&T had exclusive knowledge "of AT&T's ZenKey profit motive regarding unauthorized SIM swap[s]").

But this Court *already rejected* this same ZenKey theory as a basis for exclusive knowledge. In his TAC, Mr. Shapiro had also pled that ZenKey was a "joint business scheme" that the major carriers developed "to profit from the SIM swap problem." TAC ¶ 152. This Court rejected that theory as a basis for a claim of exclusive knowledge and held that "ZenKey was not within AT&T's exclusive knowledge as recognized in the TAC which alleges AT&T 'publicly' announced its ZenKey project in 2018." *Shapiro III* at 6 (quoting TAC ¶ 152).[3] Courts do not hesitate to reject concealment claims where the supposedly withheld facts were available to the public. *See, e.g., Ferranti v. Hewlett-Packard Co.*, 2014 WL 4647962, at *5 (N.D. Cal. Sept. 16, 2014) (dismissing UCL omissions claim where "Plaintiffs do not allege with particularity how [defendant] had exclusive knowledge of material facts

---

[3] Although Mr. Shapiro alleges that ZenKey was first disclosed in September 2018—after two of the four SIM swaps and before two others—the problem of unauthorized SIM swaps was already known before that, further defeating any theory that AT&T had exclusive knowledge of some flaw. *See* FAC ¶¶ 125–126 (citing 2016 FTC report regarding unauthorized SIM swaps); ¶ 127 (citing AT&T public blog posting warning customers of the risk of unauthorized SIM swaps in 2017); ¶ 133 (citing AT&T public video warning of the risk of insider threats in 2017).

not known to [plaintiff] when the complaint alleges that there were customer complaints posted on [defendant's] Support Forums and poor reviews on other websites"); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) (allegations in the Complaint regarding public discussion of defect at issue "demonstrate that the material facts were not within the exclusive knowledge of Defendants but available to the public").

The Court further held that "AT&T disclosed the limits to its security measures to Plaintiff," such that "knowledge of AT&T's allegedly inadequate security measures were not within AT&T's exclusive knowledge." *Shapiro III* at 6. Specifically, AT&T disclosed that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." FAC, Ex. G at 26. Mr. Shapiro's rehashing of the ZenKey theory in the new paragraphs 199–213 of the FAC does not add anything to the allegations the Court already found inadequate or undermine the Court's reasoning in any way.

In addition to the reality that the Court has already rejected Mr. Shapiro's ZenKey theory as a basis for exclusive knowledge, Mr. Shapiro's attempt to identify a fact not disclosed—the supposed "profit motive"—fails to plead exclusive knowledge because Mr. Shapiro has not adequately pled that this fact is material, as required under California law. *Hodsdon*, 891 F.3d at 862 (emphasis added; internal citation omitted). A fact is only "material" if "a reasonable consumer would deem it important in determining how to act in the transaction at issue." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176–77 (N.D. Cal. 2019). The only fact that a "reasonable consumer" would deem important with respect to the security of his or her information is whether that information will be secure. AT&T's supposed "motive" is not a material fact. Indeed, if the law were otherwise, a plaintiff could always offer a conclusory allegation that the defendant had an undisclosed bad motive, as Mr. Shapiro does here, and survive a motion to dismiss by asserting that the secret "motive" was not disclosed.

1    Accordingly, Mr. Shapiro's conclusory allegations that AT&T had *exclusive* knowledge
2    of some nefarious motive or of AT&T's security's "shortcomings," are materially
3    indistinguishable from the allegations the Court already rejected, and do not suffice to state
4    a claim.

5    Second, although Mr. Shapiro's FAC alleges in other claims that AT&T "actively
6    concealed" material facts, he does not posit that as a basis for a duty to disclose in his
7    concealment claim. But to the extent the FAC could be read to allege such a theory, it is
8    inadequate. FAC ¶ 194. Active concealment requires the party to take "affirmative acts . . .
9    in hiding, concealing, or covering up the matters complained of." *Czuchaj v. Conair Corp.*,
10   2014 WL 1664235, at *6 (S.D. Cal. Apr. 18, 2014) (internal quotation marks omitted); *see*
11   *also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) ("Mere nondisclosure
12   does not constitute active concealment."). If it were permissible to "infer affirmative acts
13   from mere knowledge and inaction, then active concealment would be reduced to a
14   weakened form of exclusive knowledge." *Czuchaj*, 2014 WL 1664235, at *6; *cf. Johnson v.*
15   *Harley-Davidson Motor Co.*, 2011 WL 3163303, at *5 (E.D. Cal. July 22, 2011). Yet, like the
16   TAC, the FAC does not list a single affirmative act AT&T took to conceal information
17   from Mr. Shapiro. As a result, Mr. Shapiro has not alleged a duty to disclose based on active
18   concealment. *See Terpin*, 2020 WL 5369410, at *3 (dismissing similar claim based on an
19   active concealment theory because an "omission itself does not amount to AT&T's
20   affirmatively covering up the information," and because AT&T did not promise "absolute
21   protection when it knew otherwise"); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *14
22   (C.D. Cal. Nov. 9, 2018) (dismissing claim based on an active concealment theory in the
23   absence of "a well-supported allegation of intentional acts to conceal" knowledge from the
24   plaintiff).

25   Finally, Mr. Shapiro's FAC does not plausibly allege that AT&T made a partial
26   disclosure of a material fact. This basis for a duty to disclose applies when "the defendant
27   makes representations but does not disclose facts which materially qualify the facts
28   disclosed, or which render his disclosure likely to mislead." *Herron v. Best Buy Co. Inc.*, 924

F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (internal citations omitted). Mr. Shapiro argues that AT&T made a partial disclosure because its statement in its privacy policy that "We will keep your information safe using encryption or other appropriate security controls," is misleading in the absence of a disclosure from AT&T that it was allegedly "not implementing readily available security measures." *See* FAC ¶ 276. But as this Court recognized, AT&T specifically disclosed that "no security measures are perfect," and that AT&T "cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy." *Shapiro III* at 7; FAC, Ex. G at 26. Mr. Shapiro's assertion that AT&T should have given more specificity to customers surrounding its disclosure that its security measures could be circumvented is not a claim that AT&T did not disclose facts that *qualify* its existing disclosures; instead, Mr. Shapiro alleges that AT&T should have provided additional information to *reinforce* AT&T's disclosures. Mr. Shapiro's argument is nothing more than an allegation that AT&T had a legal duty to disclose *more details* about the ways in which a breach of security might happen or why, which simply is not the circumstance of a partial representation. Moreover, where, as here, the allegedly disclosed information is substantially disclosed, no cause of action for concealment is available. *See Shapiro III* at 7; *Terpin*, 2020 WL 5369410, at *4 (rejecting same claim).[4]

Accordingly, Mr. Shapiro's FAC does not address the Court's previous conclusion that he has not pleaded a duty to disclose. As a result, Claim 6 should now be dismissed with prejudice.

> **2. Claim 6 Should Be Dismissed with Prejudice Because Mr. Shapiro Has Not Pled That He Was Unaware of the Allegedly Concealed Facts or Would Have Acted Differently Had He Been Aware of those Alleged Facts.**

A claim for deceit also requires a plaintiff to plausibly plead that he was unaware of a concealed material fact and would have acted differently had he known about it. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011–12 (9th Cir. 2011). Because this claim sounds in fraud,

---

[4] Mr. Shapiro does not and cannot plausibly contend that the fourth situation in which a duty to disclose exists—a fiduciary relationship—is applicable to the arms-length relationship here. *See Hodsdon*, 891 F.3d at 862.

it must be pleaded with particularity. *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003); *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015).

In its prior order, the Court agreed with AT&T on this point, reasoning that:

> AT&T disclosed in writing to Plaintiff that its security measures could not guarantee non-disclosure of a customer's personal information. (TAC Ex. G). The TAC thus fails to allege plausible facts demonstrating Plaintiff would have acted differently had he known about the limits to AT&T's security because Plaintiff continued to be a customer of AT&T despite the fact that the limits to AT&T's security measures had already been disclosed to him.

*Shapiro III* at 8. Nothing in the FAC undermines this conclusion in any way. That is, Mr. Shapiro cannot avoid either of the key facts that the Court relied on: that AT&T disclosed the limits of its security to Mr. Shapiro, and that Mr. Shapiro's decision to continue to be a customer, even after that disclosure and alleged unauthorized SIM swaps, means that Mr. Shapiro has not plausibly pled that he would have ceased being a customer if those limits had been disclosed.

Instead, the FAC simply alleges, in the same conclusory fashion as the TAC, that "[h]ad AT&T properly and adequately disclosed the true facts, Mr. Shapiro would have either cancelled his AT&T service or taken measures to protect his cryptocurrency from the risk of additional unauthorized SIM swaps such as storing his digital assets in a cold wallet that was not accessible from his mobile phone." FAC ¶ 279. But the FAC still fails to offer any facts to render such conclusions plausible in light of the fact that "AT&T disclosed in writing to Plaintiff that its security measures could not guarantee non-disclosure of a customer's personal information." *Shapiro III* at 8 (citing TAC Ex. G); *see also See Clayton v. Landsing Pac. Fund, Inc.*, 2002 WL 1058247, at *6 (N.D. Cal. May 9, 2002), *aff'd*, 56 F. App'x 379 (9th Cir. 2003) (no claim for fraudulent concealment where defendants "*actually disclosed the information . . . plaintiff [alleged] was kept secret from her*") (emphasis in original). Mr. Shapiro therefore *knew* the material fact at issue, and did not change his behavior. Although the FAC alleges additional colorful speculation regarding AT&T's purported ZenKey profit motives, none of these allegations plead facts that are material or that address Mr. Shapiro's failure "to plead sufficient facts that he would have *acted differently* had he known about the

inadequacy of AT&T's security to state a claim for concealment." *Shapiro III* at 8. Accordingly, Claim 6 should be dismissed with prejudice on these separate and sufficient grounds.

**B.    Claim 7 (Intentional Misrepresentation) Should Be Dismissed.**

For the first time, in his *Fourth* Amended Complaint, Mr. Shapiro alleges a new cause of action against AT&T for intentional misrepresentation. The Court should dismiss this new claim outright as an untimely and unauthorized amendment of the pleadings. But even if the Court decides to substantively consider this claim, it should likewise be dismissed on the merits because Mr. Shapiro fails to allege that AT&T never intended to perform in accordance with its representations, and because Mr. Shapiro does not plausibly allege that he would have acted differently absent the allegedly fraudulent statements.

**1.    Claim 7 Should Be Dismissed as Procedurally Improper.**

Under Federal Rule of Civil Procedure 15(a)(2), amendments to the pleadings before trial are only proper "with the opposing party's written consent or the court's leave." Here, AT&T has never provided its written consent for Mr. Shapiro to shoehorn new causes of action into his FAC. Nor did the Court do so when it "grant[ed] AT&T's Motion to Dismiss Plaintiff's sixth cause of action in the TAC for *concealment* with leave to amend" for the limited purpose of allowing Mr. Shapiro to "allege additional facts *correcting the deficiencies in this Order*." *Shapiro III* at 8 (emphasis added). The parties have gone through several rounds of motions to dismiss, and Mr. Shapiro's belated addition of an entirely new claim further delays the process of finalizing the pleadings. For these reasons, the Court should dismiss Claim 7 as untimely and procedurally barred. In the alternative, if the Court dismisses Claim 7 on the merits, it should do so with prejudice given Mr. Shapiro's conscious decision to raise it nearly two years after filing the case in a Fourth Amended Complaint.

**2.    Claim 7 Should Be Dismissed Because Mr. Shapiro Does Not Adequately Allege a Claim for Fraudulent Misrepresentation.**

Mr. Shapiro's untimely misrepresentation claim summarily alleges that, after the first alleged unauthorized SIM swap, "AT&T informed him that his mobile phone service was

safe and that he was protected from a potential future unauthorized SIM swap because a note had been placed on his account." FAC ¶ 284. A claim for an intentional misrepresentation under California law requires proof that: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Manderville v. PCG&S Group, Inc.*, 146 Cal. App. 4th 1486, 1498 (2007). Because a false promise claim alleges a "subspecies of fraud," such claims must meet the "heightened pleading requirements of Rule 9(b)." *Bullard v. Wastequip, Inc.*, 2014 WL 10987394, at *3–4 (C.D. Cal. Sept. 11, 2014).

Mr. Shapiro does not adequately plead that AT&T made a false representation that it knew was false when made, much less with the required particularity. Nor does he plausibly plead that he reasonably relied on the representation. Accordingly, his misrepresentation claim should be dismissed.

### a.   Mr. Shapiro Does Not Plausibly Allege Facts Suggesting a False Statement, Much Less with the Required Particularity.

Rule 9(b) requires that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Here, Mr. Shapiro's claim is vague – someone at AT&T told him at some point after the May 2018 SIM swaps that his "account would be safe because they had put a note on his account that would prevent any future SIM swaps." FAC ¶¶ 68, 284.

This allegation does not plausibly plead—much less with particularity—a false statement. Mr. Shapiro does not indicate when he heard this statement (other than "after the May 2018 SIM swaps"), where he was, who the agents were, whether he was in the store

or on the phone, or even precisely what the alleged statement was. *See Bullard*, 2014 WL 10987394, at *6 ("Where fraud has allegedly been perpetrated by a corporation, moreover, plaintiff must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities."). He does not plead any information about what the "note on his account" was purportedly going to say, or even that there was not "a note on his account," as necessary for that portion of the statement to be false. Accordingly, Mr. Shapiro's fraud claim must rest on the alleged representation "that [Mr. Shapiro's] account was safe and protected against future unauthorized SIM swaps." FAC ¶ 286.

Even if Mr. Shapiro had adequately pled that some particular person at a particular time and place informed him that his account would be "safe from future attacks," he does not plead that the unknown individual who made this statement knew that it was false. FAC ¶ 68. *See Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996)("[The defendant] may have been overly optimistic in believing that an inexperienced agent could generate sufficient sales to justify the continued operation of the agency, but an erroneous belief, no matter how misguided, does not justify a finding of fraud."). An allegation of fraud based on an alleged promise about the future (i.e., that Mr. Shapiro's account would be "safe") requires the pleading of "facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings*, 117 F. Supp. 3d at 1108; *see also Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th at 158–59 (1991) ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing.").

A plaintiff cannot meet this standard by merely pleading non-performance. *See Bullard*, 2014 WL 10987394, at *5 ("[M]ere nonperformance does not suffice to explain the falsity of the promise."); *Magpali*, 48 Cal. App. 4th at 481 ("[S]omething more than nonperformance is required to prove the defendant's intent not to perform his

promise . . . if plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.") (internal citation omitted). Instead, the plaintiff must "plead facts explaining why the statement was false when it was made," such as "inconsistent contemporaneous statements or information which was made by or available to the defendant." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153–54 (S.D. Cal. 2001); *see also Tenzer v. Superscope, Inc.,* 39 Cal. 3d 18, 30–31 (1985) (holding that "fraudulent intent can be inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform.").

Mr. Shapiro does not satisfy these requirements because he does not allege that AT&T "never intended to adhere to its heightened security protocols" (*Terpin*, 2020 WL 5369410, at *5) or keep his account safe when it allegedly represented to Mr. Shapiro that "his mobile phone service was safe and that he was protected from a potential future unauthorized SIM swap because a note had been placed on his account." FAC ¶ 284. Moreover, Mr. Shapiro cannot reasonably have understood any vague statement about increased "safety" of his account to have been a guarantee of security in light of AT&T's disclosure that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." FAC, Ex. G at 26.

In the absence of allegations that plead a false statement with particularity, Mr. Shapiro's fraud claim must be dismissed. *See Terpin*, 2020 WL 5369410, at *5.

### b.   Mr. Shapiro Does Not Plausibly Allege That He Would Have Acted Differently Absent the Allegedly Fraudulent Statement.

Mr. Shapiro's fraudulent misrepresentation claim also fails for a similar reason to his concealment claim: he has not plausibly pled that he would have acted differently in the absence of the allegedly fraudulent statement. *See Bailey v. Kind, LLC*, 2016 WL 3456981, at *5 (C.D. Cal. Jun. 16, 2016) ("Allegations of reliance have fallen short" where they fail to

specify "whether Plaintiff would have acted differently had there been no misrepresentation"). As described above, AT&T disclosed to Mr. Shapiro upfront, in its privacy policy, that its security measures were not perfect and that AT&T could not guarantee against the unauthorized conduct of criminal third parties. *See supra* at 9-10. Yet, as this Court reasoned in dismissing Mr. Shapiro's concealment claim, "Plaintiff continued to be a customer of AT&T despite the fact that the limits to AT&T's security measures had already been disclosed to him." *Shapiro III* at 8. Mr. Shapiro's suggestion that he would only have continued to be a customer of AT&T with an assurance that he would be safe is disproven by the fact that he was a customer of AT&T when he was explicitly told that AT&T's security measures could be circumvented.

Moreover, Mr. Shapiro did not cancel his service even after he personally experienced the reality that AT&T had warned him about—i.e., the unauthorized acts of criminals. Mr. Shapiro alleges four unauthorized SIM swaps: two on May 16, 2018, followed by SIM swaps on November 1, 2018, and May 14, 2019. His misrepresentation claim is based on his alleged reliance on a statement after the May 16, 2018 SIM swap that his service was "safe" and he was "protected from a potential unauthorized SIM swap." But when he found out that he had experienced another unauthorized SIM swap on November 1, 2018, Mr. Shapiro did not cancel his service. Accordingly, his conclusory allegation that he relied on the May 2018 alleged misrepresentation is belied by his own conduct, as pled in his own FAC.

## V.    Conclusion

For the reasons set forth above, the Court should dismiss Claim 6 (Concealment) and 7 (intentional misrepresentation) with prejudice.

1

Dated:  August 27, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ *Ashley E. Johnson*
      Marcellus McRae
      Ashley E. Johnson

Attorney for Defendant
AT&T MOBILITY LLC